MARC E. ELIAS, ESQ. (D.C. Bar No. 442007) (*pro hac vice forthcoming*)
HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410) (*pro hac vice forthcoming*)
COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065) (*pro hac vice forthcoming*)
**PERKINS COIE LLP**
700 Thirteenth St. NW, Suite 800
Washington, D.C. 20005-3960
Tel: (202) 654-6200
melias@perkinscoie.com
hbrewster@perkinscoie.com
celgart@perkinscoie.com

ABHA KHANNA, ESQ. (Wash. Bar No. 42612) (*pro hac vice forthcoming*)
JONATHAN P. HAWLEY, ESQ. (Cal. Bar. No. 319464) (*pro hac vice forthcoming*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com
jhawley@perkinscoie.com

BRADLEY SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
**WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Tel: (702) 341-5200
bschrager@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Proposed Intervenor-Defendants
Nevada State Democratic Party, DNC Services
Corporation/Democratic National Committee,
DCCC, Priorities USA, and John Solomon*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| STANLEY WILLIAM PAHER, TERRESA MONROE-HAMILTON, and GARRY HAMILTON,<br><br>                    Plaintiffs,<br><br>            vs.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, and DEANNA SPIKULA, in her official capacity as Registrar of Voters for Washoe County, | Case No.:   3:20-cv-00243-MMD-WGC<br><br>**MOTION TO INTERVENE AS DEFENDANTS** |

|  | |
|---|---|
| Defendants, | |
| and | |
| NEVADA STATE DEMOCRATIC PARTY, DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE, DCCC, PRIORITIES USA, and JOHN SOLOMON, | |
| Proposed Intervenor-Defendants. | |

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants Nevada State Democratic Party ("NSDP"), DNC Services Corporation/Democratic National Committee ("DNC"), DCCC, Priorities USA, and John Solomon (collectively, "Proposed Intervenors") move to intervene as defendants in the above-titled action.

Plaintiffs Stanley William Paher, Terresa Monroe-Hamilton, and Garry Hamilton challenge the election plans instituted by Defendants Barbara Cegavske, the Nevada Secretary of State (the "Secretary"), and Deanna Spikula, the Registrar of Voters for Washoe County (the "Washoe Registrar"), for the June 9, 2020 Nevada primary election (the "June Primary"). Defendants' decision to implement a nearly all-mail election for the June Primary is not just reasonable, but constitutionally required to ensure that Nevada voters can safely exercise their franchise in the midst of the coronavirus pandemic. Plaintiffs allege a hodgepodge of claims, none of them viable, all in an attempt to undermine Defendants' effort to protect Nevada voters during an unprecedented public health crisis. In so doing, they pose a clear and direct threat to Proposed Intervenors' rights and legal interests.

For the reasons set forth below, Proposed Intervenors are entitled to intervene in this case as a matter of right under Rule 24(a)(2). Such intervention is needed to ensure not only the fairness of the June Primary, but also the substantial and distinct legal interests of Proposed Intervenors, which will otherwise be inadequately represented in the litigation. In the alternative, Proposed Intervenors should be granted permissive intervention pursuant to Rule 24(b). In

2

accordance with Rule 24(c), a proposed Answer is attached as Exhibit 2. Also attached as Exhibit 1 is Proposed Intervenors' brief in opposition to Plaintiffs' motion for a preliminary injunction.[1]

## BACKGROUND

In response to the unprecedented public health crisis dominating headlines and impacting daily lives across the globe, on March 24, 2020, the Secretary announced plans to "conduct an all-mail election" for the June Primary. Press Release, Nev. Sec'y of State, *Secretary Cegavske Announces Plan to Conduct the June 9, 2020 Primary Election by All Mail* (Mar. 24, 2010), https://www.nvsos.gov/sos/Home/Components/News/News/2823/23; *see also* Complaint, ECF No. 1, ¶¶ 13–18. In the weeks that followed, county officials, including the Washoe Registrar, released details of their respective plans implementing the all-mail election. *See, e.g.*, Washoe Cty. Registrar of Voters, *Notice of Vote-By-Mail Election of Official Sample Ballot*, https://www.washoecounty.us/voters/vote-by-mail/Vote-by-Mail-Notice.pdf (last visited Apr. 24, 2020); Clark Cty. Election Dep't, *June 9, 2020, Primary Election Notice of All-Mail Ballot Election* (Apr. 15, 2020), https://www.clarkcountynv.gov/election/Documents/2020/Mailer-Notice-20P-EXPANDED.pdf; *see also* Complaint ¶¶ 19–21.

