AARON D. FORD
 Attorney General
GREGORY L. ZUNINO, Bar No. 4805
 Deputy Solicitor General
CRAIG A. NEWBY, Bar No. 8591
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1100
E-mail: glzunino@ag.nv.gov
E-mail: cnewby@ag.nv.gov

*Attorneys for Barbara Cegavske*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STANLEY WILLIAM PAHER, TERRESA MONROE-HAMILTON, and GARY HAMILTON,<br><br>Plaintiffs,<br><br>vs.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, DEANNA SPIKULA, in her official capacity as Registrar of Voters for Washoe County,<br><br>Defendants. | Case No. 3:20-cv-00243<br><br>**DEFENDANT SECRETARY OF STATE BARBARA CEGAVSKE'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Barbara Cegavske, by and through counsel, Aaron D. Ford, Attorney General and Gregory L. Zunino, Deputy Solicitor General, hereby submits this opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 2).

DATED this 27th day of April, 2020.

                                        AARON D. FORD
                                        Attorney General

                                        By:   *Gregory L. Zunino*
                                               GREGORY L. ZUNINO
                                               Deputy Solicitor General
                                               CRAIG A. NEWBY
                                               gzunino@ag.nv.gov
                                               cnewby@ag.nv.gov

                                        *Attorneys for Defendants*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

To diminish the spread of the COVID-19 illness, Secretary of State Barbara Cegavske ("Secretary Cegavske") and her staff worked in partnership with Nevada's seventeen local election officials to implement an all-mail primary election for June 9, 2020 (ECF No. 22 at p. 3). Subsection 4 of NRS 293.213 sets forth the legislative grant of authority for her do so under the current circumstances. Without qualification, this statutory provision authorizes Nevada's state and local election officials to cooperatively establish "mailing precincts" in which registered voters cast their votes by mail. Despite Plaintiffs' arguments to the contrary, Secretary Cegavske was well within her authority, as lawfully delegated to her by the Nevada Legislature, to approve a statewide all-mail primary election. The motion should be denied.

## II. STATEMENT OF THE CASE

Plaintiffs have filed suit to halt Nevada's all-mail primary election in favor of an in-person election. Plaintiffs allege that they are Nevada registered voters who usually "vote[] early or on election day in-person" (ECF No. 1 at p. 3, ¶¶7-9). Citing *Bush v. Gore* as controlling precedent (ECF No. 2 at pp. 9-11, 14, and 18), Plaintiffs speculate that their votes will be diluted by the votes of persons who cast two or more votes or who fail to meet voter eligibility standards (ECF No. 2 at pp. 5-6). According to Plaintiffs, this will likely occur because the all-mail primary circumvents various legal safeguards designed to protect the integrity of elections. They suggest that the absence of safeguards is akin to "ballot-box stuffing" or altering ballots (ECF No. 2 at p. 7). Plaintiffs allege causes of action for:

Count I—Vote Dilution (ECF No. 1 at p. 8);

Count II—Violation of the Right to Vote for Legislative Representatives (ECF No. 1 at p. 9); Count III—Violation of the Right to Vote under the Purcell Principle (ECF No. 1 at p. 10);

   Count IV—Violation of the Right to Vote in the Manner Chosen by the Nevada Legislature (ECF No. 1 at p. 11); and

   Count V—Violation of the Right to a Republican Form of Government (ECF No. 1 at p. 12).

Certain of the above causes of action are not cognizable under federal law (Counts II, III and V), while others are based upon the false premise that Nevada's all-mail primary election strips Nevada law of election integrity safeguards provided by state law (Counts I, IV, and V). Additionally, because the alleged injury of vote dilution is based upon conjecture and speculation (Counts I-V), Plaintiffs have not demonstrated that they have standing to challenge Nevada's all-mail election. Finally, insofar as they have manufactured abstract disputes concerning the manner of conducting elections (Count IV), and the required structure of elections (Count V), Plaintiffs do not have standing to seek declaratory or equitable relief under Articles I and IV of the U.S. Constitution.[1]

