UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STANLEY WILLIAM PAHER, *et al.*, | Case No. 3:20-cv-00243-MMD-WGC |
| Plaintiffs, | ORDER |
| v. | |
| BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiffs[1] challenge a plan ("the Plan") that the Nevada Secretary of State ("Secretary"), in partnership with Nevada's 17 county election officials,[2] developed to implement an all-mail election for the upcoming June 9, 2020, Nevada primary election to address public health concerns caused by the spread of the coronavirus disease ("COVID-19") in Nevada. Proposed Intervenors-Defendants ("Proposed Intervenors")[3] seek intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, as permissive under Federal Rule of Civil Procedure 24(b)[4]. (ECF No. 27.) The Court will grant the motion to intervene ("Motion").

---

[1] Plaintiffs are registered Nevada voters: William Paher, Gary Hamilton, Terresa Monroe-Hamilton. (ECF No. 1 at 3.)

[2] Plaintiffs also name as a defendant the Registrar of Voters for Washoe County. (ECF No. 1.)

[3] Proposed Intervenors are Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, DCCC, Priorities USA, and John Solomon. (ECF No. 27 at 1.)

[4] The Court directed any response to the Motion to be filed by April 28, 2020, at 12:00 pm PST. (ECF No. 34.) No response was filed within the prescribed time.

## II. BACKGROUND

The following facts are taken from the Verified Complaint and exhibits attached thereto.

This action challenges the Secretary's decision to conduct an all-mail election for the June 9, 2020, primary. (ECF No. 1-1.) In the press released issued on March 24, 2020, the Secretary explained that the decision to implement the Plan was made to "maintain a high level of access to the ballot, while protecting the safety of voters and poll workers[—who belong to groups who are at high risks for severe illness from COVID-19—]." (*Id.*)

Under the Plan, all *active* registered voters will be mailed an absentee ballot (mail-in ballot) for the primary election. If a voter is registered to vote at his or her current address, they need not take any further action to receive an absentee ballot. (*E.g.*, ECF No. 1-3.) If an individual is not registered or needs to update registration information (e.g., such as name, address, and party), they are required to do so. (*Id.*) To accommodate same-day registration requirements enacted by the 2019 Nevada Legislature, the Plan also establishes at least one physical polling place in each of Nevada's counties and in Carson City. (ECF No. 1-1.)

Perhaps without much surprise to anyone who has followed states efforts to manage elections during this pandemic, the Plan faces legal challenges in both this Court and the state court. Here, Plaintiffs assert five claims for relief and request declaratory and injunctive relief to prevent the Secretary and county administrators from implementing the Plan. (ECF No. 1 at 8–13.) They particularly challenge the Plan's expansion of mail-in voting or in their characterization, "[t]he Plan would require the State to forego almost all in-person voting and instead conduct the Primary by mailed absent ballots." (ECF No. 1 at 9.) In contrast, in a lawsuit filed in state court ("State Court Action"), Proposed Intervenors "do not object to Defendants' expansion of vote by mail" but they assert where the Plan fall short is its failure to provide "meaningful opportunities for in-person voting" among other deficiencies. (ECF No. 27 at 3–4 & n.2; ECF No. 27-3 at 3–5.) And just as Proposed Intervenors have moved to intervene in this action, the group supporting

Plaintiffs have moved to intervene in the State Court Action. (ECF No. 27-1 at 5 n.3 (stating that "True the Vote, representing two different individual voters, filed a motion to intervene in the State Court Action, raising exactly the same arguments they have raised in this case").)

## III.    DISCUSSION

The Court agrees with Proposed Intervenors that intervention is warranted as a matter of right under Rule 24(a) and as permissive under Rule 24(b).

### A.    Intervention under Rule 24(a)

When evaluating motions to intervene as a matter *of right*, courts construe Rule 24 liberally in favor of potential intervenors, focusing on practical considerations rather than technical distinctions. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Nonetheless, an applicant for intervention bears the burden of showing that he/she is entitled to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Rule 24(a) permits anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect [his] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A party seeking to intervene by right must meet four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (citations omitted). "Failure to satisfy any one of the requirements is fatal to the application." *Id.* (quoting *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009)).

///

### 1. Factor One: Timeliness

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997) (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir.1990)). Proposed Intervenors moved for intervention within six days from the filing of the action and before the reply brief in support of Plaintiffs' motion for preliminary injunction is due under the Court's expedited briefing schedule. (ECF Nos. 1, 27.) There is no question that their Motion is timely.

### 2. Factors Two and Three: Significant Protectable Interest and Impairment of That Interest

Generally "[a]n applicant has a 'significant protectable interest' in an action if (1) [he] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [his] legally protected interest and the plaintiff's claims." *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). However, "[t]he 'interest' test is not a bright-line rule." *Alisal*, 370 F.3d at 919 (citations omitted).

Proposed Intervenors argue that Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates, and individual intervenor John Solomon's plan to vote by mail. (ECF No. 27 at 7.) Proposed Intervenors have sufficiently shown that they maintain significant protectable interests which would be impaired by Plaintiffs' challenge to the Plan's all-mail election provisions. That a group of voters similar to Plaintiffs have apparently moved to intervene in Proposed Intervenors' State Court Action further underscores the significance of the interests at stake and that impairment of the ability to protect the various interests will likely result should intervention be disallowed here.

### 3. Factor Four: Adequacy of Representation

Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention:

///

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (2003). Moreover, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki*, 324 F.3d at 1086).

Proposed Intervenors insist that because they disagree that the other aspects of the Plan are adequate to extend the franchise for all Nevada voters, their interests do not fully align with that of Defendants and Defendants therefore cannot adequately protect their interests in this action. (ECF No. 27 at 8–9.) However, in terms of this action, Proposed Intervenors' interests do not appear to diverge significantly from that of Defendants. Both groups presumably share the goal of protecting the all-mail election provisions of the Plan being challenged here. Nevertheless, Proposed Intervenors do not agree that the Plan goes far enough to protect the franchise, as evidenced by their State Court Action, and may present arguments about the need to safeguard Nevadan's right to vote that are distinct from Defendants' arguments. Indeed, a comparison of Defendants' response brief (ECF No. 28) and Proposed Intervenors' opposition brief (ECF No. 27-1) reveal divergent arguments.

Having considered the relevant factors under Rule 24(a), the Court agrees with Proposed Intervenors that they have demonstrated entitlement to intervene as a matter of right.

**B.     Intervention under Rule 24(b)**

Even if intervention as of right was not warranted in this case, Proposed Intervenors have demonstrated that they meet the requirements of permissive intervention.

Rule 24(b)(1)(B) permits a court to allow anyone to intervene who submits a timely motion and "has a claim or defense that shares with the main action a common question

of law or fact." An applicant "who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction." *Donnelly*, 159 F.3d at 412. Because a court has discretion in deciding whether to permit intervention, it should consider whether intervention will cause undue delay or prejudice to the original parties, whether the applicant's interests are adequately represented by the existing parties, and whether judicial economy favors intervention. *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989).

Proposed Intervenors have shown permissive intervention is warranted. Their motion is timely, they assert similar defenses in support of the Plan's all-mail election provisions, and their opposition brief raises arguments in response to Plaintiffs' challenges to the Plan and does not assert issues unrelated to this action. (*See* discussion *supra*.) Moreover, the Court finds intervention will not cause delay or prejudice given that the Motion was filed before Plaintiffs' reply brief was due and before the scheduled hearing on the merits.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Proposed Intervenors-Defendants' motion to intervene (ECF No. 27) is granted.

DATED THIS 28th day of April 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE