David O'Mara (NV Bar #8599)
The O'Mara Law Firm, P.C.
311 E. Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
David@omaralaw.net

*Local Counsel for Plaintiffs*

James Bopp, Jr. (Ind. bar #2838-84)*
   jboppjr@aol.com
Richard E. Coleson (Ind. bar #11527-70)*
   rcoleson@bopplaww.com
Corrine L. Youngs (Ind. bar #32725-49)*
   cyoungs@bopplaw.com
Amanda L. Narog (Ind. bar #35118-84)*
   anarog@bopplaw.com
True the Vote, Inc.
 Voters' Rights Initiative
The Bopp Law Firm, PC
1 South Sixth St.
Terre Haute, IN 47807‑3510
Telephone: 812/877-4745

*Pro hac vice

*Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Stanley William Paher**, **Terresa Monroe-Hamilton**, and **Garry Hamilton**,<br>Plaintiffs<br><br>v.<br><br>**Barbara Cegavske,** in her official capacity as Nevada Secretary of State, and **Deanna Spikula**, in her official capacity as Registrar of Voters for Washoe County,<br>Defendants | Case Number<br>3:20-cv-00243<br><br>**Reply in Support of Plaintiffs' Preliminary-Injunction Motion** |

Voters' Reply to Defendants in Support of Plaintiffs' Preliminary-Injunction Motion:

**I.**
**The Plan Violates Controlling Legislation and**
**Strips Vital Safeguards Against Voting Fraud.**

Voters explained that Chapter 293 requires the Secretary to enact implementing regulations but limits that to those (i) consistent with legislation and (ii) in place by the last business day in February. NRS 293.247. The Plan, then, as it was announced on March 24, 2020, imposed new regulations in violation of controlling law. Additionally, county clerks were required to "establish

1

election precincts" at least by March 18, 2020, NRS 293.343, but the Plan converted all precincts to mailing precincts after that deadline. The Secretary claims that because no changes were made to the precinct boundaries, the Plan was not untimely. ECF 28, p. 6. The Secretary also notes that early voting has "rendered precinct boundaries largely irrelevant in Nevada" despite that several provisions of the law require them. *Id.*

The Secretary ignores that Chapter 293, read as a complete legislative enactment, demonstrates that the Plan is not the Legislature's prescribed manner for conducting elections. But critically, the Secretary disregards the most obvious difference and safeguard for absent ballots as opposed to an all-mailed primary. While she claims that Voters conflate absent ballots and mailing precincts, ECF 28, p. 5, the Secretary's casual treatment of the request-mandate[1] as a safeguard of election integrity is glaring. Many of the additional safeguards claimed by the Secretary are obviated or unsupportable because the request-mandate for an absent ballot is disregarded.

For example, Voters say that the Plan dispenses with the requirement that a first time voter who registered by mail or computer cast their ballot in person to present identification and proof of residence. NRS 293.2725. The Secretary claims that "this is untrue because NRS 293.2725(2) sets forth an exception for first-time voters who submit to automated identity and residency verification as part of the initial registration process, or who mail proof of identity and residency along with their ballots." ECF 28, p. 6. But the Washoe County Recorder does not make this same declaration, and instead sets forth the singular procedure of checking the ballot signature. Of course, NRS 293.355 states that the Registrar is to follow the same procedures for mailed elections as for absent ballots; however, absentee ballots don't require "proof of identity and residency with their ballots" because that information is provided when requesting the ballot.

## II.
## Voters Satisfy the Requirements for a Preliminary Injunction.

Voters established the preliminary-injunction test, including the requirement that burdens at

---

[1] "Except as provided in NRS 293.272 and 293.502, a registered voter may request an absent ballot if, before 5 p.m. on the 14th calendar day preceding the election, the registered voter; (a) Provides sufficient written notice to the county clerk; and (b) Has identified himself or herself to the satisfaction of the county clerk." NRS 293.313.

this stage follow the burdens at trial, ECF No. 2, p.7, which Defendants don't dispute.

