David O'Mara (NV Bar #8599)
The O'Mara Law Firm, P.C.
311 E. Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
David@omaralaw.net

*Local Counsel for Plaintiffs*

James Bopp, Jr. (Ind. bar #2838-84)*
   jboppjr@aol.com
Richard E. Coleson (Ind. bar #11527-70)*
   rcoleson@bopplaww.com
Corrine L. Youngs (Ind. bar #32725-49)*
   cyoungs@bopplaw.com
Amanda L. Narog (Ind. bar #35118-84)*
   anarog@bopplaw.com
True the Vote, Inc.
 Voters' Rights Initiative
The Bopp Law Firm, PC
1 South Sixth St.
Terre Haute, IN 47807–3510
Telephone: 812/877-4745

*Appearing Pro hac vice

*Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **Stanley William Paher**, **Terresa Monroe-Hamilton**, **Garry Hamilton**, **Daryl Byron DeShaw**, **Jeff Ecker**, **Gary Gladwill**, **Linda Barnett**, and **Nevada Right to Life**,<br><br>    Plaintiffs<br><br>    v.<br><br>**Barbara Cegavske,** in her official capacity as Nevada Secretary of State, and **Deanna Spikula**, in her official capacity as Registrar of Voters for Washoe County, **Joseph P. Gloria**, in his official capacity as Registrar of Voters for Clark County,<br><br>    Defendants | Case Number: 3:20-cv-00243<br><br>**Amended Verified Complaint<br>for Declaratory and Injunctive Relief** |

Plaintiffs Stanley William Paher, Terresa Monroe-Hamilton, Garry Hamilton, Daryl Byron DeShaw, Jeff Ecker, Gary Gladwill, Linda Barnett, (collectively "Voters"), and Nevada Right to Life, by their Amended Complaint, complain as follows:

**1.** Nevada Secretary of State ("Secretary") and Nevada county clerks and registrars of voters

("County Administrators") intend to conduct the June 9, 2020, Nevada state and federal primary election under the "all-mail election" plan ("State Plan") on the Secretary's website. Under the State Plan, the Secretary and County Administrators intend to mail unrequested absentee ballots (herein "mail-in ballots") to *active* registered voters only: "All active registered voters in Nevada will be mailed an absentee ballot[1] for the primary election. No action or steps, such as submitting an absentee ballot request application, will be required by individual voters in order to receive a ballot in the mail." (Nevada Secretary of State ~ Absent Voting, *attached as* Ex. K.) Qualified voters who are not "active" must apply for one: "Any registered voter may request to vote by mail. To request an absent ballot, you must complete and submit an Absent Ballot Request Form to the County Clerk/Registrar of Voters in the county where you are registered to vote." Ex. K. This mail-in-ballot State Plan is *not* the Legislature's prescribed manner.

**2.**   Under the Clark County Plan, Clark County gives voters advantages over other-county voters, including by (i) sending absent ballots to inactive voters and, as reported, "allow a bipartisan group of deputized 'field registrars' to collect sealed ballots from voters." (ii) creating more vote centers than other Nevada counties.[2]

**3.**   The State Plan strips vote-fraud-prevention safeguards established by the Legislature, which allows illegal voting that violates Voters' right to vote by dilution. Among other constitutional flaws, the State Plan is not what the Legislature chose as required, U.S. Const. art I, § 4, cl. 1, so it may not be used where as here federal candidates are on the ballot. *See* https://www.nvsos.gov/sos/home/showdocument?id=8461 (Nevada Secretary of State, "2020

---

[1] The Secretary uses "absent*ee* ballot" synonymously with the Nevada term "absent ballot," Nevada Revised Statutes ("NRS") 293.013. (Secretary Cegavske Announces Plan to Conduct June 9, 2020 Primary Election by All Mail, *attached as* Ex. J.) But because the ballots are not sent per the legislatively required absent-ballot request procedure, they are actually like the *mail-in ballots* sent in statutory all-mail-voting plans, such as used in California.

[2] Rory Appleton, *New Clark County election plan decision shrouded in mystery, Law Vegas Review-Journal*, (May 6, 2020), https://www.reviewjournal.com/news/politics-and-government/clark-county/new-clark-county-election-plan-decision-shrouded-in-mystery-2022735/. (*attached as* Ex. Q.)

Non-Judicial Candidates Filed with the Secretary of State," *attached as* Ex. L.)

**4.** The State Plan violates Voters' (i) right to vote under the U.S. Constitution due to direct disenfranchisement, (ii) right to vote under the U.S. Constitution due to vote dilution, (ii) right to vote in a federal election compliant with the U.S. Constitution at Article I, § 4, cl. 1, and (iv), as to Clark County Defendants, the equal protection clause of the U.S. Constitution.

**Jurisdiction and Venue**

**5.** This action arises under 42 U.S.C. Section 1983, the First and Fourteenth Amendments to the Constitution of the United States, and Article I, Section IV the Constitution of the United States.

**6.** This Court has jurisdiction over all claims pursuant to 28 U.S.C. Sections 1331 and 1343(a). It also has jurisdiction pursuant to the Declaratory Judgment Act as codified at 28 U.S.C. Sections 2201 and 2202.

**7.** Venue is proper under 28 U.S.C. Section 1391(b) because a substantial part of the events giving rise to the claim occurred or will occur in this District.

**Parties**

**8.** Plaintiff Stanley William Paher eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of his choice. He is a resident of the city of Reno, County of Washoe and a duly registered voter in the State of Nevada. He votes early in-person.

**9.** Plaintiff Terresa Monroe-Hamilton is an eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of her choice. She is a resident of the city of Reno, County of Washoe and a duly registered voter in the State of Nevada. She is married to Plaintiff Garry Hamilton and both recently moved to Nevada and registered online on April 20, 2020. She usually votes early or on election day in-person.

**10.** Plaintiff Garry Hamilton is an eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of his choice. He is a resident of the city of Reno, County of Washoe and a duly registered voter in the State of Nevada. He is married

3

to Plaintiff Terresa Monroe-Hamilton and both recently moved to Nevada and registered online on April 20, 2020. He usually votes early or on election day in-person.

**11.** Plaintiff Daryl Byron DeShaw is an eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of his choice. He is a resident of the city of Las Vegas, County of Clark and duly registered voter in the State of Nevada. He is registered and qualified to vote in the 2020 June primary and intends to vote in-person.

**12.** Plaintiff Jeff Ecker is an eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of his choice. He is a resident of the city of Las Vegas, County of Clark and duly registered voter in the State of Nevada. He intends to vote in-person.

**13.** Plaintiff Gary Gladwill is an eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of his choice. He is a resident of the city of Dayton, County of Lyon and duly registered voter in the State of Nevada. He is also a candidate for county commissioner. He voted by mail.

**14.** Plaintiff Linda Barnett is an eligible and registered voter, who is qualified to and intends to vote in the upcoming primary of the political party of her choice. She is a resident of Carson City, County of Carson City and a duly registered voter in the State of Nevada. She voted by mail.

**15.** Plaintiff Nevada Right to Life ("NVRTL") is a statewide domestic nonprofit corporation that advocates for life in all of its stages and all ages. NVRTL achieves its mission by educating and mobilizing voters to elect pro-life candidates and through lobby efforts in the Nevada Legislature. NVRTL asserts the interests of its members, who include registered, eligible Nevada voters who intend to vote in the coming primary but fear disenfranchisement as outlined herein. It is a central mission of NVRTL to educate and motivate prolife voters to support prolife candidates and to assist them to do so as needed.

