MARC E. ELIAS, ESQ. (D.C. Bar No. 442007)
HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410)
COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065)
**PERKINS COIE LLP**
700 Thirteenth St. NW, Suite 800
Washington, D.C. 20005-3960
Tel: (202) 654-6200
melias@perkinscoie.com
hbrewster@perkinscoie.com
celgart@perkinscoie.com

ABHA KHANNA, ESQ. (Wash. Bar No. 42612)
JONATHAN P. HAWLEY, ESQ. (Cal. Bar No. 319464)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com
jhawley@perkinscoie.com

BRADLEY SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Tel: (702) 341-5200
bschrager@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Intervenor-Defendants Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, DCCC, Priorities USA, and John Solomon*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| STANLEY WILLIAM PAHER, TERRESA MONROE-HAMILTON, GARRY HAMILTON, DARYL BYRON DESHAW, JEFF ECKER, GARY GLADWILL, LINDA BARNETT, and NEVADA RIGHT TO LIFE,<br><br>Plaintiffs,<br><br>vs. | Case No.:   3:20-cv-00243-MMD-WGC<br><br>**INTERVENOR-DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, DEANNA SPIKULA, in her official capacity as Registrar of Voters for Washoe County, and JOSEPH P. GLORIA, in his official capacity as Registrar of Voters for Clark County,

                      Defendants,

and

NEVADA STATE DEMOCRATIC PARTY, DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE, DCCC, PRIORITIES USA, and JOHN SOLOMON,

                      Intervenor-Defendants.

Intervenor-Defendants here, by and through their attorneys of record, move to dismiss Plaintiffs' Amended Verified Complaint. This motion is based upon the Memorandum of Points & Authorities below, all pleadings, paper, and exhibits on file in this matter, and any oral argument the Court sees fit to allow.

**INTRODUCTION**

Plaintiffs, individual Nevada voters represented by the organization True the Vote, have filed this lawsuit in an effort to prevent Defendants from acting to protect the Nevada electorate in the face of the coronavirus pandemic. The relief they now seek in their unreasonably delayed amended complaint would cause a massive and wasteful disruption of Nevada's plans for the June 9, 2020 primary election. Because their causes of actions are factually unsupported and legally unsound, this Court should dismiss their amended complaint with prejudice.

This Court has already held, in ruling on Plaintiffs' initial motion for a preliminary injunction, that Plaintiffs lack standing because their primary claimed injury—the dilution of their votes based on the specter of increased illegal voting if Nevada changes from an absent ballot voting system to an automatic vote by mail system—is entirely speculative and a generalized grievance. Plaintiffs' amended complaint does nothing to remedy this fundamental flaw, and instead serves only to compound the original complaint's shortcomings by introducing

2

new, untenable causes of action coupled with further distortions of the law and the facts.

**BACKGROUND**

On March 24, 2020, Defendant Barbara Cegavske, the Nevada Secretary of State (the "Secretary")—along with Defendant Deanna Spikula, the Registrar of Voters for Washoe County (the "Washoe Registrar"), Defendant Joseph P. Gloria, the Registrar of Voters for Clark County (the "Clark Registrar"), and election officials from Nevada's 14 other counties and Carson City—announced a plan to conduct the June 9, 2020 primary election (the "June Primary") predominantly by mail, to protect voters and elections officials in the face of the growing health crisis. *See* Amended Verified Complaint ("Am. Compl."), ECF No. 64, ¶ 20. In the weeks that followed, county officials began posting notices describing their specific plans to adapt voting in light of the pandemic. *Id.* ¶¶ 26–37. An essential feature of the plan for the June Primary is the mailing of ballots to registered voters, without the need for voter requests. *Id.* ¶ 21.

On April 21, 2020, Plaintiffs filed this lawsuit, contending that Nevada election officials do not have authority under Nevada law to proactively mail ballots to voters. *See* Verified Complaint ("Compl."), ECF No. 1. That same day, Plaintiffs followed with a motion for a preliminary injunction. *See* ECF No. 2. On April 27, Intervenor-Defendants filed a motion to intervene, which this Court granted. *See* ECF Nos. 27, 39.