Concerned about various statutory and constitutional infirmities that threaten to restrict access to the franchise in the June Primary and beyond, NSDP, DNC, DCCC, and Priorities USA, joined by four Nevada voters (collectively, the "State Court Plaintiffs"), filed a lawsuit in Nevada state court seeking declaratory and injunctive relief (the "State Court Action") on April 16, 2020. *See* Ex. 3. The complaint was followed by a motion for a preliminary injunction shortly thereafter. *See* Ex. 4. Significantly, the State Court Plaintiffs "do not object to

---

[1] While Proposed Intervenors believe, for the reasons discussed in their brief in opposition to Plaintiffs' motion for a preliminary injunction, that Plaintiffs' complaint should be dismissed in its entirety, they are including a proposed Answer to fully comply with the requirements of Rule 24(c). *See Landry's, Inc. v. Sandoval*, No. 2:15-cv-00160-GMN-PAL, 2016 WL 1239254, at *3 (D. Nev. Mar. 28, 2016).

Defendants' expansion of vote by mail; indeed, the current public health crisis necessitates that states allow voters to cast ballots without leaving their homes." Ex. 3 ¶ 2; *see also* Ex. 4 at 3. Instead, they initiated the State Court Action "to ensure that *all* eligible Nevada voters have a fair opportunity to exercise their right to the franchise," which requires both vote by mail *and* meaningful opportunities for in-person voting. Ex. 3 ¶¶ 1–6.[2]

## STANDARD OF LAW

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arkaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also W. Expl. LLC v. U.S. Dep't of Interior*, No. 3:15-cv-00491-MMD-VPC, 2016 WL 355122, at *2 (D. Nev. Jan. 28, 2016) (noting Rule 24's liberal construction and "focus[] on practical considerations rather than technical distinctions").

The Ninth Circuit "require[s] applicants for intervention as of right pursuant to Rule 24(a)(2) to meet a four-part test":

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

"Rule 24(b) permits the Court to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'"

---

[2] The State Court Plaintiffs primarily challenge four attributes of Nevada's election laws and procedures: the closure of all but one in-person polling location in each county for the June Primary, Ex. 3 ¶¶ 89–113; the exclusion of inactive voters from Defendants' planned mailing of ballots for the June Primary, *id.* ¶¶ 114–29; Nevada's Voter Assistance Ban, which prohibits anyone other than a voter's family member from assisting with the return of a mail ballot, *id.* ¶¶ 135–61; and the Ballot Rejection Rules, Defendants' policies for rejecting ballots due to missing or mismatched signatures on mail ballots, *id.* ¶¶ 162–73.

4

*Nevada v. United States*, No. 3:18-cv-569-MMD-CBC, 2019 WL 718825, at *2 (D. Nev. Jan. 14, 2019) (quoting Fed. R. Civ. P. 24(b)(1)(B)). In addition to a common question of law or fact, permissive intervention under Rule 24(b) also requires (1) a timely motion and (2) an independent basis for the court's jurisdiction. *See Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

## ARGUMENT

**I.     Proposed Intervenors satisfy Rule 24(a)'s requirements for intervention as a matter of right.**

Proposed Intervenors satisfy each of the four requirements of Rule 24(a).

*First*, the motion is timely. Plaintiffs filed their complaint on April 21, 2020; this motion follows six days later, and in advance of the deadline provided by the Court for Defendants' responses to Plaintiffs' motions for a preliminary injunction and to consolidate. *See* ECF No. 14. There has therefore been no delay, and no possible risk of prejudice to the other parties. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *see also Nevada*, 2019 WL 718825, at *2 (granting motion to intervene filed several weeks after action commenced); *W. Expl.*, 2016 WL 355122, at *2 (granting motion to intervene filed nearly two months after action commenced).