## III. STANDARD OF REVIEW

To obtain a preliminary injunction, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008). This traditional test applies absent Plaintiffs' ability to demonstrate that the balance of equities tips sharply in their favor. *Fox Broad. Co. v. Dish Network L.L.C.,* 747 F.3d 1060, 1066 n.2 (9th Cir. 2014). Plaintiffs cannot meet this burden because they are unlikely to succeed on the merits, having generally non-cognizable claims. Further, Plaintiffs will not suffer any harm, much less irreparable harm, unless one of their preferred candidates loses his or her primary race as a result of

---

[1] Plaintiffs have framed their arguments in a way to suggest that they have no intention of demonstrating their standing to bring claims for alleged violations of Articles I and IV of the U.S. Constitution. Federal law is clear that they do indeed have an obligation to prove standing in the form of a concrete injury (even when they allege violations of bedrock principles of constitutional governance). *See Arizona State Legislature v. Arizona Independent Redistricting Commission,* __U.S.__, 135 S.Ct. 2652, 2663-65 (2015).

election fraud. At this point, any harm to Plaintiffs is entirely speculative. Finally, the balance of equities and the public interest during these unprecedented times weigh heavily against injunctive relief.

The motion must be denied.

## IV. ARGUMENT

### A. Plaintiffs are Unlikely to Succeed on the Merits for Multiple Reasons

#### 1. Secretary Cegavske is Entitled to Judgment on the Merits Because Plaintiffs Misrepresent Applicable Nevada Law

The Secretary of State is the Chief Officer of Elections for the state of Nevada. NRS 293.124. As such, Secretary Cegavske may approve "mailing precincts" at the request of Nevada's county election officials. NRS 293.213(4). When state and local elections officials work together in this manner in pursuit of shared objectives, such as a common desire to mitigate the impact of the COVID-19 pandemic, the population ceilings and other criteria set forth at subsections 1, 2 and 3 of NRS 293.213 are inapplicable. In other words, according to the plain language of subsection 4, a local election official "may establish a mailing precinct … that does not [exceed the stated population ceilings] if the county clerk obtains prior approval from the Secretary of State."

As a practical matter, this means that state and local election officials may agree to establish mailing precincts without regard to the number of voters in each of those precincts. The manifest intent of subsection 4 is to address unforeseen circumstances compromising voters' ability to access physical polling locations within any given region of the state. The COVID-19 pandemic has made such access deeply problematic throughout the entire state. Consequently, Secretary Cegavske's decision to approve a statewide all-mail primary not only satisfies the plain language of subsection 4, but is wholly consistent with its intent. "When the Legislature's intent is clear from the plain language, this court will give effect to such intention and construe the statute's language to effectuate rather than nullify its manifest purpose." *We the People Nevada ex rel. Angle v. Miller*, 124 Nev. 874, 192 P.3d 1166, 1171 (2008). Since all of Plaintiffs' claims are premised, in one way or

another, upon alleged violations of state law, Secretary Cegavske is entitled to judgment in her favor on the merits.

To avoid an unfavorable judgment against them, Plaintiffs conflate "mailing precincts" and "absent ballots" in an effort to cast doubt upon the legal validity of the scheduled all-mail primary (ECF No. 2 at 5-6, 12-13). By definition, an "absent ballot" is "a ballot voted by a person who expects to be or is absent from the polling place for his or her precinct or district on election day." NRS 293.013. Although a voter need not offer an excuse for voting absentee, the voter must affirmatively request an absent ballot in order to cast the ballot by mail. NRS 293.313. A mailing precinct, by contrast, is a precinct in which the registered voters are automatically mailed their ballots at their addresses of record. NRS 293.345.

As Plaintiffs observe, the submission of an absent ballot is governed by rules designed to ensure that a person who casts an absent ballot meets the voter eligibility criteria stated at Article 2, § 1 of the Nevada Constitution, including age and residency qualifications (ECF No. 2 at pp. 5-6, 12-13). Accordingly, a person who requests an absent ballot is subject to the verification process that Plaintiffs describe in their motion for injunctive relief (ECF No. 2 at pp. 5-6.). Plaintiffs agree that these verification processes are designed to reconcile discrepancies between the voter's address of record and a new address associated with the voter's affirmative request for an absent ballot (ECF No. 2 at 6). Predictably, Plaintiffs fail to acknowledge that there is no need to reconcile such discrepancies with respect to mailing precincts. This is because there can be no discrepancies unless the voter affirmatively request an absent ballot in lieu of the standard ballot that will be mailed, unsolicited, to the voter's address of record within the mailing precinct.