**A.   Voters have likely success on the merits.**

   **1.   The Plan violates the right to vote by removing safeguards against fraudulent votes that dilute legal votes.**

In II.A.1, Voters established that the Plan violates their right to vote by removing safeguards against fraudulent votes that dilute legal votes. The substantial risk and high likelihood of illegal votes is the harm for which the Legislature enacted key safeguards that the Plan removes, thereby creating a cognizable violation of Voters' right to vote. ECF No. 2, pp. 7-15.

*Standing*. The Secretary[2] says, Voters lack standing for this claim because (1) they lack an impending injury, (2) there is no causal connection between Voters' injury and the Plan, and (3) the requested relief will not redress the injury. ECF No. 28, p. 8-10. But the Secretary is wrong.

*Harm.* Plaintiffs have a cognizable, imminent harm. The harm is cognizable because key removed safeguards were intended to protect against fraudulent votes diluting Voter' votes. Voters explained that the fundamental right to vote can be denied several ways, *one* being debasement by dilution resulting from inadequate safeguards. ECF No. 2, p.7. The harm of removing key safeguards (Voters never said *all*, *see* ECF No. 28, p.3) intended to prevent illegal voting creates a substantial risk of vote dilution, a cognizable harm. ECF No. 2, pp. 7-11. Voters described the safeguards attending in-person and *request-only*-absent-ballot voting, ECF No. 2, p.12-13, both essentially abandoned in the Plan for most.[3] Removing the Legislature's safeguards creates a substantial risk of vote fraud by illegal voting. Voters need not prove that it will occur because the harm is well established as substantial and removal of key safeguards makes the risk substantial. The Secretary disputes that such substantial risk is cognizable, though she admits that standing exists if there is "'a substantial risk that the harm will occur.'" ECF No. 28, p.9 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). That substantial risk was the pre-

---

[2] Some Secretary and Registrar arguments overlap and these are addressed referencing the Secretary. Unique arguments by the Registrar are addressed as such where a response is needed.

[3] *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 192-94 (2008), recognized that voter roles include the unqualified and vote-fraud exists. A request is an important safeguard not limited to a residence-verification procedure. *Compare* ECF No. 28, p.5 *with* ECF No. 2, p.17.

3

cise harm that *Bush v. Gore*, 531 U.S. 98 (2000), held that the Florida Supreme Court had imposed by its lack of required "safeguards" to assure the integrity of the election and prevent vote dilution. *Id.* at 102. ECF No. 2, pp. 10-11. Based on that substantial risk, the Court halted canvassing. The Court didn't await proven vote dilution and didn't require plaintiffs to prove it; the substantial risk absent necessary safeguards sufficed. It is no answer to say that *Bush* was a one-time-only decision, ECF No. 28, p.7 n.3, because that opinion relied on a vote-dilution analysis *already well established* that applies here, and the *Bush* analysis has been cited by courts since then. *See, e.g.*, *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 592, 598 (6th Cir. 2012).[4]

The cognizable harm of vote dilution by lack of safeguards is an *imminent* injury. As Voters explained, ECF No 13, p.2, when the mail-in ballots are mailed to active, registered voters, the harms of sending unlawful ballots and of voter confusion occur, *see, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (confusion harm), because recipients will think that they may lawfully vote those ballots when those ballots are not lawful as set out ECF No. 2. A second harm occurs when voters actually mail or deliver those mail-in ballots because then the violation of Voters' right to vote actually occurs, given the lack of Legislature-prescribed safeguards that result in the cognizable risks of (a) vote fraud and debasement and dilution of Voters' right to vote and (b) an election without public confidence that it is legitimate. A third harm occurs when unlawful mail-in ballots are counted, which seals the vote-dilution and legitimacy harms in place, absent a new election under proper safeguards. Voters need not await some after-election evidence of illegal voting and consequent vote dilution and seek a new election.