**16.** Defendant Barbara Cegavaske is Nevada's Secretary of State and is named in her official capacity. Secretary Cegavske is the Chief Officer of Elections for the State of Nevada. See Nev. Rev. Stat. § 293.124. Her responsibilities include, but are not limited to, execution and enforce-

ment of all provisions of state and federal law relating to elections, and adoption of such regulations as necessary to carry out the provisions of the state's election code, including the manner, number, and form of ballots to be printed for the state, and the distribution of ballots to precincts and districts.

**17.** Defendant Deanna Spikula is the Registrar of Voters in Washoe County, Nevada and is named as a Defendant in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include, but are not limited to establishing polling places, overseeing the election board, mailing ballots to registered voters, and implementing the Ballot Rejection Rules. *See Generally* Nev. Rev. Stat. § 293.

**18.** Defendant Joseph P. Gloria is the Registrar of Voters for Clark County, Nevada and is named in his official capacity. He is responsible for implementing Nevada's election laws within Clark County, and his responsibilities include, but are not limited to, establishing all-mail precincts in Clark County, establishing polling places, overseeing the election board, mailing ballots to registered voters, and implementing the Ballot Rejection Rules. *See Generally* Nev. Rev. Stat. § 293.

**Factual Allegations**

**19.** Under Nevada law, the primary election must be held on the second Tuesday in June of each even-numbered year. NRS 293.175(1). The 2020 Nevada's Primary is June 9. Candidates for the office of U.S. Representative are on the ballot for the June 9 primary. *See* Ex. L.

***The State Plan***

**20.** On March 24, 2020, in response to the Covid-19 pandemic, the Secretary, and County Administrators announced the State Plan: "to conduct an all-mail election for the June 9, 2020 primary election." (Secretary Cegavske Announces Plan to Conduct June 9, 2020 Primary Election by All Mail, *attached as* Ex. J); *see also* Ex. K.

**21.** Under the State Plan: "All active registered voters in Nevada will be mailed an absentee ballot for the primary election. No action or steps, such as submitting an absentee ballot request application, will be required by individual voters in order to receive a ballot in the mail." Ex. K.

**22.** Others who are qualified voters but not "active" won't get an absentee ballot without ap-

plying for one: "Any registered voter may request to vote by mail. To request an absent ballot, you must complete and submit an Absent Ballot Request Form to the County Clerk/Registrar of Voters in the county where you are registered to vote." *Id*.

**23.** Voters will mark their ballot at home "and then return it by mail using a postage-prepaid envelope or by dropping it off in person at a designated county location." *Id.*

**24.** Voters are reminded that mail-in ballots must be dropped off in person by the close of polls on Election Day, or postmarked by Election Day. *Id*.

**25.** Ballots that are postmarked by Election Day and received no later than seven days after the election will be counted. Additionally, if a voter fails to sign the ballot return envelope or the voter's signature does not match the one on file with the county election official, the voter will be contacted, and the voter will have up to the seventh day after the election to make the necessary correction. It is important to understand that these statutory deadlines will result in updating vote totals and election results for up to seven days after the election. *Id.*

**26.** Washoe County's notice, created on April 10, 2020, details the State Plan. (Primary Election Notice of Vote-By-Mail Election on June 9, 2020 and Official Sample Ballot, *attached as* Ex. M.) Washoe County voters will receive a mail-in ballot. Voters may return these ballots either by mailing them through the U.S. Postal Service or by dropping them at the Registrar's Office in Reno, Nevada. *Id.*

***Washoe County's Implementation of the State Plan***

**27.** Washoe County timely designated its precincts as in-person by notice to the Secretary on March 10, 2020, and Legislative Counsel on March 20, which was due March 31. NRS 293.206. (Washoe County Designation of Precinct and District Maps to Secretary of State on March 10, 2020, *attached as* Ex. A;  Washoe County Designation of 2020 Precinct and District Maps to Legislative Counsel on March 20, 2020, *attached as* Ex. B.)

**28.** Washoe County received approval from the Secretary to designate its precincts as mailing precincts on March 30. (Secretary of State's Approval of Washoe County to Designate All Precincts as Mailing Precincts on March 30, 2020, *attached as* Ex. C.) Under the statutory deadlines, this needed to be done before March 4. NRS 293.213(5).

**29.** Washoe County mailed public official notice of its proposed designation of all precincts as mailing precincts on March 31, (Washoe County March 31, 2020 Notice of Designation, *attached as* Exhibit D), and requested a notice to be published also on March 31. (Washoe County Request to Publish Notice of Designation on March 31, 2020, *attached as* Exhibit E); *see also* 213 (5)(a) and (b). Under the statutory deadlines, this needed to be done on or before March 4. NRS 293.206, 213(5).

**30.** On April 8 and thereafter, Washoe County published a notice designating all of its precincts as mailing precincts required by NRS 293.213(5)(a). (Washoe County Published Notice of All Mail Precincts on April 8, 2020, *attached as* Ex. F.)

**31.** The Washoe County Registrar claims that "the actual designation by my office of the mail precincts occurred on April 20, 2020." ECF No. 50 at ¶ 4. Plaintiffs have requested a copy of this "actual designation," but the notice was first published on April 8, so the "actual designation" was before expiration of the 14 day prior notice period required by NRS 293.213(5), i.e., April 22. Under the statutory deadlines, this needed to be done by March 18. NRS 293.205(1).

**32.** Plaintiffs have also requested a copy of any subsequent notice to the Secretary and Legislative Counsel of this actual designation on April 20 as required by NRC 293.206. The statutory deadline was March 31. NRS 293.206.

*The Clark County Plan*

**33.** Clark County timely designated its precincts as in person by notice to the Secretary and Legislative Counsel on March 30. (Clark County Designation of precinct and District Maps to Secretary of State and Legislative Counsel on March 30, *attached as* Ex. G); *see also* NRS 293.206.

**34.** Clark County requested approval from the Secretary to designate its precincts as mailing precincts on March 18, 2020. (Clark County's Request to Designate All Mail Precincts, *attached as* Ex. R.) Thereafter, the Secretary gave her approval. Under the statutory deadlines, this needed to be done before March 4. 213(5).

**35.** Clark County mailed public officials notice of its proposed designation of all precincts as mailing precincts on March 30, 2020. (Election Department Letter to City Counsel Ward 1, *at-*

7

*tached as* Ex. S); *see also* NRS 293.213(5)(b). Under the statutory deadlines, this needed to be done on or before March 4. NRS 293.206, 213(5).

**36.** On April 9, Clark County published a notice designating all of its precincts as mailing precincts required by § 213(5)(a). (Clark County Published Notice of All Mail Precincts, *attached as* Ex. H.) Under the statutory deadlines, this needed to be done on or before March 4. NRS 293.206, 213(5).

**37.** Beginning on April 2, the Clark County Registrar provided public notice of that all precincts in Clark County would be mailing precincts and designated certain paces as "drop off locations" for mail ballots. (April 2, 2020 Clark County Notice of All Mail Precincts and Ballot Drop off Centers, *attached as* Ex. I.) But this notice was first published on April 2 before the 14 day prior notice period required by NRS 293.213(5) began, since that notice, (ex. H), wasn't published until April 9. Under the statutory deadlines, this needed to be done on or before March 18. 205(1).

**38.** Plaintiffs have also requested a copy of any subsequent notice to the Secretary and Legislative Counsel of this actual designation of the mailing precincts, as required by NRS 293.206. The statutory deadline was March 31. NRS 293.206.

**39.** On May 4, 2020, by court filing, Clark County announced its election plan ("Clark County Plan"). For the June 9 primary election, Clark County is setting up two additional election day voting sites and will mail absent ballots to all registered voters, including inactive voters, at additional expense. (*Joinder in the Oppositions to Plaintiffs' Motion for Preliminary Injunction Filed by Defendants Cegavske, Ford, Spikula, and Jakeman*, *Corona, et al.  v. Cegavske, et al.*, case no. 20 OC OOO64 1B, First Judicial District Court in Carson City, Nevada, *attached as* Ex. P, at 2.)