Following a hearing, the Court issued an order denying Plaintiffs' motion for a preliminary injunction on April 30, 2020. *See* Order, ECF No. 57. The Court concluded that "Plaintiffs have not established an injury particularized to them to confer standing," and that even if they had standing, their "claims fail on the merits." *Id.* at 2.

Subsequently, on May 4, the Clark Registrar announced a revised election plan for the June Primary in a court document filed in Intervenor-Defendants' state court action. Am. Compl. ¶ 39.[1] Among these revisions were the decisions to provide two additional in-person voting

---

[1] As discussed at greater length in their motion to intervene, *see* ECF No. 27 at 3–4 & n. 2, four of the Intervenor-Defendants, along with a group of Nevada voters, filed an action in Nevada state court against Defendants on April 16, 2020. *Id.* at 3 & Ex. 3; *see also Corona v. Cegavske*, No. 20-OC-00064-1B (Nev. Dist. Ct. Apr. 16, 2020). Crucially, and contrary to
(footnote continued)

3

locations and mail ballots to *all* registered voters, active and inactive alike. *Id*. The Clark Registrar also plans to appoint field registrars to collect sealed ballots from voters. *Id*. ¶ 40.

Plaintiffs filed their amended complaint on May 13, 2020. In addition to dropping two of their original causes of action,[2] Plaintiffs include Count I, a recast of their original Count II, which generally alleges a violation of the Nevada Legislature's electoral policies, *compare* Compl. ¶¶ 45–49, *with* Am. Compl. ¶¶ 97–102—but now with the added allegation that voters will be directly disenfranchised, Am. Compl. ¶ 105. And Plaintiffs add a new cause of action, Count IV, which claims that the Clark Registrar's revised plans for Clark County voters violate the Equal Protection Clause of the U.S. Constitution. *See id.* ¶¶ 123–28. These causes of action join two claims imported from Plaintiffs' original complaint—Count II, a right to vote claim premised on purported vote dilution, *see id.* ¶¶ 108–16, and Count III, which alleges a violation of the U.S. Constitution's Elections Clause, *see id.* ¶¶ 117–22.

## LEGAL STANDARD

A plaintiff bears the burden of establishing federal subject matter jurisdiction by a preponderance of the evidence. *United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 625 (9th Cir. 2018). Where, as here, a "facial" challenge is brought under Federal Rule of Civil Procedure 12(b)(1), the moving parties "assert[] that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction," but "do not 'dispute[] the truth of the allegations.'" *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (alterations in original) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Moreover, a plaintiff must demonstrate Article III standing for each form of relief sought. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

---

Plaintiffs in this case, Intervenor-Defendants "do not object to Defendants' expansion of vote by mail; indeed, the current public health crisis necessitates that states allow voters to cast ballots without leaving their homes." ECF No. 27 at 3–4.

[2]  Plaintiffs' amended complaint no longer includes the original complaint's Count III, a claim premised on the U.S. Supreme Court's decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam), *see* Compl. ¶¶ 50–55, or Count V, which alleged a violation of the U.S. Constitution's Guarantee Clause, *see id.* ¶¶ 62–66.

4

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must "take all of the factual allegations in the complaint as true," *id.* (citing *Twombly*, 550 U.S. at 555), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Rule 12(b)(6) permits dismissal on the basis of either (1) the 'lack of a cognizable legal theory,' or (2) 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Newlands Asset Holding Tr. v. SFR Invs. Pool 1, LLC*, No. 3:17-cv-00370-LRH-WGC, 2017 WL 5559956, at *2 (D. Nev. Nov. 17, 2017) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

**ARGUMENT**

This Court should grant Intervenor-Defendants' motion to dismiss because as to each claim, Plaintiffs lack standing, fail to state a claim upon which relief can be granted, or both.[3]

**I.   Count I should be dismissed for lack of standing and for failure to state a claim upon which relief can be granted.**

Count I of Plaintiffs' amended complaint alleges, like their original claims, that Defendants' decision to proactively mail ballots to voters violates Nevada law. *See* Am. Compl.