*Second* and *third*, Proposed Intervenors have significant protectable interests in this lawsuit that might be impaired by Plaintiffs' causes of action. "An applicant [for intervention] has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *W. Expl.*, 2016 WL 355122, at *2 (quoting *Lockyer*, 450 F.3d at 441). In assessing whether such an interest is sufficiently "impair[ed] or impede[d]," Fed. R. Civ. P. 24(a)(2), courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)).

Plaintiffs' challenge to the all-mail June Primary compromises legally protected interests

for each of the Proposed Intervenors. If Plaintiffs succeed and Defendants' plans to mail ballots to registered voters are thwarted, then NSDP, DNC, DCCC, and Priorities USA—each of which is an organization dedicated to promoting the franchise and ensuring the election of Democratic Party candidates—will suffer direct injury because fewer Democratic voters will have an opportunity to vote in the June Primary. *See* Ex. 3 ¶¶ 14–16. Without expansive options to vote by mail, many voters will be forced to choose between risking their health to vote in person and participating in the June primary, and the result will be far less robust voter turnout in the primary. Courts have routinely concluded that interference with a political party's electoral prospects constitutes a direct injury that satisfies Article III standing, which goes beyond the requirement needed for intervention under Rule 24(a)(2) in this case. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing that "harm to [] election prospects" constitutes "a concrete and particularized injury"); *Ohio Org. Collaborative v. Husted*, 189 F. Supp. 3d 708, 726 (S.D. Ohio 2016) (political party "established an injury in fact" where "the challenged provisions will make it more difficult for its members and constituents to vote"), *rev'd on other grounds sub nom. Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016); *N.C. State Conference of NAACP v. McCrory*, 997 F. Supp. 2d 322, 342 (M.D.N.C. 2014) (political party has "direct, particularized interest in the outcome of an election"), *aff'd in part, rev'd in part on other grounds sub nom. League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (noting that an intervenor of right only needs "Article III standing in order to pursue relief that is different from that which is sought by a party with standing").

Moreover, the disruptive and disenfranchising effects of Plaintiffs' action would require each of these organizations to divert resources to address the lack of mail ballots, *see* Ex. 3 ¶¶ 14-17—another legally protected interest that is implicated by Plaintiffs' claims. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding that "new law injures the Democratic Party by compelling the party to devote resources" it would not need to absent law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d

6

824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

Proposed Intervenor John Solomon also has a distinct, legally protected interest in this action. Solomon expects to receive a mail ballot under Defendants' current plans for the all-mail June Primary. If Plaintiffs prevail and he is *not* sent a mail ballot, Solomon's expectations will be upended and he might not be able to receive a mail ballot in time to cast it. The deprivation of the right to vote is a significant and irreparable harm, one that is defended against by both the U.S. and Nevada Constitutions. *See* U.S. Const. amends. 1, 14; Nev. Const. art. II, § 1; *see also, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" (quoting *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979))); *State ex rel. McMillan v. Sadler*, 25 Nev. 131, 170, 58 P. 284, 288 (1899) ("The right to vote for all officers[ in Article 2, Section 1] could not be given in stronger or broader language.").[3]

***Fourth***, Proposed Intervenors cannot rely on the parties in this case to adequately represent their interests. "Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention":

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*W. Expl.*, 2016 WL 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086). "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate," and therefore "the burden of making this showing is minimal." *Id.*

---

[3] As one court has observed, "once the election occurs, there can be no do-over and no redress." *League of Women Voters*, 769 F.3d at 247; *see also Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016) ("This isn't golf: there are no mulligans.").

1  (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Trbovich*
2  *v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