In other words, if a voter plans to move to a new address before the standard ballot issues in the mail, the voter may request that an absent ballot be mailed to the voter's new address. Under these circumstances, if there is a discrepancy between the voter's address of record and the new address associated with the voter's affirmative request for

an absent ballot, the voter will be subject to the address reconciliation concerns that Plaintiffs have expressed in their motion for injunctive relief (ECF No. 2 at pp. 5-6.) There is no factual or legal basis for Plaintiffs to claim that voters will have the option to circumvent applicable election integrity measures.

Likewise, there is no basis for Plaintiffs to claim that first-time voters will be able to circumvent the identity and residency verification processes that are periodically conducted at physical polling locations (ECF No. 2 at p. 12). Plaintiffs incorrectly assert that first-time voters will be able to circumvent the requirements of NRS 293.2725(1) if they receive their ballots in the mail. As explained in the Declaration of Wayne Thorley (ECF No. 22 at p. 2), this is untrue because NRS 293.2725(2) sets forth an exception for first-time voters who submit to automated identity and residency verification as part of the initial registration process, or who mail proof of identity and residency along with their ballots. In summary, first-time voters must submit to the very same verification processes that apply to all elections, regardless of whether voting is conducted by mail or in person.

As a final matter, Plaintiffs falsely claim that state and local election officials violated NRS 293.205 and .206 for failure to meet the deadline for changing precinct boundaries (ECF No. 2 at p. 6). Since there were no changes to precinct boundaries, this argument is nonsensical. The only change was to the method of voting within existing precinct boundaries. In light of the COVID-19 pandemic, voters residing within existing precinct boundaries will have the option to mail their ballots to the clerk or registrar of the county where they reside, thus obviating the need for those same voters to appear in person at physical polling locations within those precinct boundaries.[2] With respect to voters such as Plaintiffs who prefer to vote in person on election day, they may cast their

---

[2] Early voting procedures have rendered precinct boundaries largely irrelevant in Nevada. During the 2-week period for early voting, voters may cast their votes at any location where a vote center has been established. *See* NRS 293.356-.361. Effective January 1, 2020, the same is true on election day. *See* NRS 293.3072-.3075. Accordingly, there is little incentive for incumbent politicians to advocate for last-minute changes to precinct boundaries in the hope that certain voters will be unable to locate their precincts on election day.

votes at a countywide vote center regardless of any precinct to which they may be assigned (ECF No. 22 at p. 4). *See* NRS 293.3072-.3075.

### 2. Plaintiffs' Argument for Discarding the *Anderson-Burdick* Test is Unpersuasive

In their motion for injunctive relief, Plaintiffs discuss the *Anderson-Burdick* balancing test at length, but ultimately urge the Court to discard it (ECF No. 2 at pp 8-9), replacing it with principles discussed in *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), and *Reynolds v. Sims*, 377 U.S. 533 (1964).[3] Those cases involved illegible ballots and a convoluted legislative apportionment scheme, respectively. *Id*. Plaintiffs claim that the *Anderson-Burdick* balancing test is inapplicable because it is not useful for evaluating vote dilution claims (ECF No. 2 at 9). As discussed below, however, Plaintiffs' cause of action for vote dilution is premised entirely upon speculation and conjecture. While it is a colorful analogy, this case does not allege facts that are tantamount to "ballot-box stuffing", nor does it implicate altered or destroyed ballots (ECF No. 2 at 7).

Notwithstanding the hyperbole, Plaintiffs' motion for injunctive relief ultimately expresses a disagreement with the policy of replacing in-person voting with mail-in voting for the 2020 primary election. Since that policy is based upon Secretary Cegavske's reasonable interpretation of NRS 293.213(4), the only question for this Court is whether the policy unduly burdens Plaintiffs' voting rights relative to the State's interest in protecting the health and safety of its voters. The *Anderson-Burdick* balancing test provides the appropriate standard for evaluating Plaintiffs' claims.