Voters' harm is established as a matter of law, but it can also be illustrated. First, vote buying, coercion, and fraud has occurred with mail-in voting. *See, e.g.*, M. Fernandez, *Texas Vote-Buying Case Casts Glare on Tradition of Election Day Goods*, N.Y. Times, Jan. 12, 2014, https://www.nytimes.com/2014/01/13/us/politics/texas-vote-buying-case-casts-glare-on-

---

[4] The Registrar says there is "no infringement on the right to vote," because each Voter "will be afforded the right to vote," and that each can vote in person or by mailed ballot or by requested ballot. ECF No. 25, p. 12-13. But that misunderstands the harm claimed. The Registrar says vote dilution is a "larger-scale issue" dealt with under the Voting Rights Act. But this is not a VRA case, and the vote dilution established in Voters' opening brief does apply to individuals.

tradition-of-election-day-goads.html ; P. Elliott, *Why North Carolina's Election Fraud Hurts American Democracy*, Time USA Mag. Feb. 22, 2019, https://time.com/5535292/north-carolina-election-fraud/. In *U.S. v. Brown,* mail-in ballots were required to be notarized and notaries were sent to steal ballots from mailboxes and fill them out fraudulently, largely targeting impoverished minorities. 494 F. Supp. 2d 440, 457 (2007). *See also* R. Gonzales, *North Carolina GOP Operative Faces New Felony Charges That Allege Ballot Fraud*, NPR, July 30, 2019, https://www.npr.org/2019/07/30/746800630/north-carolina-gop-operative-faces-new-felony-charges-that-allege-ballot-fraud . F. Lucas, *15 Election Results That Were Tossed Over Fraudulent Mail-In Ballots,* Daily Sig. (2020), https://www.dailysignal.com/2020/04/21/15-election-results-that-were-thrown-out-because-of-fraudulent-mail-in-ballots/. Second, mail-in ballots can be filled out in private by someone other than the voter or by voters subject to undue influence. An Oregon survey found 5% of polled voters admitted someone else filled out their ballot. *A 'Modern' Democracy That Can't Count Votes*, Los Angeles Times, Dec. 11, 2000, https://www.latimes.com/archives/la-xpm-2000-dec-11-mn-64090-story.html . Third, mail-in ballots have been filled out fraudulently for ineligible, false, impersonated, or duplicate voter registrations. See, e.g.*, U.S. Has 3.5 Million More Registered Voters Than Live Adults — A Red Flag For Electoral Fraud*, Investor's Business Daily, Aug. 16, 2017, https://www.investors.com/politics/editorials/u-s-has-3-5-million-more-registered-voters-than-live-adults-a-red-flag-for-electoral-fraud/ ; *Oregon AG gets guilty plea voter fraud case*, Oregon Catalyst, Sept. 18, 2010, https://oregoncatalyst.com/3510-oregon-ag-gets-guilty-plea-voter-fraud-case.html.

In sum, the harm Voters claim is concrete, imminent, and well-established as a matter of law and by illustration. It is decidedly *not* "speculative." ECF No. 25, p.17; ECF No. 28, p.9.

*Causation.* Voters' vote-dilution harm is readily traceable to those creating the Plan that stripped key legislated safeguards, the lack of which creates the substantial risk of vote dilution. The Secretary's claim that "there can be no causal connection" because she "adhered to the letter of the law" in implementing the Plan. ECF No., p.9, errs. First, the Plan is not the manner the legislature provided (e.g., essentially eliminating in-person voting and ignoring the request-mandate for true absent ballots). Second, Defendants created and implement the Plan that causes the

substantial risk of vote dilution. That is direct causation.

*Redressability.* The Secretary *says* Voters must establish redressability, but *argues* harm and causation. ECF No. 28, p.8-10. *See* ECF No. 25, pp. 11-16 (Registrar only argues harm). The requested relief will redress the injury because it will enjoin the Plan, the harm's source.

In sum regarding standing, all elements are readily met and were self-evident in Voters' preliminary-injunction brief. ECF No. 2. So Voters have standing.