**40.** Clark county will "allow a bipartisan group of deputize 'field directors' to collect sealed ballots from voters as part of its changes." Ex. Q; (*see also* Mark Elias Tweet, *attached as* Ex. N) ("For the primary election, Clark County will: Mail ballots to ALL registered voters, Open 2 additional polling places, Reform its signature review process, Notify voters if they need to fix a signature issue, deputize 20 individuals to collect voted, sealed ballots.")

1    **41.** Mail ballots to active, registered voters went out on May 6, 2020. *Id.*

2    **42.** Clark County is paying for the expense of an all-mail election, "including the acquisition

3    of mail ballot and signature verification hardware and software at an expense of $331,750." Ex.

4    H at 6.

5    **43.** "To expand the provision of same-day registration and in-person voting on election day,

6    Clark County will have to acquire the use of additional printers that are capable of printing the

7    individualized ballot for each prospective voter with the accuracy required to have it counted

8    with the County's automated ballot counting machines. There are only 60 printers available from

9    the County's vendor that can be delivered and programmed by Primary Election Day. The cost of

10    leasing the available printers for one year will be $138,997.50" *Id.*

11    **44.** The additional available printers are divided into two sites. The two additional vote cen-

12    ters will be staffed with about 25-30 personnel. *Id.*

13    **45.** It will cost Clark County $184,738.01 to mail ballots to inactive voters in Clark County.

14    *Id.* at 7. "On February 25, 2020, 39,517 voters were designated as INACTIVE." See

15    https://www.clarkcountynv.gov/election/Pages/InactivatedVoter.aspx.

16    **46.** It will take seven days to assemble the ballot packets to inactive voters. *Id.* At least 90%

17    of those ballots will be returned a undeliverable. *Id.*

18    **47.** The Clark County voter turn out for a primary election in an even year is low. The turnout

19    is generally between 15.80-20.41% of registered voters. *Id.*

20    ***Nevada Election Law***

21    **48.** The Nevada Legislature has enacted detailed legislation governing how elections are to

22    be conducted in NRS Title 24, Chapter 293 (titled "Elections).[3]

23    **49.** Chapter 293 requires the Secretary to enact implementing regulations, but § 247 limits

24    that to when a regulation (i) is consistent with legislation and (ii) in place by the last business day

25    of February before the primary:

26    The Secretary of State shall adopt regulations, *not inconsistent with the election laws* of this

27    _____

28    [3] *Available at* https://www.leg.state.nv.us/NRS/NRS-293.html.

9

State, for the conduct of primary, general, special and district elections in all cities and counties. Permanent regulations of the Secretary of State that regulate the conduct of a primary, general, special or district election and are effective *on or before the last business day of February* immediately preceding a primary, general, special or district election govern the conduct of that election.

NRS 293.247 (emphasis added).

**50.** The law mandates that county clerks "shall establish election precincts"[4] "on or before the third Wednesday in March of every even-numbered year." NRS 293.205. Although county clerks may establish "mailing precincts" (where all ballots are mailed, with certain exceptions) under certain guidelines, NRS 293.343, those like all precincts had to be established by March 18 under NRS 293.205.

**51.** Moreover, "on or before the last day in March of every even-numbered year, the county clerk shall provide the Secretary of State and the Director of the Legislative Counsel Bureau with a copy or electronic file of a map showing the boundaries of all election precincts in the county," NRS 293.206, and this was apparently not done given the substitution of the State Plan.

**52.** The law requires that clerks establish and the Secretary approve maps of precincts, 293.205 and .206, indicates the Legislature's intent for such precincts for in-person voting, not that the whole election be subsumed under an exception allowing mailing districts in certain circumstances, e.g., "whenever there were not more than 20 voters registered in a precinct for the last preceding general election, the county clerk may establish that precinct as a mailing precinct," NRS 293.213(1).

**53.** And to create new mailing precincts, the legislature provided legal requirements for "establishing" or "designating" such a precinct:

**1)** The deadline to "establish[] election precincts" and "designate precincts" is "by on or before the third Wednesday in March of every even-numbered year"—March 18, 2020. NRS 293.205(1).

**2)** Notice must be "posted in the manner prescribed for a regular meeting of the board of

---

[4] "[S]tatutes . . . that employ the term 'shall' are presumptively mandatory." *Nev. Pub. Emps. Ret. Bd. v. Smith*, 129 Nev. 618, 627, 310 P.3d 560, 566 (2013) (citation omitted).

county commissioners" and mailed to many public officials, NRS 293.213 (5) (a) and (b), 14 days prior to "establishing or designating a precinct as a mailing precinct"—March 4, 2020. NRS 293.213 (5).

**3)** Prior approval from the Secretary to "establish a mailing precinct" must be obtained before the notices required by NRS 293.213(5)(a) and (b) are sent out—before March 4, 2020. NRS 293.213(4).

**4)** The county clerk shall notify the Secretary and Legislative Counsel of boundaries of all election precincts by March 31, 206, after they are established and designated. § 205(1). It is unknown if or when the Washoe Registrar did this a second time after redesignating all precincts as mailing precincts.

**5)** Section 343 et seq. establishes the procedures for mailing precincts, "whenever the county clerk has designated a precinct as a mailing precinct." NRS 293.343(2)

**54.** The intent of the Legislature to have regular in-person voting and absentee procedures as the controlling model, with certain exceptions, is evidenced throughout Chapter 293 in its provisions for regular voting. The State Plan is not the Legislature's prescribed manner.

**55.** Where mailing precincts are created, "county clerk[s] shall, at least 14 days before establishing or designating a precinct as a mailing precinct . . . cause notice of such action to be: (a) Posted [as prescribed] . . . ; and (b) Mailed to each Assemblyman, [etc. as prescribed]. *Id.*

**56.** NRS 293.3568 requires provision for early in-person voting at permanent polling places, but the Clark County Registrar of Voters' doesn't identify locations for doing that. (Ex. I.)  The Secretary and County Administrators have apparently determined that § 3568 is no longer applicable and that "[i]f a request is made to vote early by a registered voter in person, the election board shall issue a ballot for early voting to the voter," NRS 293.356, they need not comply. That "ballot must be voted on the premises of a polling place," *id.*, but in this case, the Registrar has decided to circumvent the Legislature and only provide a mail ballot drop-off location and not a permanent or temporary location to request a ballot and have it voted there.

**57.** "Each county clerk shall establish and maintain a computerized database of registered voters in the county that is compatible with the statewide voter registration list and meets such

technical requirements as may be prescribed by the Secretary of State." NAC 293.454(1).

**58.** County Clerks have the authority to correct statewide voter registration lists to determine whether residence is accurate and make investigations of registration. NRS 293.530.

*Inactive Voter List*

**59.** An voter is considered "active" if the residential address of the registered voter is current. Id. at (1)(c)(2)(a). A voter is considered "Inactive" if the registered voter failed to return a post-card mailed pursuant to NRS 293.530.

**60.** Pursuant to NAC 293.412(1)(a), "[a] county clerk shall: Maintain a separate list of inactive voters or designate inactive voters as such on regular lists of registered voters and election board registers."

**61.** A voter is deemed inactive "if the registered voter failed to return a postcard mailed pursuant to subsection 3 of NRS 293.530." NAC 293.454(2)(e). Additionally, Nevada law defines an inactive voter as a voter designated as inactive pursuant to NRS 293.530 whose registration has not been cancelled." NAC 293/412(6).