---

[3] Intervenor-Defendants recognize that this Court might not entertain an Eleventh Amendment immunity defense unless Defendants themselves raise it. But because the Court can raise the issue sua sponte, *see United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)), Intervenor-Defendants note that "[t]he Eleventh Amendment prevents a federal court from issuing an injunction against state officials solely to require them to adhere to state law." *Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 WL 3223915, at *8 (M.D. Ala. July 28, 2017); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106–07 (1984); *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1988). That is precisely the sort of relief that Plaintiffs seek from this Court. *See* Am. Compl. at 25–26.

5

¶¶ 97–102. Appended to this old assertion is the novel claim that the mailing of ballots will lead to disenfranchisement. *See id.* ¶ 105. Plaintiffs, however, never connect these two contentions. And they certainly provide no allegations that give rise to a plausible claim that Defendants' decision to proactively mail ballots to voters will lead to disenfranchisement or any other injury. All Plaintiffs are left with, then, is their previous assertion that they have a right to seek enforcement of their incorrect reading of Nevada law—a claim that this Court has already rejected. *See* Order at 14–20. Accordingly, Count I fails on both standing and Rule 12(b)(6) grounds.

### A. Plaintiffs lack standing to assert Count I.

To be sure, disenfranchisement, or the serious risk thereof, is an injury-in-fact cognizable under Article III. But alleging a cognizable injury *without* connecting that injury to the challenged conduct fails to establish standing. Instead, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

Plaintiffs have not connected the conduct they challenge—Defendants' decision to proactively mail ballots to voters in purported violation of Nevada law—with the injury they assert—disenfranchisement. *Cf.* Order at 10 n. 7 ("Even if the Court had concluded [] that there was a violation of Nevada law in the implementation of the all-mail provisions of the Plan, . . . Plaintiffs have not established a nexus between such alleged violations and the alleged injury of vote dilution."). As an initial matter, Plaintiffs have not articulated why the decision to proactively mail ballots to voters is more likely to result in disenfranchisement simply because it is—allegedly—against the law. Instead, they merely take this conclusion for granted, despite the absence of a plausible, logical explanation. *See* Am. Compl. ¶ 107 ("Due to this widespread disenfranchisement caused by not abiding by the legislature's law, the Plans violates the right to vote by direct disenfranchisement."). Nor have Plaintiffs otherwise explained *how* exactly the proactive mailing of ballots, whether countenanced by state law or not, will result in

6

disenfranchisement—particularly in comparison to their preferred method of voting, absent ballots. Indeed, Defendants' decision to mail ballots to voters without first requiring the submission and processing of absent ballot applications will almost certainly result in *more* voting, not less. *See* Order at 14 ("[I]f the Plan is not implemented voters worried about risks to their health or unsure about how to obtain an absentee ballot may very well be discouraged from exercising the right to vote all together."); *cf.* Am. Compl. ¶¶ 85, 89–90 (describing Wisconsin's inability to process the surge in absentee ballot requests caused by the pandemic).

Accordingly, Plaintiffs' amended complaint, like their initial complaint, falls well short of establishing the necessary traceability and redressability needed to establish standing for Count I. Because they have failed to establish standing for this claim, Count I should be dismissed.

**B.   Count I fails to state a claim upon which relief can be granted because the U.S. Constitution is not a vehicle to enforce state election laws.**

Plaintiffs' failure to connect Defendants' purported violation of state law with any injury to or interference with their ability to vote also dooms Count I under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Without alleging any nexus between the challenged policy and an alleged burden on the right to vote, Count I—like its predecessor, Count II in Plaintiffs' initial complaint, *see* Compl. ¶¶ 45–49—continues to do nothing more than assert the right to have Plaintiffs' incorrect reading of Nevada law enforced. But "[t]he Constitution is not an election fraud statute." *Minn. Voters All. v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (quoting *Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)) (affirming Rule 12(b)(6) dismissal of vote dilution claim). And the allegations in the amended complaint do not give rise to a plausible claim that Defendants' decision to mail ballots to Nevada voters—the only policy at issue in this case, *see* Order at 1 n. 1—prevents Plaintiffs from casting ballots or otherwise burdens their right to vote.