3  As an overarching matter, Defendants' inability to adequately safeguard Proposed
4  Intervenors' interests is evidenced by the very existence of the State Court Action, in which all
5  but one of the Proposed Intervenors is a plaintiff.[4] While Proposed Intervenors support the
6  expansion of vote by mail for the June Primary—and vigorously dispute Plaintiffs' contentions
7  that mail voting is either unconstitutional or likely to result in increased fraud, *see, e.g.*, Ex. 6
8  ¶ 25—Proposed Intervenors have legitimate, articulated concerns that Defendants' policies do
9  not go *far enough* in ensuring the franchise for all Nevada voters. *See generally* Ex. 3.
10 Defendants' expansion of vote by mail is necessary given the specter of a global pandemic, but it
11 is not a panacea, and fully protecting Proposed Intervenors' significant interests articulated
12 above requires both expansion of mail voting *and* meaningful opportunities for in-person voting.
13 Defendants' reluctance to fully protect these interests is evidenced by the Secretary's hostile
14 response to a letter from the NSDP that sought to address its ongoing concerns with the June
15 Primary. *See* April Corbin Girnus, *Nevada Dems Push for Changes to Upcoming All-Mail*
16 *Primary*, Nev. Current (Apr. 15, 2020), https://www.nevadacurrent.com/2020/04/15/nevada-
17 dems-push-for-changes-to-upcoming-all-mail-primary. The dispute between NSDP and the
18 Secretary ultimately led to the filing of the State Court Action, and now persuades Proposed
19 Intervenors that Defendants cannot be relied upon to adequately safeguard their legally protected
20 interests.

21 Phrased in the parlance of Rule 24, neither Plaintiffs nor Defendants have interests "such
22 that [they] will undoubtedly make all of" Proposed Intervenors' arguments. *W. Expl.*, 2016 WL
23 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086). While Defendants are expected to defend the
24 expansion of vote by mail generally, they will *not* join Proposed Intervenors in advocating for

---

[4] John Solomon is not one of the State Court Plaintiffs, but he served as a declarant in support of their motion for a preliminary injunction. *See* Ex. 4 at 16; Ex. 5.

8

expanding the all-mail election to include inactive voters or providing accompanying in-person voting opportunities. *See* Ex. 3 ¶¶ 89–129. Defendants and Proposed Intervenors further part ways on the validity of Nevada's Voter Assistance Ban and Ballot Rejection Rules, *see id.* ¶¶ 135-73—the latter of which are referenced in Plaintiffs' complaint and might therefore be at issue in this lawsuit as well as the State Court Action. *See* Complaint ¶¶ 31–32. By rejecting the NSDP's overtures and necessitating the filing of the State Court Action, Defendants have clearly demonstrated that they are neither "capable [nor] willing to make such" critical arguments. *W. Expl.*, 2016 WL 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086); *see also, e.g.*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (granting motion to intervene as of right where private parties' interests diverged from the government's interest in representation, and where "[t]he early presence of intervenors may serve to prevent errors from creeping into the proceedings, clarify some issues, and perhaps contribute to an amicable settlement"); *Ohio River Valley Envtl. Coal., Inc. v. Salazar*, No. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W. Va. June 18, 2009) (granting motion to intervene as of right where defendant and proposed intervenor had identical goals but the "difference in degree of interest could motivate the [intervenor] to mount a more vigorous defense" and "[t]he possibility that this difference in vigor could unearth a meritorious argument overlooked by the current Defendant justifies the potential burden on having an additional party in litigation").

Proposed Intervenors intend to forcefully promote the ability of *all* eligible Nevadans to cast ballots in the June Primary, including but not limited to those who are able to vote by mail under Defendants' all-mail election plans, and to protect the electoral and financial interests of organizations like the NSDP, DNC, DCCC, and Priorities USA—"necessary elements" to ensure that Nevadans' rights under the First and Fourteenth Amendments to the U.S. Constitution, as well as Article 2, Section 1 of the Nevada Constitution, are not "neglect[ed]." *W. Expl.*, 2016 WL 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086). Because these arguments will not be made by the current parties to the litigation, Proposed Intervenors cannot rely on Defendants to provide adequate representation.

**II. Alternatively, Proposed Intervenors satisfy Rule 24(b)'s requirements for permissive intervention.**

Even if this Court were to find Proposed Intervenors ineligible for intervention as of right, Proposed Intervenors easily satisfy the requirements for permissive intervention under Rule 24(b), which provides the Court with broad discretion "to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Nevada*, 2019 WL 718825, at *2 (quoting Fed. R. Civ. P. 24(b)(1)(B)).[5] "Because a court has discretion in deciding whether to permit intervention, it should consider whether intervention will cause undue delay or prejudice to the original parties, whether the applicant's interests are adequately represented by the existing parties, and whether judicial economy favors intervention." *Id.* (citing *Venegas v. Skaggs*, 867 F.2d 530–31 (9th Cir. 1989)).