According to the *Anderson-Burdick* line of cases, "[w]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (*quoting Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)); *see also Arizona Green*

---

[3] Plaintiffs' reliance on *Bush v. Gore* is misplaced, given that the *per curiam* decision was limited to the circumstances in that case, involving the 2000 presidential election. *Id*. at 109.

*Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016). Here, Plaintiffs cannot demonstrate a burden upon their voting rights, only an imposition upon their preference for in-person voting. By contrast, the State's interest in protecting the health and safety of its voters is compelling. Particularly during a global pandemic. When applied to the allegations in this case, the *Anderson-Burdick* balancing test weighs heavily in favor Secretary Cegavske.

### 3. Plaintiffs Lack Standing for Their Speculative, Novel Claims

Article III, § 2 of the U.S. Constitution states that the federal courts may only adjudicate "Cases" and "Controversies". *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The case-or-controversy requirement of Article III requires that Plaintiffs establish their "standing" as a jurisdictional prerequisite to the prosecution of this law suit. *Clapper v. Amnesty International USA*, 586 U.S. 398, 408 (2013). To establish standing, Plaintiffs must show that their alleged injury is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). Additionally, they must show a "causal connection" between the alleged injury and the conduct about which they complain. *Id*. As a final matter, Plaintiffs may not offer mere speculation that a decision in their favor, namely a decision to require in-person voting at physical polling locations throughout Washoe County, will redress their alleged injury. *Id*. at 561.

Moreover, Plaintiffs must demonstrate standing separately for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Plaintiffs seek injunctive and declaratory relief with respect to each of their five causes of action. However, their claim for vote dilution (Count I) is the only claim that even hints at the nature of their alleged injury. To establish standing, Plaintiffs must show that they have suffered an injury in fact that is fairly traceable to the challenged conduct of the defendants and is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61 (1992). Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in

original) (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Among other things, "an injury in fact must be both concrete and particularized." *Id*. at 1548.

Here, Plaintiffs allege a possible future injury in the form of vote dilution, but no injuries beyond that. The specter of vote dilution "may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334, 189 L.Ed.2d 246 (2014) (internal quotation marks omitted). However, Plaintiffs must still prove a causal connection between the alleged injury and the alleged unlawful conduct on the part of Secretary Cegavske. *Lujan*, 504 U.S. at 560.

As discussed above, Secretary Cegavske adhered to the letter of the law when she worked in partnership with county election officials to implement an all-mail primary election for 2020. Accordingly, there can be no causal connection between Plaintiffs' alleged injury of vote dilution and the alleged violations of state law. Plaintiffs' claim to standing fails on this ground alone because there were no violations of state law. For this reason, Secretary Cegavske is entitled to judgment in her favor on the merits, in addition to dismissal on jurisdictional grounds.

Insofar as Plaintiffs imply that all-mail elections are inherently more vulnerable to election fraud than are in-person elections (ECF No. 2 at p. 12), their position is based entirely upon conjecture and speculation. Five states, including Utah, have adopted all-mail election processes on a permanent basis (ECF No. 22 at p. 3). Their decision to adopt vote-by-mail elections indicates that they have great confidence in the integrity of mail-in processes. Furthermore, Nevada's limited experience with mailing precincts has yielded no evidence of election fraud (ECF No. 22 at p. 3). Not surprisingly, Plaintiffs have framed their case as a legal dispute rather than a factual dispute (ECF No. 4, pp. 1-4) because they have no evidence that their votes will be diluted by election fraud.

In short, Plaintiffs engage in unsupported speculation that their votes in the primary election will be diluted by election fraud resulting from a mish-mash of alleged

statutory and constitutional violations. Since there has been no violation of state or federal law, much less a showing that an alleged violation would cause vote dilution even if it had occurred, Plaintiffs allegations do not satisfy Article III requirements for standing.

### 4. There is Not an Unqualified Right under Federal Law to Compel Adherence to State Voting Laws

As to Count II of their complaint, Plaintiffs argue that alleged *ultra vires* conduct by Secretary Cegavske, a member of the executive branch of Nevada state government, violates their right to vote for members of the legislative branch of Nevada state government (ECF No. 2 at pp. 15-16.) Yet, Plaintiffs offer no explanation of how the administrative action of an executive branch official can, in and of itself, burden the Plaintiffs' right to freely cast a vote for their preferred choice of legislative candidates. To allege that an administrative action usurps a legislative power does not alone suffice to state a claim for a voting rights violation. Here, the only connection to voting rights is the subject matter of the statutes that were allegedly violated. As discussed above, those statutes were not actually violated, but even if they had been violated, there would be no causal nexus between the violations and the alleged burden upon the right to vote for state legislators.