*Other arguments.* Nor are Defendants' other arguments persuasive. The Secretary says Voters "conflate 'mailing precincts' and 'absent ballots." ECF No. 28, p. 5. But as Voters explained, the *automatic* mailing of ballots—without *request*—make makes them not true absent ballots (which by law must be requested) and more accurately called "mail-in ballots." ECF No. 2, p.1 n.1. The Secretary concedes "the voter must affirmatively request an absent ballot in order to case the ballot by mail," ECF No. 28, p.5 (citing NRS 293.313), ignoring implications.

 The Secretary says Voters' "argument for discarding the *Anderson-Burdick* test is unpersuasive." ECF No. 28, p.7. She doesn't deal with Voters' detailed explanation of why it should not apply. She says *Reynolds-Bush* is about "apportionment" and "illegible ballots." ECF No. 28, p.7. That doesn't address why *Reynolds-Bush* controls *vote-dilution* cases and *Anderson-Burdick* governs legislated election laws. Nor does the Secretary cite any case saying a vote-dilution challenge brought under *Reynolds-Bush* is analyzed under *Anderson-Burdick*. But even under *Anderson-Burdick*, scrutiny must be strict. ECF No. 2, p.9 n.7 (disenfranchisement is severe)

The Secretary says Voters argued that vote dilution is "ballot-box stuffing"—labeling that "a colorful analogy" and "hyperbole"—and she says it doesn't "implicate altered or destroyed ballots." ECF No. 28, p.7. Those terms were in opinions describing ways the right to vote is violated, from which Voters identified their harm as debasement by vote dilution.

The Secretary says Voters disagree about policy over mail-in votes. ECF No. 27, p.7. But Nevada's policy was established *by the Legislature*, which showed no intention of turning an exception to the general plans of in-person and by-request absent ballots into *the statewide* plan. The Legislature necessarily deemed the safeguards attending in-person and by-request-absent-ballot voting *necessary for Nevada*. And that is a balancing that it is exclusively the job of the

Legislature. *Griffin v. Roupas*, 385 F.3d 1128, 1130-31 (7th Cir. 2004) (there is no constitutional right to vote absentee and in that context "striking the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment")

The Secretary *began* applying *Anderson-Burdick*, implying that vote dilution is not severe. ECF No. 28, p.7-8. But "disenfranchisement is a severe burden" as a matter of law. ECF No. 2, p.9 n.7. She says "Plaintiffs cannot demonstrate a burden upon their voting rights, only an imposition upon their preference for in-person voting," ECF No. 28, p.7, but she made no attempt to meet *her* strict-scrutiny burden to justify removing key Legislative safeguards.

The Registrar argues that Voters assert "only a generally available grievance about government." ECF No. 25, p.15. But disenfranchisement is a severe burden that is personal to the person disenfranchised. ECF No. 2, p.9, n.7. So voters experiencing it have standing to challenge government action that disenfranchises them, including by posing a substantial risk of doing so. So this case is not like *Lance v. Coffman*, 549 U.S. 437 (2007), which the Registrar cites and which found a generalized grievance in an entirely different and inapplicable context.

In sum, Voters have both standing and likely success on the merits.

**2. The Plan violates the right to vote for legislative representatives to establish the manner of elections by substituting a scheme that replaces the legislatures' plan.**

The Legislature passed laws to determine the manner of elections. The Defendants have disregarded this manner of voting and instituted the Plan instead. This invalidates Voters' votes for their chosen representatives.

But the Secretary argues that "those statutes were not actually violated." ECF No. 28, p. 10. But as previously stated, *supra* Part I, the Secretary did violate those statutes. The Secretary continues that "there would be no causal nexus between the violations and the alleged burden upon the right to vote for state legislators." The connection is discussed in *supra* Part II.A.1.