**62.** But, an inactive voter may only vote in person at a polling place and not be absent ballot. NAC 293.412(5).

**63.** A county clerk may only cancel a voter's registration if:

   1) The county clerk mails a written notice to the voter which the United States Postal Service is required to forward;

   2) The county clerk mails a return postcard with the notice which has a place for the voter to write his or her new address, is addressed to the county clerk and has postage guaranteed;

   3) The voter does not respond; and

   4) The voter does not appear to vote in an election before the polls have closed in the second general election following the date of the notice.

NRS 293.530.

*Anti-Vote-Fraud Safeguards*

**64.** Nevada requires that "a person who registered by mail or computer shall, for the first

election in which the person votes at which that registration is valid, vote in person unless he or she has previously voted in the county in which he or she is registered to vote." NRS 293.272(1). And an individual who registers at the Department of Motor vehicles, by mail, or by computer must present valid identification and a document establishing residence. NRS.293.2725.[5]

**65.** For all in-person voters whose name appears on the roster of registered voters (or they provide an affirmation that they are entitled to vote), the voter "state his or her name to the election board officer in charge of the roster," who "shall . . . [a]nnounce the name of the registered voter," require a signature and then authenticate it or resolve any discrepancy. NRS 293.285. The voter "must sign his or her name in the roster or on a signature card when he or she applies to vote." NRS.293.277(1). This is all done before witnesses who may know the person, but in any case can watch the person's demeanor and can see if the person is trying to duplicate a signature from an exemplar or produces the signature spontaneously. There are some exceptions, but those are the general rules, and they allow local poll workers and watchers to monitor who is voting and deny voting and issue challenges if appropriate—as does in-person voting in general.

**66.** The signature is then compared by an election board officer with the signature on file or on approved identification cards, such as a driver's license. *Id.* at (1)-(2). Records are checked to assure the voter has not already voted. *Id.* at (3). The law provides that any person who votes knowing he or she is not qualified commits a Class D felony, as does one attempting to vote in the name of another. NRS 293.775. The same penalty applies to those voting more than once in the same election. NRS 293.780

**67.** Nevada requires the safeguard that a voter must *request* the ballot: "Except as provided in NRS 293.272 and 293.502, a registered voter may request an absent ballot if, before 5 p.m. on the 14th calendar day preceding the election, the registered voter; (a) Provides sufficient written notice to the county clerk; and (b) Has identified himself or herself to the satisfaction of the county clerk." NRS 293.313.

---

[5] Likewise, where mail voting has been authorized by law, individuals could only vote by mail if they provide the county clerk the same information required at the polling location. NRS 293.2725(1)(b)(1)-(2).

**68.** The Nevada Administrative Code provides that, "A clerk that receives a request for an absent ballot shall: (1) Compare the address of the voter's residence in this State which is indicated on the request with the address which is indicated on the voter's application to register to vote." NAC 293.295. 293.295. If the address is different on the voter registration and absent ballot applications, the court will send a written notice including: "(a) A copy and explanation of the provisions set forth in NRS 293.525; and (b) A postcard to be returned by the voter to the county clerk which includes verification of the address of the voter's residence in this State.  The county clerk shall use a postcard that may not be forwarded to an address of the voter which is different from the address to which the notice is mailed." NAC 293.295(2).

**69.** The safeguards in place when a registered voter moved "from one precinct to another or from one congressional district to another within the same county" require that the registered voter "must be allowed to vote in the precinct where the elector previously resided" but only after "providing an oral or written affirmation before an election board officer attesting to his or her new address." NRS 293.525. Even if the registered voter moved within the same precinct, that elector must only be "allowed to vote after providing an oral or written affirmation before an election board officer attesting to his or her new address." *Id.*

***Covid-19***

**70.** The COVID-19 pandemic has been a significant concern for the American people; however, the situation is beginning to improve.

**71.** On March 15, 2020, Governor Steve Sisolak ordered temporary closures of schools across Nevada until April 6, 2020. He closed all state offices and urged local governments to prohibit gatherings of 50 or more people.[6]

**72.** Soon after, Sisolak ordered a sweeping shutdown of nonessential businesses, including

---

[6] Jackie Valley and Michelle Rindels, *Sisolak calls for state office closures, limits on large gatherings to slow 'rapid spread' of coronavirus*, The Nevada Independent, (March 15, 2020),
https://thenevadaindependent.com/article/sisolak-calls-for-state-office-closures-limits-on-large-gatherings-to-slow-rapid-spread-of-coronavirus.

restaurants, bars, pubs, wineries, breweries, coffee shops, gyms, shopping malls and salons.[1] Grocery stores, pharmacies, drug and convenience stores, banks and financial institutions, hardware stores, truck stops and truck service centers, daycares, businesses that provide services to disadvantaged populations and gas states, as well as police, fire, transit and healthcare services are included in the list of essential services.[2]

**73.** As of May 12, 2020, Nevada has had 6,154 Covid-19 cases with 319 deaths statewide.[9]

**74.** Along with other states, Nevada has begun to emerge from its pandemic shutdown with phase one of reopening.[10] Beginning on May 9, 2020, restaurants, pubs wineries, bars & breweries that serve food, barber shops, hair salons, nail salons, retail businesses, cannabis dispensaries.[11]

**75.** The curve is flattening, the spread of the virus is being controlled, the fatality rate is decreasing rapidly, testing is more readily available and widespread, and the death rate is much

---

[1] Megan Messerly, Jackie Valley, Jacob Solis, and Riley Snyder, Sisolak orders statewide clsoure of nonessential businesses, incluidng casinos, following in footsteps of other states, The Nevada Independent, (March 17, 2020), https://thenevadaindependent.com/article/sisolak-to-order-statewide-closure-of-non-essential-businesses-including-casinos-following-in-footsteps-of-other-states.

[2] KTNV Staff, What are essential, nonessential services in Nevada?, https://www.ktnv.com/news/nevada-health-response-center-shares-updated-list-of-essential-nonessential-services, (March 18, 2020), https://www.ktnv.com/news/nevada-health-response-center-shares-updated-list-of-essential-nonessential-services.

[9] Mindy Weisberger, Nevada: Latest updates on coronavirus, Livescience, (May 12, 2020), https://www.livescience.com/nevada-coronavirus-updates.html.

[10] Bill Dentzer and Colton Lochhead, *Some businesses to reopen Saturday, but not casinos, Las Vegas Review-Journal*, (May 7, 2020), https://www.reviewjournal.com/news/politics-and-government/nevada/some-businesses-to-reopen-saturday-but-not-casinos-2023007/.

[11] Roadmap to Recovery for Nevada, Phase One, https://nvhealthresponse.nv.gov/wp-content/uploads/2020/05/Roadmap-to-Recovery-Phase-One-Initial-Guidance.pdf.

lower than originally expected.[1] COVID-19 related deaths have decreased by over 90% since mid-April.[2]

**76.** As a result, the United States has started re-opening. And the existing protective measures have been adjusted as knowledge of the virus increases and the risk lowers.[14]

**77.** Many states have already relaxed their stay-at-home orders including reopening *inter alia* retail businesses, restaurants, gyms, beaches, salons; and restarting elective medical procedures. *Id*. And many of the states that have not yet re-opened, have established plans to do so this month. *Id*.

**78.** Expanding mail balloting is unnecessary to combat COVID-19. The same social distancing and good hygiene practices— which are effective for preventing the spread of the virus when going out for essential services, like grocery shopping and other essential services—are also an effective way to prevent the spread of the virus for in-person voting.

**79.** Voters are able to vote in-person while social distancing and taking appropriate precautions (i.e. wearing gloves, wearing a mask, sanitizing hands, not touching one's face, etc.) to protect themselves and others from the virus.