Plaintiffs' efforts to enforce Nevada law through Count I (as well as Count II) ignore that federal voting rights cases permit plaintiffs to bring suit in federal court under two

7

circumstances: (1) where the defendants' actions violate a *federal* statute, *see, e.g.*, *Sanchez v. Cegavske*, 214 F. Supp. 3d 961, 965–66 (D. Nev. 2016), or (2) where the defendants are applying state elections law in a manner that violates the *federal* constitution, *see, e.g.*, *PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1214–15 (D. Nev. 2009). There is no precedent for a federal court to grant relief under the U.S. Constitution to voters who simply contend, as Plaintiffs here do, that state election officials are acting in contravention of *state* law. In four filings—the initial complaint, the first motion for a preliminary injunction, the amended complaint, and the second motion for a preliminary injunction—Plaintiffs have not identified *a single case* that allows them to seek this relief. Because the U.S. Constitution does not provide the right that Plaintiffs seek to vindicate in Count I, it fails to state a claim under a cognizable legal theory, and dismissal of that claim is therefore appropriate. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020) (affirming dismissal with prejudice where claim was "premised on the violation of an asserted right that, as a matter of law, is not protected by" the U.S. Constitution).

### C. Count I fails as a matter of law because it rests on an incorrect interpretation of Nevada's election laws.

Lastly, Count I—like all of Plaintiffs' claims premised on alleged violations of Nevada law—fails as a matter of law because, as this Court has already held, Defendants' decision to mail ballots to registered voters in Nevada is explicitly countenanced by Nevada statute. *See* Order at 16–20. Through the laws governing mailing precincts—specifically, Nevada Revised Statutes ("N.R.S.") 293.343 through 293.355—the Nevada Legislature has given the Secretary and the county clerks authority to mail ballots to all registered voters, rather than requiring voters to request those ballots through the absent ballot process. The documents attached to Plaintiffs' amended complaint confirm that Defendants have followed these procedures. *Compare* Am. Compl., Exs. C–H, *with* N.R.S. 293.213(4)–(5). Plaintiffs' claim instead hinges on a labored reading of different statutes, N.R.S. 293.205 and 293.206, which, as this Court has already held, govern only the *physical boundaries* of precincts and not the manner of elections conducted therein. *See* Order at 17–18; *see also* N.R.S. 293.205(2) ("The boundaries of each election precinct must follow visible ground features."); N.R.S. 293.205(3) ("Election precincts must be

composed only of contiguous territory."); N.R.S. 293.206(1) (governing submission of maps "showing the boundaries" of election precincts). Even if N.R.S. 293.205 were applicable to the manner of conducting elections within a precinct, it explicitly imports another statute, N.R.S. 293.208, which allows a new precinct to be created "at any time if it lies entirely within the boundaries of any existing precinct." N.R.S. 293.208(3). Because each existing precinct has been converted to a mailing precinct for the June Primary without any further change, the now-designated mailing precincts share overlapping boundaries with, and therefore lie entirely within, the existing precincts.

As this Court has previously concluded, Count I (like Counts II and III) rests on an interpretation of state law that is wrong as a matter of law. Because it fails to state a claim upon which relief can be granted for this and other reasons, and because Plaintiffs lack standing to assert it, Count I must be dismissed. *See Iqbal*, 556 at 678; *Ditech Fin. LLC v. Res. Grp. LLC*, 398 F. Supp. 3d 801, 803 (D. Nev. 2019) (granting motion to dismiss where plaintiff's legal theory "fail[ed] as a matter of law"), *appeal docketed*, No. 19-16427 (9th Cir. July 19, 2019).

## II. Count II should be dismissed for lack of standing and for failure to state a claim upon which relief can be granted.