For the reasons discussed in Part I *supra*, Proposed Intervenors' motion is timely, and they cannot rely on Defendants to adequately protect their interests. Proposed Intervenors also have defenses to Plaintiffs' claims that share common questions of law and fact. For example, the State Court Plaintiffs have emphasized that Defendants *do*, contrary to Plaintiffs' arguments, retain the power to designate all-mail elections. *See* Ex. 3 ¶¶ 29–31 (discussing Defendants' power to create mailing precincts pursuant to Nevada Revised Statutes §§ 293.343–293.355).

And significantly, intervention will result in neither prejudice nor undue delay. Proposed Intervenors have an undeniable interest in a swift resolution of both this action and the State Court Action, to ensure that Defendants have sufficient time to allow every Nevada voter to cast a ballot in the June Primary. Indeed, Proposed Intervenors contend that *this action itself* will cause harmful delays that will stymie Defendants' efforts to circulate mail ballots. Proposed Intervenors therefore have a strong interest in both opposing Plaintiffs' pending motion for a

---

[5] Although permissive intervention also generally requires that "the court has an independent basis for jurisdiction," that finding "is unnecessary where, as here, in a federal question case the proposed intervener raises no new claims." *Nevada*, 2019 WL 718825, at *2 (quoting *Donnelly*, 159 F.3d at 412).

preliminary injunction and moving to dismiss their baseless complaint as soon as possible. Given the legal and factual shortcomings of Plaintiffs' claims, Proposed Intervenors are confident that their intervention in this case, and the filings that will follow, will result in expeditious resolution of this litigation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).[6]

DATED this 27th day of April, 2020

        **WOLF, RIFKIN, SHAPIRO,**
        **SCHULMAN & RABKIN, LLP**

By:     */s/ Bradley S. Schrager*
        Bradley S. Schrager, Esq., SBN 10217
        Daniel Bravo, Esq., SBN 13078
        3556 E. Russell Road, Second Floor
        Las Vegas, Nevada 89120

        Marc E. Elias, Esq.*
        Henry J. Brewster, Esq.*
        Courtney A. Elgart, Esq.*
        **PERKINS COIE LLP**
        700 Thirteenth St. NW, Suite 800
        Washington, D.C. 20005-3960

        Abha Khanna, Esq.*
        Jonathan P. Hawley, Esq.*
        **PERKINS COIE LLP**
        1201 Third Avenue, Suite 4900
        Seattle, Washington 98101-3099

*Attorneys for Proposed Intervenor-Defendants Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, DCCC, Priorities USA, and John Solomon*

*Pro hac vice applications forthcoming

---

[6] Alternatively, should the Court decline to grant Proposed Intervenors' motion to intervene, they respectfully request permission to file the accompanying brief in opposition to Plaintiffs' motion for a preliminary injunction (Exhibit 1) as an amicus brief. *See People's Legislature v. Miller*, No. 2:12-cv-00272-MMD-VCF, 2012 WL 3536767, at *5 (D. Nev. Aug. 15, 2012).

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th of April, 2020 a true and correct copy of **MOTION TO INTERVENE AS DEFENDANTS** was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

Index of Exhibits

| Exhibit | Description | No. of Pages |
|---|---|---|
| 1 | Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction | 21 |
| 2 | Proposed Answer | 10 |
| 3 | Complaint, *Corona v. Cegavske*, No. 20-OC-00064-1B (Nev. Dist. Ct.), filed April 16, 2020. | 66 |
| 4 | Plaintiffs' Emergency Motion for Preliminary Injunction and Declaratory Relief, *Corona v. Cegavske*, No. 20-OC-00064-1B (Nev. Dist. Ct.), filed April 22, 2020. | 43 |
| 5 | Declaration of John D. Solomon, filed in support of Plaintiffs' Emergency Motion for Preliminary Injunction and Declaratory Relief, *Corona v. Cegavske*, No. 20-OC-00064-1B (Nev. Dist. Ct.), dated April 21, 2020. | 4 |
| 6 | Declaration of Dr. Daniel C. McCool, filed in support of Plaintiffs' Emergency Motion for Preliminary Injunction and Declaratory Relief, *Corona v. Cegavske*, No. 20-OC-00064-1B (Nev. Dist. Ct.), dated April 22, 2020. | 19 |