Plaintiffs suggest, in summary, that the right to vote for a legislative candidate encompasses a right to protect that candidate, if elected, from future incursions upon his or her exercise of legislative powers. This is an absurd proposition, and in substance, it merely raises a garden-variety separation of powers issue governed by state law, not a violation of voting rights guaranteed by the First and the Fourteenth Amendments to the U.S. Constitution. Because they cannot explain how the all-mail election burdens their right to vote for state legislators, only that it infringes upon state legislative powers, the Plaintiffs' remedy for such an alleged violation is to file a writ petition in state court. *See* NRS Chapter 34. Indeed, if every clash between separate branches of state government could give rise to a cause of action for a voting rights violation, the federal courts would

become mired in endless litigation concerning the interpretation of state statutes and regulations.

### 5. The "Purcell Principle" and Article IV, § 4 of the U.S. Constitution Confer no Private Causes of Action

Plaintiffs acknowledge that federal case law does not, at present, support their claim for an alleged violation of Article IV, § 4 of the U.S. Constitution, given that the claim presents a non-justiciable political question (ECF No. 2 at p. 19). *See Luther v. Borden*, 48 U.S. 1 (1849). They argue, however, that the U.S. Supreme Court "has severely cut back on [the] political-question doctrine" (ECF No. 2 at p. 19), thus suggesting that the Supreme Court may abandon the abstention doctrine altogether once it reviews the facts in this case. Since that is highly improbable, this Court should reject the claim.

With regard to *Purcell v. Gonzalez*, 541 U.S. 1 (2006), the U.S. Supreme Court vacated a pre-election injunction because the Ninth Circuit had issued the injunction on the eve of the election. *Id*. at 5-6. In this context, the holding of *Purcell* can only be construed as an admonition to the federal courts, not as the foundation for a private cause of action. It is generally understood that that federal statutes and constitutional provisions are the source of rights enforceable in the federal district courts. *See Gonzaga University v. Doe*, 536 UI.S. 273, 283 (2002) ("We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983"). The *Purcell* case neither states nor implies that its holding was intending to confer enforceable rights upon private plaintiffs. Moreover, it undermines Plaintiffs' request for injunctive relief here because it is **Plaintiffs** who seek court alterations to election processes at the proverbial 11th hour. If anything *Purcell* advises against the issuance of an injunction by this Court.

…

### B. Plaintiffs Cannot Demonstrate Irreparable Harm, as Adequate Remedies Exist to Address Their Speculative Claims after the Primary Election

Like other equitable remedies, injunctions require a showing that irreparable harm is probable and not speculative. *Nevada v. United States*, 364 F.Supp.3d 1146, 1154 (D. Nev. 2019). At this preliminary stage of the electoral process, Plaintiffs' alleged injuries are speculative, rendering them incapable of being remedied by way of injunctive relief. *See Siegel v. LePore*, 120 F.Supp.2d 1041, 1052-53 (S.D. Fla. 2000) ("[W]e find Plaintiffs' alleged injuries on an as-applied basis to be speculative, and far from irreparable, at this stage in the electoral recount process.") Here, even assuming Plaintiffs correctly predict some harm (they do not), they make no effort to articulate why the appropriate remedy for that harm should not be fashioned after the primary election, when the source and the nature of the harm might conceivably be ascertained. *See Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir.1986) ("Although federal courts closely scrutinize state laws whose very design infringes on the rights of voters, federal courts will not intervene to supervise the administrative details of a local election. Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation.") (internal citation omitted).

### C. The Balancing of Equities Favors Defendant Cegavske

Plaintiffs' analysis does not state the full standard for balancing equities. "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal citations omitted).