The Secretary summarizes Voters as having said "that the right to vote for a legislative candidate encompasses a right to protect that candidate, if elected, from future incursion upon his or her exercise of legislative powers." ECF No. 28, p. 10. That summary is incorrect. Voters actually assert that voters cast ballots for the legislators to pass laws and the executive branch is to

7

execute those laws. But here, those chosen representatives are not able to do the will of the voters where, as here, the Secretary creates the law and executes is it as she sees fit.

### 3.  The Plan violates the right to vote under the *Purcell* Principle.

Since Voters established standing to challenge the Plan as a violation of their right to vote, *supra* Part II.A.1, they have standing to protect that by asserting the *Purcell* Principle. The Principle is that election rules shouldn't be altered near elections because the alteration *itself* poses risks to the election and voting rights. Voters explained that the same rule should apply to the Plan—a late change to what voters expect with the risk of large numbers of unrequested ballots being circulated increasing vote-fraud risk. ECF No. 2, pp. 16-17. The Secretary seeks to apply that Principle to *this* Court. ECF No. 28, p.11. She says *Defendants* can make fundamental changes near an election in violation of the Principle but this Court can't right that wrong. The U.S. Supreme Court just rejected this same argument by staying a Seventh Circuit ruling for violating the Principle, though the Supreme Court's stay was nearer the election. ECF No. 2, pp.16-17. This Court can similarly fix Principle violations and vindicate the right to vote because otherwise election officials can make near-election changes with impunity.

### 4.  The Plan violates the Voters' right to have, and to vote in, federal elections with the manner of election chosen by the legislature (U.S. Const. art I, § 4, cl. 1).

The Plan violates Voters' right to have, and to vote in, a federal election where the "Manner" of election is "prescribed . . . by the Legislature," as required under the U.S. Constitution Art. I, § 4, cl. 1. Candidates for the office of U.S. Representative are on the primary ballot. Therefore, the primary must be conducted in the Legislature's prescribed manner. Here, the Secretary and County Administrators chose a manner that is not what the Legislature intended. They have eliminated safeguards against voter fraud that the legislature put in place. *See* Part I.A.

### 5.  The Plan violates the right to a republican form of government under the United States Constitution.

The loss of representative government and invalidation of votes for legislators identified in the preceding claims violates the Voters' right to "a republican form of government" under the U.S. Constitution. U.S. Const. Art. IV, § 4 ("Guarantee Clause"). This issue use to be considered a political question, but the Supreme Court left it wide open. *See Zivotofsky ex rel. Zivotofsky v.*

*Clinton*, 566 U.S. 189 (2012).

**B.   Voters have irreparable harm.**

The Voters have no remedy at law if the Plan proceeds and the election is held in violation of Voters' constitutional rights. If the Plan proceeds, the Voters will be irreparably harmed—their right to vote, to have equal protection of law, and to a federal election compliant with the federal constitution under Articles I, § 4, cl. 1 and IV, § 4 will be violated. *Supra* Part II.A.

**C.   The balance harms favors the injunction.**

The balance of harms firmly tips in favor of the injunction. The Voters' fundamental, constitutional rights are in jeopardy and will be violated by the Plan if it proceeds. Whereas for the Secretary and County Administrator, the Plan is not authorized by law and is orchestrated in violation of constitutional law and mandates. Defendants have no cognizable interest in the Plan and if the plan was enjoined Defendants would only be required to advance Nevada's election law as authorized and codified. There may be more absentee ballots issued than usual, but Nevada's active, registered voters have until May 26 to request an absent ballot. NRS 293.313 (*see* ECF No. 1 ¶ 33). And instead of sending mail-in ballots, the Defendants could send out absent ballot applications. The Supreme Court of New Mexico recently rejected an all-mail-in-ballot plan, instead ordering that absentee-ballot applications be mailed to registered voters so they could apply, in *State ex rel Riddle v. Oliver*, No. S-1-SC-38228 (Ariz. Apr. 16, 2020) (order available at https://cms.nmcourts.gov/uploads/files/News/38228%20Final%20Order%20(4-16-20).pdf). This ensures the protections the legislature intended are satisfied without compromising the ability of the electorate to vote or violating the Voters' constitutional rights.