**80.** There has been no established causal link between in-person voting and the contracting of COVID.

---

[1] *See This is where all 50 states stand on reopening*, CNN.com, https://www.cnn.com/interactive/2020/us/states-reopen-coronavirus-trnd/*; see also Provisional Death Counts for Coronavirus Disease (COVID-19)*, CDC, https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm; *COVIDView*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last visited May 7, 2020); *Coronavirus death rate may be lower than previously thought*, LiveScience.com, https://www.livescience.com/death-rate-lower -than-estimates.html (showing that in March, the death rate was around just .0066).

[2] *Provisional Death Counts for Coronavirus Disease (COVID-19)*, CDC, https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm.

[14] *This is where all 50 states stand on reopening*, CNN.com, https://www.cnn.com/interactive/2020/us/states-reopen-coronavirus-trnd/.

**81.** Weeks after the Wisconsin election, COVID-19 cases had not spiked.[1]

***Mail Balloting Issues***

**82.** Vote buying, coercion, and fraud has occurred with mail voting.[2] An Oregon survey found 5% of polled voters admitted someone else filled out their ballot.[17]

**83.** In Wisconsin, election workers were not prepared for the significant increase in absentee ballots. Several bins containing undelivered ballots were found after the election, either "on their way to voters or already filled out and on their way back to clerks."[18]

**84.** The United States Postal Service (USPS) poorly executed Wisconsin's mail-in ballot process. According to the Wisconsin Election Commission Administrator, several bins containing numerous ballots were found by state officials undelivered after the election, either "on their way

---

[1] *Two weeks after election, COVID-19 cases have not spiked in Wisconsin but experts urge caution about conclusions*, Milwaukee Journal Sentinel, https://www.jsonline.com/story/news/2020/04/22/covid-19-hasnt-spiked-after-wisconsin-election -experts-urge-caution/2997394001/.

[2] *See, e.g.*, M. Fernandez, *Texas Vote-Buying Case Casts Glare on Tradition of Election Day Goads*, N.Y. Times, Jan. 12, 2014, https://www.nytimes.com/2014/01/13/us/politics/texas- vote-buying-case-casts-glare-on-tradition-of-election-day-goads.html; P. Elliott, *Why North Carolina's Election Fraud Hurts American Democracy*, Time USA Mag. Feb. 22, 2019, https://time.com/5535292/northcarolina-election-fraud/; R. Gonzales, *North Carolina GOP Op- erative Faces New Felony Charges That Allege Ballot Fraud*, NPR, July 30, 2019, https://www.npr.org/2019/07/30/746800630/north-carolina-gop-operative-faces-new- felonycharges-that-allege-ballot-fraud; F. Lucas, *15 Election Results That Were Tossed Over Fraudulent Mail-In Ballots,* Daily Sig. (2020), https://www.dailysignal.com/2020/04/21/15-election-results-that-were-thrown-out-because-of-fra udulent-mail-in-ballots/.

[17] *A 'Modern' Democracy That Can't Count Votes*, Los Angeles Times, Dec. 11, 2000, https://www.latimes.com/archives/la-xpm-2000-dec-11-mn-64090-story.html.

[18] Patrick Marley, Alison Dirr & Mary Spicuzza, *Wisconsin is discovering problems with absentee ballots, including hundreds that were never delivered*, Milwaukee Journal Sentinel, April 8, 2020, https://www.jsonline.com/story/news/politics/elections/2020/04/08/wisconsin -election-3-tubs-ballots-found-mail-processing-center/2971078001/.

to voters or already filled out and on their way back to clerks."[1]

**85.** There were reports that over 9,000 voters who requested a ballot by mail never received one.[2]

**86.** Reports documented workers putting in 110 hour weeks resulting in an overworked workforce and a systemic failure to maintain accuracy without falling behind. *Id*. One County Clerk described there being  "no way humanly possible" to keep up with amount of ballot requests. *Id*. The head of the Milwaukee Election Commission described the situation as "chaos" and "not an appropriate environment to be administering an election." *Id*.

**87.** Charles Stewart at the Massachusetts Institute of Technology says that the root of the problem was the fact that "[t]his system was designed for a world in which 5% of voters voted by mail, not for a system in which 70% of voters voted by mail . . . [s]o something has to give, and the thing that ends up giving is probably the accuracy of the request for the ballot." *Id*.

**88.** Similarly, in Idaho, the election has been "fraught with problems."[21] Many ballots had errors, resulting in more than 7,000 reissued ballots. *Id*.

**89.** And election officials could not keep up with requests, as they received tens of thousands ballot requests and "had only a few people to handle them." *Id*.

**90.** "The influx of absentee ballot requests far exceeded what officials originally estimated

---

[1] Patrick Marley, Alison Dirr & Mary Spicuzza, *Wisconsin is discovering problems with absentee ballots, including hundreds that were never delivered*, Milwaukee Journal Sentinel, April 8, 2020, https://www.jsonline.com/story/news/politics/elections/2020/04/08/wisconsin-election-3-tubs-ballots-found-mail-processing-center/2971078001/ (last visited Apr 25, 2020). (stating "100 or more ballots a day were returned to the village as undelivered in the week leading up to the election.")

[2] Nick Corasaniti & Stephanie Saul, *Inside Wisconsin's Election Mess: Thousands of Missing or Nullified Ballots*, The New York Times, April 9, 2020, https://www.nytimes.com/2020/04/09/us/politics/wisconsin-election- absentee-coronavirus.html (last visited Apr 24, 2020).

[21] Hayley Harding, *Ada County had to reissue 7,000 ballots for May primary. Here's how things went wrong*, Idaho Statesman, May 3, 2020, https://www.idahostatesman.com/news/politics-government/state-politics/article242373146.htm.

for the state primary[,]" putting county election officials under considerable pressure and result-
ing in errors. *Id*.

**91.** In existing all-mail voting states, a large number of mailed ballots does not present as
much of an issue because they have the required equipment to process them. *Id*. However, other
states lack the necessary infrastructure and equipment to process the influx of mailed ballots. *Id*.

**92.** Absentee voting is far more expensive and complicated than in-person voting. Recently
the Brennan Center estimated costs of "maintaining in-person voting" nationally as $271.4 mil-
lion. The total estimated cost to provide all Americans with a "vote by mail option" was between
$982 million and $1.4 billion.[1]

**93.** States that have moved to "all-mail elections took many years to get there . . . putting too
much strain on an entirely new system is sure to result in breakdowns and failures." *Id*. The same
breakdowns and failures would occur with a swift transition to many more absentee ballots.

**94.** Surveys have shown that Americans are concerned with an increase in fraud if mail in
voting is implemented nationwide and that some fear there vote may not be counted.[23]

**95.** On a national scale, data from federal Election Assistance Commission reports that from
2012 to 2018 over 28 million mail in ballots—nearly one in five mail in ballots cast—went miss-
ing.[24]

---

[1] Lawrence Norden et al., Report: Estimated Costs of Covid-19 Election Resiliency Measures Brennan Center for Justice (2020),
https://www.brennancenter.org/our-work/research-reports/estimated-costs-covid-19-election-resiliency-measures; *see also* M. Mindy Moretti, In Focus This Week: What are costs of voting by mail? Electionline.org (2020), https://electionline.org/electionline-weekly/2020/04-23/ (finding that absentee voting is more expensive than in person voting).