Count II—which alleges that a predominantly vote by mail election will dilute the value of Plaintiffs' votes in violation of the First and Fourteenth Amendments, *see* Am. Compl. ¶¶ 108–16—is virtually identical to Count I of Plaintiffs' original complaint. *Compare id.*, *with* Compl. ¶¶ 36–44. This Court has already correctly rejected this claim on both standing grounds and the merits. *See* Order at 8–9, 11–14. The allegations in the amended complaint have not remedied this claim's fundamental flaws, and dismissal is therefore warranted.

### A. Plaintiffs lack standing to bring Count II.

Plaintiffs, new and old alike, continue to assert an interest in having Nevada's election laws enforced based on their statuses as registered voters, and suggest that Defendants' purported failure to enforce Nevada's laws in the manner Plaintiffs see fit could lead to an increase in illegal votes harmful to lawful voters. But as this Court has already held, that interest represents no more than a generalized grievance that is insufficient for Article III purposes. *See* Order at 9

("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter. Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury."); *see also Lujan*, 504 U.S. at 573–76 ("[A]n injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable" and "cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984))); *cf. United States v. Florida*, No. 4:12cv285-RH/CAS, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (rejecting True the Vote's motion to intervene under Rule 24 based on the same theory of vote dilution because its "asserted interests are the same . . . as for every other registered voter in the state"). Moreover, Plaintiffs' purported injury is wholly conjectural, *see* Order at 9, and such speculative injuries do not confer Article III standing. *See Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution[ is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact.").

In short, as the Court previously concluded, Plaintiffs do not have standing to bring this claim. Count II should therefore be dismissed.

**B.    Count II fails to state a claim upon which relief can be granted because vote dilution by illegal voting is not a viable legal theory.**

Count II fails to state a claim upon which relief can be granted because it is not premised on a cognizable legal theory. *See Newlands Asset Holding Tr.*, 2017 WL 5559956, at *2 (dismissal appropriate where claim lacks "a cognizable legal theory" (quoting *Balistreri*, 901 F.2d at 699)). To begin, Count II, like its predecessor, continues to ask this Court to enforce the Nevada Legislature's election policies. *See* Am. Compl. ¶¶ 113, 116; *see also id.* at 25–26. But the U.S. Constitution is not a vehicle to enforce state election laws. *See* Part I.B *supra*. And even if it were, Defendants' plans are consistent with state law. *See* Part I.C *supra*; Order at 16–20.

Moreover, federal courts do not recognize a cause of action under the theory that illegal voting will cause vote dilution as asserted in Count II. While it is true that vote dilution is a viable basis for federal claims in certain contexts, such as when laws are crafted that structurally

10

devalue one community's votes over another's, *see, e.g.*, *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406–07 (E.D. Pa. 2016); *see also Reynolds v. Sims*, 377 U.S. 533, 568 (1964) ("Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living on other parts of the State."), in these cases, plaintiffs allege that their votes are devalued as compared to similarly situated voters in other parts of the state. *See Reynolds*, 377 U.S. at 567–68. Plaintiffs here, by contrast, have not alleged that Defendants' plan to mail ballots values some other group of votes over their own. Nor does their complaint give rise to the plausible claim that they belong to a group of voters that will be disparately impacted by a supposed surge in illegal voting. Accordingly, they have failed at the most basic step of pleading an equal protection claim.

Nor have Plaintiffs cited any authority for taking vote dilution out of the equal protection context and transforming it into a weapon that voters may use to enlist the federal judiciary *to make it more difficult for their fellow citizens to vote. Cf. Short v. Brown*, 893 F.3d 671, 677–78 (9th Cir. 2018) ("Nor have the appellants cited any authority explaining how a law that makes it easier to vote would violate the Constitution."). To the contrary, courts have routinely—and appropriately—rejected such efforts. *See Minn. Voters All.*, 720 F.3d at 1031–32 (affirming Rule 12(b)(6) dismissal of vote dilution claim); *see also Cortés*, 218 F. Supp. 3d 406, 406–07 (rejecting claim of vote dilution by illegal voting on motion for preliminary injunction). Because Plaintiffs have failed to allege facts that give rise to a plausible claim for relief, or even alleged a cognizable legal theory, dismissal of Count II is appropriate.