Instead, Plaintiffs presume, based on their (refuted) statutory analysis that Defendants have no cognizable interest in the plan for an all-mail primary election. This is simply not true, ignoring the global pandemic, as recognized by the World Health Organization, the United States, and Nevada. Defendant Cegavske, as Nevada's chief election officer, has an obligation to conduct the primary election in a manner that

protects Nevada's citizens by allowing them to exercise their right to vote securely while not being denied this right by being forced to make a Hobson's choice between their franchise and their health. Granting injunctive relief now will force Nevada's citizens to do so.

Further, in an ironic twist, granting injunctive relief at the late hour violates the "*Purcell* principle" Plaintiffs mistakenly contend is a cognizable claim here. Having the judiciary alter election procedures within the statutory discretion of state and local officials at the proverbial "11th hour" would create confusion during this public health emergency.

Accordingly, the equities balance in favor of Defendants in this case, further warranting denial of the motion.

### D. The Public Interest Strongly Favors Defendant Cegavske

Plaintiffs' analysis does not state the full standard for considering the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Similar to *Winter*'s consideration of military interests, Nevada is currently in battle with the most significant public health emergency in over a century. To be clear, after the World Health Organization declared a pandemic, President Trump declared a nationwide emergency on March 13, 2020. *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. Governor Sisolak declared a Nevada emergency on March 12, 2020 (ECF No. 2 at p. 21). Both the state and federal emergencies remain in effect.

Further, there is no genuine doubt that Nevada has the power to protect the health of its citizens, particularly in an emergency such as this. Prior to ratification of the Constitution, various colonies had quarantine laws, thereby establishing the legal tradition of local and state jurisdiction over matters of public health reflected in the

Constitution's reservation of power to the states to regulate public health, safety, and morals. *Gibbons v. Ogden*, 22 U.S. 1 (1824).

It is in this context that Plaintiffs seek to substitute their judgment of the public interest for those representing us in the local, state, and federal government (ECF No. 2 at pp. 21-22). Plaintiffs' contention that the preliminary injunction favors the public interest in contrast to the global pandemic respectfully does not pass the laugh test.

Recognizing the unprecedented global pandemic, state and local officials came together to work within existing statutory authority to ensure a fair Nevada primary election while minimizing health risks to its voters. As set forth above, Plaintiffs only have speculation to support their claim that voting rights are being violated under these circumstances. Granting the preliminary injunction would simply create further chaos during an emergency. This prong strongly warrants denial of the motion.

## V. CONCLUSION

At most, this case presents a policy dispute about the relative merits of in-person voting processes and vote-by-mail processes during a pandemic. Secretary Cegavske acted within her authority, pursuant to NRS 293.213(4), to approve an all-mail election for the 2020 primary election. Her actions, and those of local election officials, have not imposed a discernable burden upon Plaintiffs' voting rights, nor have they created an increased risk of election fraud. For these reasons, the Court should deny Plaintiffs' motion for declaratory and injunctive relief.

DATED this 27th day of April 2020.

AARON D. FORD
Attorney General

By: *Gregory L. Zunino*
GREGORY L. ZUNINO, Bar No. 4805
Deputy Solicitor General
CRAIG A. NEWBY, Bar No. 8591
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1100
E-mail: glzunino@ag.nv.gov
E-mail: cnewby@ag.nv.gov

*Attorneys for Defendants*

-14-

# CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 27th day of April, 2020, I filed with this Court's CM/ECF electronic filing system, **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION,** and served by U.S. Mail to the address listed below:

David O'Mara, Esq.
The O'Mara Law Firm, P.C.
311 E. Liberty Street
Reno, Nevada 89501
David@omaralaw.net
*Attorneys for Plaintiffs*

James Bopp, Jr., Esq.
Richard E. Coleson, Esq.
Corrine L. Youngs, Esq.
Amanda L. Narog, Esq.
The Bopp Law Firm, PC
1 South Sixth Street
Terre Haute, IN 47807
jboppjr@aol.com
rcoleson@bopplaww.com
cyoungs@bopplaw.com
anarog@bopplaw.com
*Pro Hac Vice Pending*
*Attorneys for Plaintiffs*

Herbert Kaplan, Esq.
Washoe County Registrar of Voters
1001 E. 9th Street, Bldg. A
Reno, Nevada 89512
hkaplan@da.washoecounty.us
*Attorneys for Defendant Registrar of Voters*

_____
An employee of the Office
of the Attorney General