Moreover, the Defendants' plan is speculative and is based on the fact that the public will suffer some sort of peril by going to the polls, which could be mitigated by masks and social distancing measures. But after the Supreme Court refused to allow an election procedure not prescribed by law to alter Wisconsin's primary election for the same reasons herein claimed, Wisconsin did not see a rise in cases of the coronavirus as a result of in-person voting. D. Wahlberg, *2 weeks after election, effect of in-person voting on COVID-19 spread unclear*, Fox News, Apr.

22, 2020, https://madison.com/wsj/news/local/govt-and-politics/two-weeks-after-election-effect-of-in-person-voting-on-covid-19-spread-unclear/article_58940724-a345-50cc-955c-62a60072c0f6.html.

The Registrar says that the issuance of the preliminary injunction is precluded by the principle of Laches. ECF 25, p. 18. And that "[t]he delay, which was unnecessary, is tantamount to Plaintiffs having slept on their rights . . ." ECF 25, p. 19. But the Voters did not sleep on their rights. As the Voters explained by declarations attached to *Plaintiffs' Supplement to Motion to Expedite Briefing Schedule and Hearing on the Merits*, ECF 13, they did not *actually* learn about the new Plan until they were informed of it on April 15, 2020. And as of April 22, 2020, the Voters had still not received any official correspondence from election officials, e.g., they have received no sample ballot, which is the sort of thing that would give them notice. Since the Voters were not aware of this Plan until very recently, there was no delay and this argument fails.

**D.   The public interest favors the injunction.**

It is in the public interest that the executive branch officials obey constitutional and statutory mandates and protect Voters' rights. The Secretary argues that "[g]ranting the preliminary injunction would simply create further chaos during an emergency." ECF 28, p. 14. It cannot create chaos to conduct elections as proscribed—the confusion results from the Plan. *Supra* Part II.A.3. The Defendants emphasize the Covid-19 virus as a guise to usurp prescribed election of Nevada and violate Voters' constitutional rights.

# Conclusion

For the reasons shown, this Court should preliminarily enjoin the Plan.

| | |
|---|---|
| Date: April 28, 2020 | Respectfully submitted, |
| /s/ David O'Mara<br>David O'Mara<br>311 E. Liberty Street<br>Reno, NV 89501<br>Telephone: 775/323-1321<br>David@omaralaw.net<br>*Local Counsel for Plaintiffs* | /s/ Amanda L. Narog<br>James Bopp, Jr. (Ind. bar #2838-84)*<br>　jboppjr@aol.com<br>Richard E. Coleson (Ind. bar #11527-70)*<br>　rcoleson@bopplaww.com<br>Corrine L. Youngs (Ind. bar #32725-49)*<br>　cyoungs@bopplaw.com<br>Amanda L. Narog (Ind. bar #36118-84)*<br>　anarog@bopplaw.com<br>True the Vote, Inc.<br>　Voters' Rights Initiative<br>The Bopp Law Firm, PC<br>1 South Sixth St.<br>Terre Haute, IN 47807‑3510<br>Telephone: 812/877-4745<br>*Pro hac vice application pending<br>*Lead Counsel for Plaintiffs* |

David O'Mara (NV Bar #8599)
The O'Mara Law Firm, P.C.
311 E. Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
David@omaralaw.net

*Local Counsel for Plaintiffs*

James Bopp, Jr. (Ind. bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (Ind. bar #11527-70)*
    rcoleson@bopplaww.com
Corrine L. Youngs (Ind. bar #32725-49)*
    cyoungs@bopplaw.com
Amanda L. Narog (Ind. bar #35118-84)*
    anarog@bopplaw.com
True the Vote, Inc.
 Voters' Rights Initiative
The Bopp Law Firm, PC
1 South Sixth St.
Terre Haute, IN 47807‑3510
Telephone: 812/877-4745

*Pro hac vice application pending

*Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Stanley William Paher**, **Terresa Monroe-Hamilton**, and **Garry Hamilton**,,<br><br>    Plaintiffs<br><br>v.<br><br>**Barbara Cegavske,** in her official capacity as Nevada Secretary of State, and **Deanna Spikula**, in her official capacity as Registrar of Voters for Washoe County,<br><br>    Defendants | Case Number<br>3:20-cv-00243<br><br>**CERTIFICATE OF SERVICE** |

1

I hereby certify that I am an employee of The Bopp Law Firm, PC., 1 South Sixth Street, Terre Haute, Indiana 47807, and on this date I served a true and correct copy of the *Reply in Support of Plaintiffs' Preliminary-Injunction Motion* on the following parties via this Court's CM/ECF electronic filing system and by U.S. Mail to the addresses listed below.

Gregory Louis Zunino
Nevada State Attorney General's Office
100 N Carson Street
Carson City, NV 89701
775-684-1137
Fax: 775-684-1108
Email: GZunino@ag.nv.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Henry J. Brewster
Perkins Coie LLP
700 Thirteenth St, NW
Ste 800
Washington, DC 2005-3960
202 654 6200
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

Craig A. Newby
Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
(775) 684-1206
Email: cnewby@ag.nv.gov
ATTORNEY TO BE NOTICED

Bradley Scott Schrager
Wolf, Rifkin, Shapiro, Schulman & Rabkin
3556 E. Russell Rd
Las Vegas, NV 89120
702-341-5200
Fax: 702-341-5300
Email: bschrager@wrslawyers.com
ATTORNEY TO BE NOTICED

Herbert B. Kaplan
One South Sierra Street
Reno, NV 89501
775-337-5700
Fax: 775-337-5732
Email: hkaplan@da.washoecounty.us
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Courtney A. Elgart
Perkins Coie LLP
700 Thirteenth St, NW
Ste 800
Washington, DC 20005-3960
202 654 6200
ATTORNEY TO BE NOTICED

Abha Khanna
Perkins Coie LLP
1201 Third Avenue
Ste 4900
Seattle, WA 98101-3099
206 359 8000
PRO HAC VICE
ATTORNEY TO BE NOTICED

Daniel Bravo
Wolf, Rifkin, Shapiro, Schulman, & Rabkin, LLP
3556 E. Russell Road, 2nd Floor
Las Vegas, NV 89120-2234
702-341-5200
Fax: 702-341-5300
Email: dbravo@wrslawyers.com
ATTORNEY TO BE NOTICED

| | |
|---|---|
| Jonathan P. Hawley<br>Perkins Coie LLP<br>1201 Third Avenue<br>Ste 4900<br>Seattle, WA 98101-3099<br>206 359 8000<br>PRO HAC VICE<br>ATTORNEY TO BE NOTICED | Marc Erik Elias<br>Perkins Coie LLP<br>700 13th Street, NW., Ste. 600<br>Washington, DC 20005<br>202-654-6200<br>Email: melias@perkinscoie.com<br>ATTORNEY TO BE NOTICED |
| Date: April 28, 2020 | Respectfully submitted, |
| David O'Mara<br>311 E. Liberty Street<br>Reno, NV 89501<br>Telephone: 775/323-1321<br>David@omaralaw.net<br>*Local Counsel for Plaintiffs* | Amanda L. Narog<br>James Bopp, Jr. (Ind. bar #2838-84)*<br>    jboppjr@aol.com<br>Richard E. Coleson (Ind. bar #11527-70)*<br>    rcoleson@bopplaww.com<br>Corrine L. Youngs (Ind. bar #32725-49)*<br>    cyoungs@bopplaw.com<br>Amanda L. Narog (Ind. bar #36118-84)*<br>    anarog@bopplaw.com<br>True the Vote, Inc.<br> Voters' Rights Initiative<br>The Bopp Law Firm, PC<br>1 South Sixth St.<br>Terre Haute, IN 47807‑3510<br>Telephone: 812/877-4745<br>*Pro hac vice<br>*Lead Counsel for Plaintiffs* |