[23] *See*, *e.g.*, *Battleground Survey of African Americans*, BlackPAC,
https://drive.google.com/file/d/1gFfhsgiwgnSNQv3p0CchJJ2AGSJ76Irg/view; *Most Support Voting By Mail But Have Fraud Concerns*, Rasmussen Reports (2020),
https://www.rasmussenreports.com/public_content/politics/general_politics/april_2020/most_support_voting_by_mail_but_have_fraud_concerns?fullbrowser;

[24] *See* Mark Hemingway, *28 Million Mail-In Ballots Went Missing in Last Four Elections*, Real Clear Politics, 2020,
https://www.realclearpolitics.com/articles/2020/04/24/28_million_mail-in_ballots_went_missing

**96.** These same serious consequences are already being reported in Nevada. Daniel D. Virgilio, a registered voter in Nevada, says that just "[l]ast week, I found my ballot for the June primary outside of my mailbox with a handful of other discarded ballots. Over a two day period, I saw about 4 or 5 ballots discarded a day. I saw about 10 ballots over the course of two days. Some of the ballots were in the trash can, some were on the floor behind the trash can and the ledge, and some were on the ledge." (Declaration of Daniel Virgilio, *attached as* Ex. O, ¶ 5.)

**Claims for Relief**

**Count I**
**The State Plan Violates the Fundamental Right to Vote by Direct Disenfranchisement.**
**(42 U.S.C. § 1983; U.S. Const. amends. I and XIV)**

**97.** Plaintiffs re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

**98.** The right to vote, with the included right to have one's vote counted, is protected by the First and Fourteenth Amendments and is fundamental, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966), and well-established: "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections" and to have that vote counted. *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

**99.** "The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing." *Id.* at 555 (internal citations omitted). "And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.*

**100.** "[T]he striking of the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment . . . ." *Griffin v. Roupas*, 385 U.S. 1128, 1131 (7th Cir. 2004). "[S]tates that have more liberal provisions for absentee voting may well have different political cultures . . . . One size does not fit all." *Id.*

**101.** Voting fraud connected to Mail-in ballots is well-established as a cognizable harm, along with the related needs to protect election integrity and safeguard voter confidence. *See,*

_____

 in_last_four_elections_143033.html.

*e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 192-97 (2008) (citing and relying on, *inter alia*, the Report of "the Commission on Federal Election Report, chaired by former President Jimmy Carter and former Secretary of State James A. Baker III"). *See also Griffin*, 385 U.S. at 1130-31 (absentee ballot problems that require the legislature to balance).

**102.** The legislature did *not* prescribe an all-mail election or even a predominantly by-mail election, but rather an in-person election with limited mail-vote exceptions. By not prescribing such a mail-in-ballot voting scheme, the legislature exercised its balancing and manner authority to decide *not* to impose the overwhelming flood of a mail-in ballot system on the USPS and election workers.

**103.** under the State Plan, Defendants intend to conduct the primary by sending mail-in ballots to all *active* voters, so there is a sudden surge of mailed ballots that will be difficult to account for and process, and because of limited in-person voting there will be a surge of absentee ballot requests from those who did not get a mailed ballot. One likely concern was the risk of disenfranchisement with a too-short time to phase in the Plan and a resulting sudden glut of Mail-in ballots.

**104.** The Clark County Plan will send mail-in ballots to *both* active and inactive voters. But the legislative mandate cannot be gainsaid. The rule of law may not be ignored, even amidst diminishing COVID-19 concerns. To the extent measures need to be taken to protect public health, those may not *alter* the legislative mandate. Rather, safety measures must be taken *within* what the legislative mandate by employing safety measures recommended for essential activities to in-person voting.

**105.** Due to the sudden surge in Mail-in ballots that will result from the Plans, many voters will be disenfranchised because requested ballots never arrive or arrive too late and filled-out ballots get lost or are delayed in the return process. *See supra* ¶¶ 82-96.

**106.** Under the balancing required by the *Burdick* test, *Burdick v. Takushi*, 504 U.S. 428 (1992), applied in *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008), the many people who will be disenfranchised by the sudden surge in mail votes under the Plan weighs heavily against the Plan under the current situation, making it a severe burden that cannot be justified by

a fear of in-person voting in light of the diminished risk of COVID-19 infection, specifically when voting is an essential governmental activity and essential activities are approved for the public with appropriate safeguards that will be implemented at the polls. *See supra* ¶¶ 78-81.

**107.** Due to this widespread disenfranchisement caused by not abiding by the legislature's law, the Plans violates the right to vote by direct disenfranchisement.

### Count II
### The Plan Violates the Fundamental Right to Vote by Vote-Dilution Disenfranchisement.
### (42 U.S.C. § 1983; U.S. Const. amends. I and XIV)

**108.** Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

**109.** The federal right to vote is fundamental, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966), and well-established: "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections" and to have that vote counted. *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

**110.** "The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing." *Id.* at 555 (internal citations omitted). "And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.*

**111.** The right to vote inheres in, and is protected by, the First and Fourteenth Amendments of the U.S. Constitution.

**112.** Nevada also recognizes a right to vote: "All [qualified voters] shall be entitled to vote for all officers that now or hereafter may be elected by the people, and upon all questions submitted to the electors at such election." Nev. Const. art 2, § 1. Article 1, §§ 8 and 9 of the Nevada Constitution protect against violations of due process (including for "liberty" deprivation) and free speech rights and provide protection for the right to vote, as does Article 4, § 21 safeguards equal protection and so protects the right to vote from disparate treatment.

**113.** Both in-person and absentee ballot voting laws encompass safeguards that protect against voter fraud. For in-person voting, among other protections *see supra* ¶¶ 64-66 a first-time

voter generally must appear in person with identification and proof of residence location. NRS 293.272(1). To obtain an absentee ballot, among other protections *see supra* ¶¶ 67-71, a voter must *request* the ballot and "identif[y] himself or herself to the satisfaction of the county clerk." NRS 293.313. Yet, the Plans strips statutory protections by the Legislature to prevent such fraud.

**114.** Both the in-person voting and absentee voting demonstrate a statutory scheme that ensures multiple levels of verification before voting to guarantee the integrity of the voting process. Voters casting fraudulent ballots face the threat of felony prosecution. All of these protections and penalties are provided by the Legislature and may not be overruled and replaced by government officials as in the Plan.

**115.** The Plans would require the State to forego almost all in-person voting and instead conduct the Primary by mailed absent ballots. An election conducted by mail ballot only, per the Plan, would all but ensure an election replete with both ballot fraud.

**116.** The Plans violates the Voters' right to vote by diluting their votes with illegal votes given the removal of safeguards against illegal voting established by the Legislature and the flood of votes caused by alternating the usual percentage of absentee ballots.

### Count III
### The Plan Violates Article I, Section 4, Clause 1 of the U.S. Constitution.

**117.** Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

**118.** The Plans violates Voters' right to have, and to vote in, a federal election where the "Manner" of election is "prescribed . . . by the Legislature," as required:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const. art. I, § 4, cl. 1.

**119.** Candidates for the office of U.S. Representative are on the ballot for the June 9 primary. Ex. L. Therefore, the June 9 primary must be conducted in the Legislature's prescribed manner.

**120.** But the Plans are not at all what the Legislature chose and is contrary to controlling legislation. See supra ¶¶ 47-57.  The Secretary and County Administrators chose a manner not authorized by the Legislature and contrary to the Legislature's choices. *See supra* ¶¶ 20-26; 33-47.

**121.** They have eliminated safeguards against vote fraud that the Legislature chose. See Supra ¶¶ 64-71.

**122.** The Plan violates Article I, § 4, cl. 1, including a violation of the Voter's right to have, and to vote in, such an election as the U.S. Constitution prescribes.


**Count IV**
**The Plan Violates the Equal Protection**
**of the Fourteenth Amendment of the U.S. Constitution.**

**123.** Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

**124.** In *Bush v. Gore*, 531 U.S. 98 (2000), the Supreme Court found that favoring voters in one county to the disadvantage of voters in other counties violates a long line of one-person-one-vote authority that requires that citizens in one county not be disadvantaged compared to voters in other counties. This is a violation of the right to vote (by dilution of vote values in other counties) and the Equal Protection Clause of the Fourteenth Amendment.

**125.** As *Bush* noted, the voters of one county may not be favored over those of another:

An early case in our one-person, one-vote jurisprudence arose when a State accorded arbitrary and disparate treatment to voters in its different counties. *Gray v. Sanders*, 372 U.S. 368 (1963). The Court found a constitutional violation. We relied on these principles in the context of the Presidential selection process in *Moore v. Ogilvie*, 394 U.S. 814 (1969), where we invalidated a county-based procedure that diluted the influence of citizens in larger counties in the nominating process. There we observed that "[t]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Id.*, at 819.

*Id.* at 107.

**126.** Clark County plans to send mail-in ballots to not only active voters, as with the State Plan, but also to inactive voters. And it intends to send county-approved ballot harvesters to collect ballots. Those things enhance the odds of voters in Clark County being able to vote and have

24

their votes counted (while violating the legislature's controlling balancing of access and fraud risk by increasing the odds of ballot fraud).

**127.** Proportionally more votes will be obtained from Clark County, Nevada's most populous county, than from other counties—the difference will not be accounted for by population differences.

**128.** Because of this, the Clark County Plan violates the equal-protection clause and causes and risks vote dilution.

### Prayer for Relief

Wherefore, Plaintiffs respectfully request this Court:

**1.** Declare that the Plan violates the fundamental right to vote by direct disenfranchisement under the First and Fourteenth Amendments of the U.S. Constitution;

**2.** Declare that the Plan violates the fundamental right to vote by vote-dilution disenfranchisement under the First and Fourteenth Amendments of the U.S. Constitution;

**3.** Declare that the Plan violates Article I, § 4 , cl. 1 of the U.S. Constitution;

**4.** Declare that the Clark County Plan violate the equal protection provision of the Fourteenth Amendment;

**5.** Issue a preliminary and permanent injunction that:

(**a**) enjoins the Secretary and County Administrators from implementing the Plan by ordering County Administrators to notify every registered voter in every precinct and district by telephone and mail that the mailed ballot will not be counted as a valid ballot for the primary election if returned. Each voter must either request an absentee ballot in a written request meeting the statutory requirements of NRS 293.3165 by the statutory deadline in NRS 293.313, or appear in person on election day at a designated polling location to cast a valid ballot in the primary election;

(**b**) enjoins the Secretary and County Administrators to administer the primary election in accordance with the legislature's prescribed manner and in conformity with the timely precinct and district designations, subject to timely prior approval of the Secretary of State on or before March 4, if at all, made for each precinct and district unless contrary to law. If prior approval of

1   the Secretary of State or precinct or district designations were not timely made, the County Ad-

2   ministrator must administer the primary election by either distributing lawfully requested absent

3   ballots upon the written request of a registered voter meeting the statutory requirements of NRS

4   293.3165 by the statutory deadline in NRS 293.313, or requiring all other registered voters to

5   appear in person on election day at the designated polling location;

6        **(c)** enjoins the Clark County Administrators from conducting the primary election in ac-

7   cordance with the published Clark County Plan;

8        **(d)** enjoins the Clark County Administrators to conducting the primary election in accor-

9   dance with the legislature's prescribed manner and in conformity with the timely precinct and

10   district designations, subject to timely prior approval of the Secretary of State on or before March

11   4, if at all, made for each precinct and district unless contrary to law. If prior approval of the Sec-

12   retary of State or precinct or district designations were not timely made, the County Administra-

13   tor must administer the primary election by either distributing lawfully requested absent ballots

14   upon the written request of a registered voter meeting the statutory requirements of NRS

15   293.3165 by the statutory deadline in NRS 293.313, or requiring all other registered voters to

16   appear in person on election day at the designated polling location;

17        **6.** Order the Secretary of State and County Administrators, in coordination with city and

18   county election officials, to conduct a public information campaign informing Nevada voters that

19   any mailed ballot not provided as an absent ballot upon written request of a registered voter

20   meeting the statutory requirements of NRS 293.3165 will not be counted as a lawful ballot for

21   the primary election if returned. Each voter must either request an absentee ballot by the statutory

22   deadline or appear in person on election day at a designated polling location to cast a valid ballot

23   in the primary election;

24        **7.** Award all costs and expenses of bringing this action, including attorneys' fees and costs;

25   and

26        **8.** Grant any other relief this court deems appropriate.

27

28

May 13, 2020

David O'Mara
311 E. Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
David@omaralaw.net

*Local Counsel for Plaintiffs*

Respectfully submitted,

/s/ Amanda L. Narog
James Bopp, Jr. (Ind. bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (Ind. bar #11527-70)*
    rcoleson@bopplaww.com
Corrine L. Youngs (Ind. bar #32725-49)*
    cyoungs@bopplaw.com
Amanda L. Narog (Ind. bar #36118-84)*
    anarog@bopplaw.com
True the Vote, Inc.
  Voters' Rights Initiative
The Bopp Law Firm, PC
1 South Sixth St.
Terre Haute, IN 47807‒3510
Telephone: 812/877-4745

*Appearing Pro Hac Vice

*Lead Counsel for Plaintiffs*

27

# **VERIFICATION**

I, Stanley William Paher, under penalty of perjury, state as follows:

That I am one of the Plaintiffs in the foregoing action; that I have read the above and foregoing Amended Verified Complaint for Declaratory and Injunctive Relief, and know the contents thereof; that the same is true to the best of my knowledge, except as to those matters therein stated upon information and belief, and as to those matters I believe the same to be true.

That I am a resident of the City of Reno, County of Washoe, and am an eligible and duly registered voter in the State of Nevada.  I am registered and qualified to vote in the 2020 primary for the party of my choice and intend to vote early, in person.

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED:  May 12, 2020

_____
STANLEY WILLIAM PAHER

- 1 -

**VERIFICATION**

I, Garry Hamilton, under penalty of perjury, state as follows:

That I am one of the Plaintiffs in the foregoing action; that I have read the above and foregoing Amended Verified Complaint for Declaratory and Injunctive Relief, and know the contents thereof; that the same is true to the best of my knowledge, except as to those matters therein stated upon information and belief, and as to those matters I believe the same to be true.

That I am a resident of the City of Reno, County of Washoe, and am an eligible and duly registered voter in the State of Nevada. I am married to Plaintiff Terresa Monroe-Hamilton, recently moved to Nevada and registered online. I am registered and qualified to vote in the 2020 primary for the party of my choice. I usually vote early or on election day in-person.

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED: May 12, 2020

_Garry Hamilton_
GARRY HAMILTON

- 1 -

**VERIFICATION**

I, Terresa Monroe-Hamilton, under penalty of perjury, state as follows:

That I am one of the Plaintiffs in the foregoing action; that I have read the above and foregoing Amended Verified Complaint for Declaratory and Injunctive Relief, and know the contents thereof; that the same is true to the best of my knowledge, except as to those matters therein stated upon information and belief, and as to those matters I believe the same to be true.

That I am a resident of the City of Reno, County of Washoe, and am an eligible and duly registered voter in the State of Nevada.  I am married to Plaintiff Gary Monroe-Hamilton, recently moved to Nevada and registered online. I am registered and qualified to vote in the 2020 primary for the party of my choice. I usually vote early or on election day in-person

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED:  May 12, 2020

_Terresa Monroe-Hamilton_

TERRESA MONROE HAMILTON

- 1 -

## VERIFICATION

I, Jeff Ecker, under penalty of perjury, state as follows:

That I am one of the Plaintiffs in the foregoing action; that I have read the above and foregoing Amended Verified Complaint for Declaratory and Injunctive Relief, and know the contents thereof; that the same is true to the best of my knowledge, except as to those matters therein stated upon information and belief, and as to those matters I believe the same to be true.

That I am a resident of the City of Las Vegas, County of Clark, and am an eligible and duly registered voter in the State of Nevada.  I am registered and qualified to vote in the 2020 primary for the party of my choice and intend to vote in-person.

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED:  May 12, 2020

_____

JEFF ECKER

- 1 -

**<u>VERIFICATION</u>**

I, Gary Gladwill, under penalty of perjury, state as follows:

That I am one of the Plaintiffs in the foregoing action; that I have read the above and foregoing Amended Verified Complaint for Declaratory and Injunctive Relief, and know the contents thereof; that the same is true to the best of my knowledge, except as to those matters therein stated upon information and belief, and as to those matters I believe the same to be true.

That I am a resident of the City of Dayton, County of Lyon, and am an eligible and duly registered voter in the State of Nevada.  I am registered and qualified to vote in the 2020 primary for the party of my choice and have already voted. I am also a candidate for county commissioner.

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED:  May 13, 2020

_____
GARY GLADWILL

- 1 -

## **<u>VERIFICATION</u>**

I, Linda Barnett, under penalty of perjury, state as follows:

That I am one of the Plaintiffs in the foregoing action; that I have read the above and foregoing Amended Verified Complaint for Declaratory and Injunctive Relief, and know the contents thereof; that the same is true to the best of my knowledge, except as to those matters therein stated upon information and belief, and as to those matters I believe the same to be true.

That I am a resident of the Carson City, County of Carson City, and am an eligible and duly registered voter in the State of Nevada.  I am registered and qualified to vote in the 2020 primary of the political party of my choice and I have voted by mail.

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED:  May 12, 2020

_____/s/ Linda Barnett_____
LINDA BARNETT

## VERIFICATION

I, Melissa Clement, under penalty of perjury, state as follows:

I am Executive Director of Nevada Right to Life and I have personal knowledge of Nevada Right to Life, including those set out in the foregoing *Amended Verified Complaint for Declaratory and Injunctive Relief.*

I verify that all the facts concerning Nevada Right to Life in the foregoing *Amended Verified Complaint for Declaratory and Injunctive Relief* are true and correct.

I do hereby affirm the aforesaid under penalty of perjury of the laws of the State of Nevada.

DATED:  May 13, 2020

Melissa Clement
Executive Director of Nevada Right to Life, Inc.

1

## Index of Exhibits

| Ex. No. | Description | Pages |
|:---:|:---:|:---:|
| A | Washoe County Designation of Precinct and District Maps to Secretary of State on March 10, 2020 | 6 |
| B | Washoe County Designation of 2020 Precinct and District Maps to Legislative Counsel on March 20, 2020 | 6 |
| C | Secretary of State's Approval of Washoe County to Designate All Precincts as Mailing Precincts on March 30, 2020 | 6 |
| D | Washoe County March 31, 2020 Notice of Designation | 7 |
| E | Washoe County Request to Publish Notice of Designation on March 31, 2020 | 7 |
| F | Washoe County Published Notice of All Mail Precincts on April 8, 2020 | 7 |
| G | Clark County Designation of precinct and District Maps to Secretary of State and Legislative Counsel on March 30 | 7 |
| H | Clark County Published Notice of All Mail Precincts | 8 |
| I | April 2, 2020 Clark County Notice of All Mail Precincts and Ballot Drop off Centers | 8 |
| J | Secretary Cegavske Announces Plan to Conduct June 9, 2020 Primary Election by All Mail | 5 |
| K | Nevada Secretary of State ~ Absent Voting | 2 |
| L | Nevada Secretary of State, "2020 Non-Judicial Candidates Filed with the Secretary of State | 2 |
| M | Primary Election Notice of Vote-By-Mail Election on June 9, 2020 and Official Sample Ballot | 6 |
| N | Mark Elias Tweet | 8 |

O                 Declaration of Daniel D. Virgilio          20

P     *Joinder in the Oppositions to Plaintiffs' Motion for Preliminary Injunc-*   8
              *tion Filed by Defendants Cegavske, Ford, Spikula, and Jakeman, Co-*
              *rona, et al.  v. Cegavske, et al.*, case no. 20 OC OOO64 1B, First Judi-
              cial District Court in Carson City, Nevada

Q     Rory Appleton, *New Clark County election plan decision shrouded in*   2
              *mystery, Law Vegas Review-Journal*, (May 6, 2020)

R         Clark County's Request to Designate All Mail Precincts     7

S       Election Department Letter to City Counsel Ward 1      7

**Certificate of Service**

I hereby certify on May 13, 2020, I served a true and correct copy of the foregoing on the following parties via this Court's CM/ECF electronic filing system to the addresses listed below.

Gregory Louis Zunino
Nevada State Attorney Generals Office
100 N Carson Street
Carson City, NV 89701
775-684-1137
Fax: 775-684-1108
Email: GZunino@ag.nv.gov

Craig A. Newby
Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
(775) 684-1206
Email: cnewby@ag.nv.gov

Herbert B. Kaplan
One South Sierra Street
Reno, NV 89501
775-337-5700
Fax: 775-337-5732
Email: hkaplan@da.washoecounty.us

Abha Khanna
Perkins Coie LLP
1201 Third Avenue
Ste 4900
Seattle, WA 98101-3099
206 359 8000
akhanna@perkinscoie.com

Henry J. Brewster
Perkins Coie LLP
700 Thirteenth St, NW
Ste 800
Washington, DC 2005-3960
202 654 6200

Bradley Scott Schrager
Wolf, Rifkin, Shapiro, Schulman & Rabkin
3556 E. Russell Rd
Las Vegas, NV 89120
702-341-5200
Fax: 702-341-5300
Email: bschrager@wrslawyers.com

Courtney A. Elgart
Perkins Coie LLP
700 Thirteenth St, NW
Ste 800
Washington, DC 20005-3960
202 654 6200
celgart@perkinscoie.com

Daniel Bravo
Wolf, Rifkin, Shapiro, Schulman, & Rabkin, LLP
3556 E. Russell Road, 2nd Floor
Las Vegas, NV 89120-2234
702-341-5200
Fax: 702-341-5300
Email: dbravo@wrslawyers.com

Jonathan P. Hawley
Perkins Coie LLP
1201 Third Avenue
Ste 4900
Seattle, WA 98101-3099
206 359 8000
JHawley@perkinscoie.com

1

Marc Erik Elias
Perkins Coie LLP
700 13th Street, NW., Ste. 600
Washington, DC 20005
202-654-6200
Email: melias@perkinscoie.com

I served a true and correct copy of the foregoing on the following parties via First Class Mail to the addresses listed below.

Mary-Anne Miller, County Counsel
500 S. Grand Central Parkway
Las Vegas, NV 89106
Mary-Anne.Miller@ClarkCountyDA.com

David O'Mara
311 E. Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
David@omaralaw.net
*Local Counsel for Plaintiffs*

Respectfully submitted,

/s/Amanda Narog
James Bopp, Jr. (Ind. bar #2838-84)*
   jboppjr@aol.com
Richard E. Coleson (Ind. bar #11527-70)*
   rcoleson@bopplaww.com
Corrine L. Youngs (Ind. bar #32725-49)*
   cyoungs@bopplaw.com
Amanda L. Narog (Ind. bar #36118-84)*
   anarog@bopplaw.com
True the Vote, Inc.
 Voters' Rights Initiative
The Bopp Law Firm, PC
1 South Sixth St.
Terre Haute, IN 47807‒3510
Telephone: 812/877-4745

*Pro hac vice application pending

*Counsel for Plaintiffs*

2