**III.   Count III should be dismissed for lack of standing and for failure to state a claim upon which relief can be granted.**

Count III, which is identical to a claim in Plaintiffs' original complaint that this Court has already rejected, *see* Order at 20, invokes the U.S. Constitution's Elections Clause, which provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Const., art. I, § 4, cl. 1; *see also* Am. Compl. ¶¶ 117–22. But significantly—and fatally—Plaintiffs do not and

1  cannot produce any authority establishing a private right of action under this clause. *Cf. U.S.*
2  *House of Representatives v. Burwell*, 130 F. Supp. 3d 53, 78 (D.D.C. 2015) (noting private
3  citizens generally lack power to "deputiz[e] themselves in an effort to enforce federal law").
4  Indeed, courts have rejected similar efforts to assert private rights to enforce structural—as
5  opposed to rights-focused—constitutional provisions. *See, e.g.*, *Largess v. Supreme Judicial*
6  *Court*, 373 F.3d 219, 228 & n. 9 (1st Cir. 2004) (per curiam) (affirming denial of injunctive relief
7  where "individuals . . . attempt[ed] to invoke the Guarantee Clause against state officials").

8        Count III also suffers the same flaws as Count II. Plaintiffs' asserted injury for both is the
9  same—an alleged violation of Nevada laws that will lead to an increase in illegal voting—and as
10 this Court has already held, that injury is neither concrete and particularized nor actual or
11 imminent. *See* Order at 8–9. Similarly, Count III shares the flawed, central contention of Counts
12 I and II that Defendants are violating Nevada law by mailing ballots to voters. *See* Part I.C *supra*.

13       Because Plaintiffs do not have standing to assert Count III, the Elections Clause does not
14 create a private right of action to enforce state law, and the claim rests on an incorrect reading of
15 Nevada statute, Count III should be dismissed.

### IV. Count IV should be dismissed for failure to state a claim upon which relief can be granted.

18       Finally, Count IV challenges two of Clark County's recently announced revisions to its
19 plan for the June Primary—namely, the decisions to mail ballots to both active *and* inactive
20 voters and to appoint field registrars to collect ballots from individuals for whom returning
21 ballots by mail is difficult. *See* Am. Compl. ¶¶ 123–28; *see also id.*, Ex. P. Plaintiffs reason that
22 Clark County voters will have an easier time voting, and will therefore vote in higher numbers
23 than voters who live in counties that are not taking these steps. *See id.* ¶ 126. Intervenor-
24 Defendants agree that these recently announced revisions will expand access to the franchise for
25 Clark County voters; that is why they have brought a lawsuit in state court to ensure these types
26 of protections are in place in every Nevada county. Confoundingly, though, Plaintiffs do not ask
27 this Court to order the Washoe Registrar and other county officials to similarly mail ballots to
28 inactive voters and appoint field registrars to assist voters statewide. Instead, Plaintiffs seek an

order from this Court *preventing Clark County from helping its voters cast ballots* by prohibiting these recently announced revisions. *Id.* at 25–26.

Plaintiffs' attempt to reduce access to the ballot for Clark County voters is squarely foreclosed by the Ninth Circuit's opinion in *Short v. Brown*. In *Short*, the plaintiffs alleged that California's Voter's Choice Act ("VCA") violated the Equal Protection Clause because it permitted voters in some counties to receive a mail ballot automatically, while voters in other counties had to apply for a mail ballot. 893 F.3d at 677–79. The plaintiffs contended that the VCA "inequitably 'dilutes' votes in 'disfavored' counties." *Id.* at 677. The Ninth Circuit affirmed the district court's denial of a preliminary injunction because the plaintiffs had "not even alleged—let alone introduced evidence to demonstrate—that the VCA [would] prevent anyone from voting." *Id*. Significantly, in *Short*, the Ninth Circuit rejected the premise that the U.S. Constitution prohibits states from making it easier to vote, or that the vote dilution line of cases applies to challenges, like this one, where a state has not allocated representation differently among voters. *Id.* at 677–78. So too here. Plaintiffs have not alleged any facts that give rise to the plausible claim that Clark County's plans to mail ballots to inactive voters and appoint field registrars will make it *harder* for anyone to vote, let alone themselves. And they have not, in any of their pleadings, cited authority for the proposition that the U.S. Constitution somehow prohibits election officials' earnest efforts to make it easier to vote.

*Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), does not save Plaintiffs' claim. In the immediate aftermath of the disputed 2000 presidential election, the U.S. Supreme Court concluded that the manual recount ordered by the Florida Supreme Court, which did not provide consistent standards and "minimal procedural safeguards," offended the Equal Protection Clause's requirement of non-arbitrary treatment of voters. *Id.* at 108–09. Here, by significant contrast, Plaintiffs have not alleged that their ballots—or anyone else's—will be arbitrarily rejected.

Because Count IV is squarely foreclosed by controlling Ninth Circuit precedent, it fails to allege a claim upon which relief can be granted. Accordingly, dismissal is warranted. *See Conant v. Brown*, 248 F. Supp. 3d 1014, 1024–25 (D. Or. 2017) (granting motion to dismiss where

13

plaintiff's arguments were "foreclosed by . . . precedent"); *see also Newlands Asset Holding Tr.*, 2017 WL 5559956, at *2.[4]

## V.    Dismissal should be with prejudice.

"[D]ismissal with prejudice is warranted [where] amendment would be futile." *Carter v. Sables, LLC*, No. 3:17-cv-00594-MMD-WGC, 2017 WL 6328157, at *2 (D. Nev. Dec. 11, 2017); *see also United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 804 (9th Cir. 2017) (leave to amend should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay" (quoting *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 636 (9th Cir. 2002)).

Here, any amendment Plaintiffs might pursue to salvage their claims would be futile. Plaintiffs lack standing to bring their speculative and generalized claims—a fatal deficiency that, having amended once, they have not cured despite receiving this Court's previous ruling on the issue. There is no indication that Plaintiffs could conceivably add a plaintiff who would remedy this ongoing flaw. Moreover, Plaintiffs' claims are based on incorrect interpretations of Nevada law, and rely on legal theories that are either improper or beyond the scope of the constitutional provisions on which they rely. For all these reasons, further amendment would be futile. *See Parents for Privacy*, 949 F.3d at 1226 (affirming dismissal of claim with prejudice where claim was "premised on the violation of an asserted right that, as a matter of law, is not protected" by the U.S. Constitution).

Finally, granting leave to amend would create prejudice and undue delay. Plaintiffs *already* delayed in filing their amended complaint and second motion for a preliminary injunction. Now, the June Primary is less than three weeks away. There is simply insufficient time for Plaintiffs to file, and this Court to adjudicate, a second amended complaint.

---

[4] Plaintiffs also suggest that Clark County's plan violates Nevada election laws. *See* Am. Compl. ¶ 126. This is not so. N.R.S. 293.345(1) *requires* county election officials to mail a ballot to "each registered voter" in all mailing precincts—in other words, active and inactive voters alike. And Nevada law explicitly allows county officials to "appoint at least one registered voter to serve as a field registrar of voters." N.R.S. 293.505(2). These field registrars are empowered to "perform such duties as the county clerk may direct," *id.*, including the collection of ballots.

Accordingly, this Court should dismiss Plaintiffs' amended complaint with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should grant Intervenor-Defendants' motion to dismiss Plaintiffs' amended complaint with prejudice.

DATED this 19th day of May, 2020.

**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN. LLP**

By: */s/ Bradley S. Schrager*
Bradley S. Schrager, Esq., SBN 10217
Daniel Bravo, Esq., SBN 13078
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120

Marc E. Elias, Esq.*
Henry J. Brewster, Esq.*
Courtney A. Elgart, Esq.*
**PERKINS COIE LLP**
700 Thirteenth St. NW, Suite 800
Washington, D.C. 20005-3960

Abha Khanna, Esq.*
Jonathan P. Hawley, Esq.*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099

*Attorneys for Proposed Intervenor–Defendants Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, DCCC, Priorities USA, and John Solomon*

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th of May, 2020 a true and correct copy of **MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP