MARC E. ELIAS, ESQ. (D.C. Bar No. 442007)
HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410)
COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065)
**PERKINS COIE LLP**
700 Thirteenth St. NW, Suite 800
Washington, D.C. 20005-3960
Tel: (202) 654-6200
melias@perkinscoie.com
hbrewster@perkinscoie.com
celgart@perkinscoie.com

ABHA KHANNA, ESQ. (Wash. Bar No. 42612)
JONATHAN P. HAWLEY, ESQ. (Cal. Bar No. 319464)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com
jhawley@perkinscoie.com

BRADLEY SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Tel: (702) 341-5200
bschrager@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Intervenor-Defendants Nevada*
*State Democratic Party, DNC Services*
*Corporation/Democratic National Committee,*
*DCCC, Priorities USA, and John Solomon*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| STANLEY WILLIAM PAHER, TERRESA MONROE-HAMILTON, GARRY HAMILTON, DARYL BYRON DESHAW, JEFF ECKER, GARY GLADWILL, LINDA BARNETT, and NEVADA RIGHT TO LIFE,<br><br>Plaintiffs,<br><br>vs. | Case No.:    3:20-cv-00243-MMD-WGC<br><br>**INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY INJUNCTION** |

1   BARBARA CEGAVSKE, in her official
    capacity as Nevada Secretary of State,
2   DEANNA SPIKULA, in her official capacity
    as Registrar of Voters for Washoe County, and
3   JOSEPH P. GLORIA, in his official capacity as
    Registrar of Voters for Clark County,
4
                                    Defendants,
5
    and
6
    NEVADA STATE DEMOCRATIC PARTY,
7   DNC SERVICES
    CORPORATION/DEMOCRATIC
8   NATIONAL COMMITTEE, DCCC,
    PRIORITIES USA, and JOHN SOLOMON,
9
                                    Intervenor-
10                                  Defendants.

11

12                        **INTRODUCTION**

13          Confronting an unprecedented public health crisis, Defendants and other state and local

14   officials in Nevada have introduced plans—imperfect though they might be[1]—to expand access

15   to the ballot and ensure that eligible Nevadans can safely vote in the June 9, 2020 primary

16   election. Armed with little more than misapplied precedent, strained inferences, and tall tales of

17   voter fraud, Plaintiffs now attempt once again to derail Defendants' plans and disenfranchise

18   Nevada voters. This Court correctly rejected Plaintiffs' first motion for a preliminary injunction.

19   Neither Plaintiffs' delayed second motion nor the amended complaint on which it is premised

20   have cured the legal and logical shortcomings that the Court previously identified. Instead,

21   Plaintiffs have opted to double down on their flawed reasoning and introduce myriad other issues

22   into their suit. Their second proposed injunction would cause a massive and wasteful disruption

23

24

---

25   [1] *See, e.g.*, ECF No. 27, at 3–4 & n. 2, Ex. 3 (describing concurrent state court action challenging
26   Defendants' plans for the June 9, 2020 primary election). Crucially, unlike Plaintiffs in this case,
     Intervenor-Defendants "do not object to Defendants' expansion of vote by mail; indeed, the
27   current public health crisis necessitates that states allow voters to cast ballots without leaving
     their homes." *Id.* at 3–4.
28

                                    2

1    to Nevada's plans to protect the electorate, and is not supported by the law or the facts.[2]

2    For the reasons discussed in Intervenor-Defendants' motion to dismiss, Plaintiffs lack

3    standing, and each of their four causes of action fails to state a plausible claim upon which relief

4    can be granted.[3] For the reasons below, each of these claims also fails on the merits.

5    Accordingly, and because the other equitable factors strongly militate against issuance of a

6    preliminary injunction, the Court should once again deny Plaintiffs' motion.

7                                               **BACKGROUND**

8    Much of the factual and procedural background relevant to this opposition is set forth in

9    Intervenor-Defendants' motion to dismiss. *See* Motion to Dismiss Plaintiffs' Amended

10   Complaint ("MTD"), ECF No. 71, at 3–4; *see also* Order Denying Plaintiffs' Motion for a

11   Preliminary Injunction ("Order"), ECF No. 57, at 2–6. Accordingly, this opposition will provide

12   a brief recitation of the relevant facts.

13   On March 24, 2020, Defendant Barbara Cegavske, the Nevada Secretary of State (the

14   "Secretary")—along with Defendant Deanna Spikula, the Registrar of Voters for Washoe County

15   (the "Washoe Registrar"), Defendant Joseph P. Gloria, the Registrar of Voters for Clark County

16   (the "Clark Registrar"), and the election officials for Nevada's 14 other counties and Carson

17   City—announced a plan to conduct the June 9, 2020 primary election (the "June Primary")

18   ───────────────────

19   [2] To give just one example—and to highlight a factual distortion that pervades Plaintiffs' entire
     motion and amended complaint—Plaintiffs emphatically claim that COVID-19 no longer poses a
20   threat to the public that justifies Defendants' proactive steps to protect the electorate from the
     coronavirus pandemic. *See* Plaintiffs' Second Preliminary-Injunction Motion, ECF No. 65, at 2–
21   3 ("The curve is flattening, the spread is being controlled, testing is increasing, the calculated
     death rate is lowering as tests show more people had mild cases, and total deaths are lower than
22   originally projected."); Amended Verified Complaint, ECF No. 64, ¶¶ 70–81 ("Expanding mail
     balloting is unnecessary to combat COVID-19."). Intervenor-Defendants do not feel it is
23   necessary to catalogue the manifold reasons why Plaintiffs' blasé and cavalier characterization of
     the public health crisis is not only inaccurate, but dangerous. *See* Transcript of Motion Hearing,
24   ECF No. 70, at 4:4–8. Suffice it to say that Intervenor-Defendants are willing to provide
25   additional briefing on the ongoing threats posed by the pandemic should the Court require it.

26   [3] For the sake of efficiency, Intervenor-Defendants have chosen not to repeat their dismissal
     arguments verbatim in this opposition. Instead, Intervenor-Defendants incorporate those
27   arguments by reference, providing citations to their concurrently filed motion to dismiss where
     appropriate.
28

1    predominantly by mail, by mailing ballots to active voters without requiring them to first request

2    absent ballots. *See* Amended Verified Complaint ("Am. Compl."), ECF No. 64, ¶¶ 20, 21.

3    Plaintiffs filed suit and a subsequent motion for preliminary injunction, both premised on the

4    argument that Defendants lacked the authority to proactively mail ballots to voters under Nevada

5    law.

6    On April 30, this Court issued an order denying Plaintiffs' initial motion for a

7    preliminary injunction, concluding that "Plaintiffs have not established an injury particularized to

8    them to confer standing," and that even if they had standing, their "claims fail on the merits."

9    Order at 2. The Court also found that "the balance of equities favors Defendants and Intervenor-

10   Defendants and that injunction would not be in the public's interest." *Id.* at 10.

11   Subsequently, on May 4, the Clark Registrar announced a revised election plan for the

12   June Primary in a court document filed in Intervenor-Defendants' state court action. Am. Compl.

13   ¶ 39. Among these revisions were the decisions to provide two additional in-person voting

14   locations and mail ballots to *all* registered voters, active and inactive alike. *Id*. The Clark

15   Registrar also plans to appoint field registrars to collect sealed ballots from voters. *Id.* ¶ 40.

16   Plaintiffs filed their amended complaint on May 13, 2020. *See* Am. Compl. In addition to

17   dropping two of their original causes of action, Plaintiffs include Count I, a recast of their

18   original Count II, which generally alleges a violations of the Nevada Legislature's electoral

19   policies, *compare* Verified Complaint ("Compl."), ECF No. 1, ¶¶ 45–49, *with* Am. Compl.

20   ¶¶ 97–102—but with the added allegation that voters will be directly disenfranchised as a result,

21   Am. Compl. ¶ 105. Plaintiffs also added a new cause of action, Count IV, which claims that the

22   Clark Registrar's revised plans for Clark County voters violate the Equal Protection Clause of

23   the U.S. Constitution. *See id.* ¶¶ 123–28. These causes of action join two claims recycled from

24   Plaintiffs' original complaint—Count II, a right to vote claim premised on purported vote

25   dilution, *see id.* ¶¶ 108–16, and Count III, which alleges a violation of the U.S. Constitution's

26   Elections Clause, *see id.* ¶¶ 117–22.

27   Plaintiffs concurrently filed a second motion for a preliminary injunction, seeking "the

28   relief in the Amended Complaint's Prayer for Relief." *See* Plaintiffs' Second Preliminary-

4

1  Injunction Motion ("Motion"), ECF No. 65, at 24. That requested relief includes an injunction

2  from this Court ordering the following:

3      • That Defendants "notify every registered voter in every precinct and district by telephone
        and mail that the mailed ballot [received pursuant to Defendants' plan for the June
4        Primary] will not be counted as a valid ballot for the primary election if returned," and
        that Defendants' "conduct a public information campaign" to do the same, Am. Compl. at
5        25–26;

6      • That Defendants require every voter to vote by absent ballot or in-person, *id.*;

7
       • That Defendants—the Clark Registrar in particular—administer "the primary election in
8        accordance with the legislature's prescribed manner and in conformity with the timely
        precinct and district designations," *id.* at 25–26; and
9

10     • That the Clark Registrar *cannot* conduct the June Primary as previously announced, *id.* at
        26.
11

12                                   **LEGAL STANDARD**

13     "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

14 *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party requesting an injunction must

15 demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent

16 injunctive relief, (3) that the balance of equities tips in the party's favor, and (4) that "an

17 injunction is in the public interest." *Id.* at 20. The failure to state a claim for relief is  ground for

18 denying a motion for preliminary injunction, *see Villagrana v. Recontrust Co., N.A.*, No. 3:11-

19 cv-00652-ECR-WGC, 2012 WL 1890236, at *7 (D. Nev. May 22, 2012), as is a defect in the

20 plaintiff's standing, *see Vazquez v. Bank of Am. Home Loans*, No. 2:10-CV-00116-PMP-RJJ,

21 2010 WL 3385347, at *1 (D. Nev. Aug. 23, 2010).

22                                      **ARGUMENT**

23 **I.     Plaintiffs' motion is procedurally improper.**

24     As an initial matter, Plaintiffs' motion is at least in part procedurally improper. Two of

25 the claims in Plaintiffs' amended complaint (Counts II and III) are duplicative of causes of action

26 which this Court already considered when adjudicating Plaintiffs' *first* motion for a preliminary

27 injunction: Count II, the vote dilution claim, and Count III, which alleges a violation of the U.S.

28 Constitution's Elections Clause. *Compare* Am. Compl. ¶¶ 108–16, 117–22, *and* Motion 11–14,

                                             5

1  18–21, *with* Compl. ¶¶ 36–44, 56–61, *and* ECF No. 2, at 3–16, 17–18. Plaintiffs' second motion

2  therefore attempts to relitigate issues that this Court already resolved—most significantly, the

3  degree to which Defendants' plans are consistent with the Nevada Legislature's statutory

4  schemes. *See* Order at 16–20.

5      A second motion for a preliminary injunction is not the proper vehicle by which to rehear

6  these previously decided issues—in other words, to take a second bite at the proverbial apple.

7  Where a preliminary injunction motion relitigates issues, it is "aptly addressed as a motion for

8  reconsideration." *Harris v. City of Clearlake*, No. 17-cv-05126-YGR, 2018 WL 659015, at *4

9  (N.D. Cal. Feb. 1, 2018). "A motion for reconsideration 'should not be granted, absent highly

10  unusual circumstances,' unless: (i) the movant presents the court newly discovered evidence;

11  (ii) the court committed clear error, or the initial decision was manifestly unjust; or (iii) there is

12  an intervening change in controlling law." *Langford v. Baker*, No. 3:19-cv-00594-MMD-WGC,

13  2020 WL 265281, at *1 (D. Nev. Jan. 17, 2020) (quoting *Nunes v. Ashcroft*, 373 F.3d 805, 807

14  (9th Cir. 2004)). Because Plaintiffs have not even *attempted* to make this required showing, this

15  Court should deny the second motion to the extent that is seeks to reconsider claims and issues

16  already decided. *See Harris*, 2018 WL 659015, at *4.

17  **II.     Plaintiffs cannot succeed on the claims alleged in their amended complaint.**

18          **A.     Plaintiffs cannot succeed on the merits of Count I.**

19                  **1.     Plaintiffs lack standing.**

20      Plaintiffs must demonstrate Article III standing for each form of relief sought. *Friends of*

21  *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[T]he irreducible

22  constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S.

23  555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable

24  to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

25  judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

26      As discussed at greater length in Intervenor-Defendants' motion to dismiss, Plaintiffs

27  lack standing to bring this claim. *See* MTD at 67. Specifically, Plaintiffs lack standing because

28  they fail to connect the conduct they challenge—Defendants' decision to proactively mail ballots

1    to voters in purported violation of Nevada law—with the injury they assert—disenfranchisement.

2    *Cf.* Order at 10 n. 7 ("Even if the Court had concluded [] that there was a violation of Nevada

3    law in the implementation of the all-mail provisions of the Plan, such as the Plan being untimely

4    or otherwise 'inconsistent' with the intent of Nevada's Legislature . . . the Court finds that

5    Plaintiffs have not established a nexus between such alleged violations and the alleged injury of

6    vote dilution.").

7                   **2.**      **Count I fails to plausibly state a burden on the right to vote and therefore fails on the merits.**

8

9          Plaintiffs' failure to establish a nexus between disenfranchisement (or any other burden

10   on the right to vote) and the proactive mailing of ballots also dooms Count I on the merits. *See*

11   MTD at 7–8. While Plaintiffs state repeatedly throughout their amended complaint and second

12   motion that Defendants' decision to automatically mail ballots to voters will somehow result in

13   disenfranchisement, they do so only speculatively and without resolving the fundamental logical

14   puzzle that *more votes* will somehow result in *less voting*. Accordingly, they have not plausibly

15   pleaded, and certainly have not proven, that they or anyone else will have their right to vote

16   burdened.

17         Although cloaked in a claim of "direct disenfranchisement," Count I is ultimately

18   premised on the same foundation as their original complaint: that the U.S. Constitution grants

19   Plaintiffs the right to have their (incorrect) reading of state law enforced by this Court. This

20   argument is at the core of Plaintiffs' claim and pervades their second motion for a preliminary

21   injunction. *See* Motion at 2–6, 11–14, 18–19. They contend that "only the legislature may

22   lawfully balance ballot access and ballot fraud and prescribe the election manner, and it nowhere

23   authorized all-mail-in-ballot voting, but rather in-person voting with modest mail-in voting."

24   Motion at 11. Defendants' departure from these policies, Plaintiffs continue, "will cause [] *direct*

25   disenfranchisement" and other harms. *Id*. But the U.S. Constitution does not provide a vehicle to

26   enforce state election laws, *see* MTD at 7–8, and even if it did, Defendants' plan to mail ballots

27   to voters is consistent with Nevada law, *see* MTD at 8–9, as this Court already concluded after

28   lengthy discussion, *see* Order at 16–20.

1    Because Plaintiffs have not proven that a switch from an absent voting system to a mail

2  ballot system will burden anyone's ability to vote, let alone their own, they cannot succeed on

3  the merits of Count I under the *Anderson-Burdick* framework. Under *Anderson-Burdick*, a court

4  "must first consider the character and magnitude of the asserted injury to the rights . . . that the

5  plaintiff seeks to vindicate." *Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018) (alteration in

6  original) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Then, the court must

7  weigh those interests against the state's justification for the challenged policy, which must be

8  "sufficiently weighty to justify the limitation." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 288–

9  89 (1992)). As the Ninth Circuit explained in *Short*, states have a significant interest in mailing

10  ballots to voters to facilitate voting. *Id.* at 679. That interest is especially strong in the context of

11  a pandemic, and clearly outweighs the (nonexistent) burden on Plaintiffs.[4]

12    Absent allegations or evidence that give rise to the inference that Plaintiffs will suffer an

13  injury to their ability to vote, Plaintiffs cannot prevail on the merits of an *Anderson-Burdick*

14  claim. For this reason, and because Plaintiffs lack standing, Plaintiffs cannot succeed on the

15  merits of Count I.

16    **B.    Plaintiffs cannot succeed on the merits of Count II.**

17       **1.    Plaintiffs lack standing.**

18    In denying Plaintiffs' first motion for a preliminary injunction, this Court concluded that

19  Plaintiffs lacked standing to bring this cause of action:

20     Plaintiffs' argument is difficult to track and fails to even minimally meet the first
       standing prong. The theory of Plaintiffs' case, and which is the only alleged injury
21     driving all of their claims, is that the Plan will lead to an increase in illegal votes
       thereby harming them as rightful voters by diluting their vote. But Plaintiffs'
22     purported injury of having their votes diluted due to ostensible election fraud may
       be conceivably raised by any Nevada voter. Such claimed injury therefore does
23     not satisfy the requirement that Plaintiffs must state a concrete and particularized
24     injury.

25

26

27  [4] As this Court correctly noted, "although Plaintiffs cloak their preference in a claim of voter
    disenfranchisement, Defendants may equally claim that voters will be disenfranchised" if
    Defendants' plans for the June Primary are blocked. Order at 13–14 (citation omitted).

28

1   Order at 9 (citation omitted). This conclusion still holds; although additional Plaintiffs have been

2   added to the amended complaint, none remedies this fundamental shortcoming of Plaintiffs'

3   action.

4         This conclusion notwithstanding, Plaintiffs attempt to relitigate this finding, suggesting

5   that they have standing on this claim because it is not a generalized grievance. *See* Motion at 19–

6   21. But given that any standing argument they make is based on facts and arguments virtually

7   identical to those that this Court already considered, Plaintiffs may not seek reconsideration of

8   this Court's conclusion without first making the threshold showing discussed in Part I *supra*.

9   Moreover, as discussed in Intervenor-Defendants' motion to dismiss, Plaintiffs continue to lack

10   standing to bring this claim. *See* MTD at 9–10.

11             **2.     Count II fails as a matter of law.**

12         Count II fails to state a claim upon which relief can be granted for three reasons. First, as

13   discussed in Part II.A.2 *supra*, Plaintiffs cannot use the U.S. Constitution as a vehicle to enforce

14   state election laws. *See* MTD at 10; *see also id.* at 7–8. Second, Plaintiffs cite no authority—and,

15   indeed, none exists—that applies the theory of vote dilution as a weapon to make it more

16   difficult for other citizens to vote, based entirely on unfounded and speculative fears of voter

17   fraud. *Cf. Short*, 893 F.3d at 677–78 ("Nor have the appellants cited any authority explaining

18   how a law that makes it easier to vote would violate the Constitution."). Because Plaintiffs have

19   not articulated a viable legal theory of vote dilution, they cannot succeed on the merits of Count

20   II. *See* MTD at 10–11. And third, as this Court has already held, Defendants' decision to mail

21   ballots to registered voters in Nevada is explicitly countenanced by Nevada statute. *See* Order at

22   16–20; *see also* MTD at 10; *see also id.* at 8–9.

23             **3.     Count II fails on the merits.**

24         Even if the Court were to reach the merits, Count II has no likelihood of success because

25   Plaintiffs' claim of vote dilution based on the potential for voter fraud is both legally and

26   factually unfounded, and outweighed by the State's compelling interest in expanding access to

27   mail voting in the midst of a pandemic.

28

1    This Court already reached that conclusion. *See* Order at 11–14. In particular, the Court

2    correctly observed that "Plaintiffs' overarching theory that having widespread mail-in votes

3    makes the Nevada election more susceptible to voter fraud seems unlikely where the Plan

4    essentially maintains the material safeguards to preserve election integrity." *Id.* at 13–14.

5    Nothing identified in the amended complaint or second motion changes this result. Count II still

6    relies on the same flawed premise; Plaintiffs still "cloak their preference in a claim of voter

7    disenfranchisement," Order at 14, and Plaintiffs still lack compelling evidence that Defendants'

8    plans will increase the risk of voter fraud for the June Primary.[5] (For these reasons, as discussed

9    in Part I *supra*, it is procedurally improper for Plaintiffs to seek reconsideration of the Court's

10   earlier decision.)

11   The one arguably compelling piece of new evidence provided by Plaintiffs is the

12   declaration of a Clark County resident, in which he attests that he has seen discarded ballots near

13   his home. *See* Motion at 9; Am. Compl., Ex. O. But the mere existence of these ballots does not

14   lead to the conclusion that they will be fraudulently cast, especially given, as this Court

15   previously noted, that "the material safeguards to preserve election integrity" will remain in

16   place for the June Primary. Order at 14. The second motion also introduces articles and studies

17   relating to purported voting irregularities, *see, e.g.*, Motion at 7–8, but none of this additional

18   evidence meaningfully changes or improves the showing that Plaintiffs already made—and this

19   Court already rejected.

20   In short, neither new evidence nor new inferences change this Court's conclusion that

21   Plaintiffs' "claim of voter fraud is without any factual basis." Order at 12. Plaintiffs have not

22   martialed stronger evidence to support their claims, and their allegations remain as speculative as

23   before. The Court should therefore conclude once again that Plaintiffs have failed to produce

24

---

25   [5] Most of the evidence Plaintiffs muster to support their farfetched allegations of widespread
26   fraud consists of articles and editorials, some decades old, taken out of context and packaged as a
     coherent theory. *See* Motion at 6–8; Am. Compl. ¶¶ 81–96. But this is essentially the same
27   collection of articles of which the Court was rightfully skeptical when ruling on Plaintiffs' first
     motion. *See* Order at 12 n. 10.
28

1   evidence tying mail ballots to increased voter fraud. Because Plaintiffs have not established a

2   plausible burden on their right to vote, they cannot maintain an *Anderson-Burdick* claim, *see* Part

3   II.A.2 *supra*, and so Count II fails on the merits.

4   **C.    Plaintiffs cannot succeed on the merits of Count III.**

5   **1.    Plaintiffs lack standing.**

6   For the same reasons that Plaintiffs lack standing to bring Counts I and II, they have no

7   standing to assert Count III. *See* MTD at 12; *see also id.* at 9–10; Order at 8–9.

8   **2.    Count III fails to plead a cognizable cause of action.**

9   Count III, invoking the U.S. Constitution's Elections Clause, is identical to a claim in

10  Plaintiffs' original complaint that this Court already rejected. *See* Order at 20. Most

11  significantly—and ultimately fatally—Plaintiffs do not and cannot produce any authority

12  establishing a private right of action under this provision. *Cf. U.S. House of Representatives v.*

13  *Burwell*, 130 F. Supp. 3d 53, 78 (D.D.C. 2015) (noting private citizens generally lack power to

14  "deputiz[e] themselves in an effort to enforce federal law"). In the absence of a cognizable

15  federal cause of action, Plaintiffs cannot succeed on the merits of Count III. *See* MTD at 11–12.

16  **3.    Count III is based on the incorrect assumption that Defendants' plans**
        **violate Nevada law.**

17

18  Additionally, Count III is premised on Plaintiffs' contention that Defendants' plans "are

19  contrary to the legislative mandate." Motion at 21. But this Court already concluded—

20  correctly—that Defendants' plans are consistent with state law. *See* Order at 16–20; *see also*

21  MTD at 12; *see also id.* at 8–9. Count III therefore fails.

22  **D.    Plaintiffs cannot succeed on the merits of Count IV.**

23  Count IV alleges that the actions taken by the Clark Registrar to make it easier for Clark

24  County voters to cast ballots infringe on the equal protection rights of voters living in *other*

25  counties. *See* Motion at 21–23. But as discussed at greater length in Intervenor-Defendants'

26  motion to dismiss, *see* MTD at 10; *see also id.* at 7–8, the U.S. Constitution does *not* provide a

27  cause of action to make it harder for other people to vote. *See Short*, 893 F.3d at 677–78

28  (rejecting equal protection claim where plaintiffs had not shown that challenged policy "will

1   prevent anyone from voting" or "cited any authority explaining how a law that makes it easier to

2   vote would violate the Constitution"). Indeed, on the pleadings and on the merits, Count IV is

3   squarely foreclosed by the Ninth Circuit's opinion in *Short*, which rejected a nearly identical

4   effort by voters of one county to challenge the decision to proactively mail ballots to voters in

5   other counties under a theory of vote dilution. *See id*.

6          Here, as in *Short*, Plaintiffs have failed to put forth any evidence that the Clark County

7   policies they challenge—namely, the appointment of field registrars and the proactive mailing of

8   ballots to registered voters with both active and inactive statuses—make it *harder* for anyone to

9   vote, let alone themselves. *See id.* at 677. Because they make voting easier, and because being a

10  citizen of another county is not a suspect classification, the challenged policies need only be

11  rationally related to a legitimate government purpose to withstand equal protection scrutiny. *See

12  id.* at 677–79. In *Short*, the Ninth Circuit readily concluded that a state's interest in increasing

13  voter turnout more than justified allowing some counties to experiment with ways to make

14  voting easier. *See id.* at 679. And *Short* took place outside of the context of a pandemic, one that

15  necessitates new methods to hold a safe election.

16         Even under normal conditions, Count IV would be foreclosed by *Short*. But given the

17  novel and exceptional circumstances posed by the current health crisis, Plaintiffs cannot possibly

18  argue that the Clark Registrar's additional election policies fail rational basis review. Count IV

19  therefore fails on the merits.

20  **III.    The balance of harms weighs strongly against Plaintiffs' requested injunction.**

21         Plaintiffs contend that they will suffer irreparable harm "if the Plans proceed and the

22  election is held in violation of Plaintiffs' constitutional rights." Motion at 23. The cases they cite

23  do indeed stand for the proposition that abridgement of the right to vote constitutes an irreparable

24  harm. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir.

25  2014); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016). But

26  Plaintiffs have not actually demonstrated that their right to vote will be curtailed or obstructed by

27  Defendants' plans for the June Primary. Their claims of disenfranchisement are wholly

28  speculative, and they continue to litigate against a mere apparition of voter fraud. There is simply

12

1   no evidence that Plaintiffs will not be able to cast a ballot in the June Primary, or that their

2   constitutional rights will otherwise be violated simply because more Nevadans will have a

3   meaningful opportunity to vote.

4         By striking contrast, enjoining Defendants' plans for a predominantly vote by mail

5   election would have a devastating impact on Nevadans' opportunities to participate meaningfully

6   in the June Primary. Defendants' decision to proactively mail ballots is a necessary response to a

7   public health crisis that severely limits the freedom of movement. Whether by necessity or

8   choice, many Nevadans will continue to exercise social distancing and remain sheltered in their

9   homes for the foreseeable future, thus necessitating the ability to vote by mail.[6] Without the

10  ability to cast mail ballots, these voters—denied the opportunity to vote by mail and unable or

11  unwilling to risk voting in person—will be effectively disenfranchised. Enjoining Defendants'

12  plans for vote by mail will not prevent any harms to Plaintiffs—their supposed harms are,

13  ultimately, imaginary—but will indisputably disenfranchise Nevada voters who are otherwise

14  unable to cast ballots in the June Primary.

15        Significantly, in ruling on Plaintiffs' first motion for a preliminary injunction, this Court

16  found that the balance of harms militated against granting an injunction *even if* Plaintiffs'

17  claimed harms were legitimate:

18        [E]ven accepting Plaintiffs' purported harm to them of being disenfranchised due
          to vote dilution, such disenfranchisement could be, even more concretely, claimed
19        in the absence of the Plan (and additionally by confusion that may result by the
          Court enjoining the Plan, and appeal—which would surely follow). The Court
20        therefore concludes that, at minimum, the Plan's all-mail election implementation
          to protect the public during a public health crisis tips the scale of equity in favor
21        of Defendants and Intervenor-Defendants (i.e., against the issuance of an
22        injunction).

23

24

25  _____

    [6] As Intervenor-Defendants previously noted, it is unsurprising that a host of other states have
26  also chosen to increase their uses of vote by mail in response to the pandemic. *See, e.g.*, Zach
    Montellaro & Laura Barrón-López, *States Rush to Prepare for Huge Surge of Mail Voting*,
27  Politico (Apr. 25, 2020), https://www.politico.com/news/2020/04/25/states-mail-voting-surge-
    207596.
28

1  Order at 23. Nothing in Plaintiffs' second motion changes this result. The balance of harm

2  therefore weighs strongly against granting injunctive relief.

3  **IV.      The public interest weighs heavily against the requested injunction.**

4           Plaintiffs' public interest argument is premised on two claims: (1) that Plaintiffs and

5  numerous other voters will be disenfranchised as a result of Defendants' plans for the June

6  Primary, and (2) that the current health crisis no longer warrants preventative measures to protect

7  the electorate. *See* Motion at 23–24. Plaintiffs' first contention is, as discussed above, wholly

8  speculative and grounded in neither the law nor the facts. And the second contention betrays a

9  fundamental misunderstanding of the ongoing pandemic.

10          As this Court previously concluded, "[i]t is clear that as triggered by the uncertainties of

11  COVID-19, the public's interests align with the Plan's all-mail election provisions." Order at 23.

12  Despite Plaintiffs' reassuring timbre, it remains true that "an injunction precluding Defendants'

13  use of mail ballots in the June 9, 2020 Primary would put Nevadans at risk." *Id*. It would also

14  deny countless Nevadans the opportunity to cast a ballot, which is decidedly *against* the public

15  interest. *See, e.g.*, *League of Women Voters*, 769 F.3d at 247 ("By definition, '[t]he public

16  interest . . . favors permitting as many qualified voters to vote as possible.'" (alterations in

17  original) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012))). This includes

18  not only Intervenor-Defendant John Solomon, but *all* eligible Nevadans who, by choice or

19  necessity, cannot timely request an absent ballot or vote in person for the June Primary. *See*

20  *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755,

21  766 (9th Cir. 2014) ("The public interest inquiry primarily addresses impact on non-parties rather

22  than parties." (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir.

23  2002))). All of these voters would suffer disenfranchisement if Plaintiffs receive their requested

24  injunctive relief. By contrast, the public interest would most assuredly be *ill*-served if Plaintiffs'

25  injunction were granted and voters' constitutional rights were violated to safeguard against the

26  imagined specter of voter fraud, especially given that Nevada law already provides numerous

27

28

14

1    safeguards to preserve the integrity of elections.[7] The public interest therefore continues to

2    counsel against granting Plaintiffs' proposed relief.

3    **V.      This Court should not grant Plaintiffs' injunction given the widespread disruption it
         would cause for Nevada election officials and voters.**

4

5    In their original complaint, Plaintiffs asserted a claim based on the U.S. Supreme Court's

6    decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). *See* Compl. ¶¶ 50–55. Though

7    Plaintiffs have abandoned *Purcell*, this Court should not follow suit, as the Supreme Court's

8    admonition against a federal court's unwarranted intrusion into a state's election practices

9    strongly counsels against granting the relief Plaintiffs seek in this case.[8]

10   *Purcell* and its progeny generally stand for the proposition that federal courts should

11   refrain from altering or enjoining a state's election rules under certain circumstances. *See* 549

12   U.S. at 5–6; *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205,

13   1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily

14   not alter the election rules on the eve of an election."); *Republican Party of Pa. v. Cortés*, 218 F.

15   Supp. 3d 396, 405 (E.D. Pa. 2016) ("Federal intervention at this late hour risks 'a disruption in

16   the state electoral process [which] is not to be taken lightly.' 'This important equitable

17   consideration goes to the heart of our notions of federalism.'" (alteration in original) (citation

18   omitted) (quoting *United States v. City of Philadelphia*, No. 2:06cv4592, 2006 WL 3922115, at

19   *2 (E.D. Pa. Nov. 7, 2006))). This principle is particularly pertinent where plaintiffs ask courts to

20   "impose large-scale changes to the election process." *Bryan v. Fawkes*, 61 V.I. 416, 469 (2014)

21

22   [7] It is, for example, already a felony in Nevada to "fraudulently [] request an absent ballot in the
23   name of another person," N.R.S. 293.313(4); threaten, intimidate, coerce, or exercise undue
     influence on any voter, N.R.S. 293.710(1)(a)–(c); impede or prevent a voter from voting, N.R.S.
24   293.710(1)(d); "vote[] or attempt[] to vote using the name of another person," N.R.S.
     293.775(2); or "attempt to vote more than once at the same election," N.R.S. 293.780(1).

25   [8] Plaintiffs no longer assert an independent cause of action premised on *Purcell*. They do,
26   however, suggest in a footnote that Defendants have committed "a *Purcell* principle violation."
     Motion at 13 n. 16. But as Intervenor-Defendants discussed in their opposition to Plaintiffs' first
27   motion for a preliminary injunction, *Purcell* does not bar state election officials from altering or
     amending their own election rules. *See* ECF No. 27-1 at 10–11.

28

1  (collecting cases).

2      Here, the relief Plaintiffs seek would serve to dramatically upend Defendants' plans for

3  the June Primary. As Plaintiffs themselves have observed, Defendants have already dispatched

4  mail ballots to eligible voters. *See, e.g.*, Am. Compl. ¶ 41 ("Mail ballots to active, registered

5  voters went out on May 6, 2020); *id.* ¶¶ 13–14 (Plaintiffs Gladwill and Barnett "voted by mail");

6  ECF No. 3 at 2 ("Defendants intend to send out mail-in ballots before May 15, 2020.").

7  Incredibly, Plaintiffs now urge this Court to issue an injunction requiring Defendants to

8  *disregard the mail ballots that have already been sent to voters*, Am. Compl. at 25—a

9  particularly insidious suggestion that would undoubtedly sow confusion among Nevada voters

10  and, as this Court has already concluded, disenfranchise those who have so far followed

11  Defendants' instructions for the June Primary. *See* Order at 23 (concluding that

12  disenfranchisement would result from the "confusion that may result by the Court enjoining the

13  Plan"). Plaintiffs also seek a massive public information campaign to notify "*every registered

14  voter*" of the changes Plaintiffs seek, and to undo the Clark Registrar's additional plans that were

15  enacted this month to increase voting opportunities for eligible Clark County voters. *See id.* at

16  25–26 (emphasis added).

17      In short, Plaintiffs seek a sudden, disruptive, and unjustified volte-face, one that would

18  require tremendous expenditures of resources by state and county officials.[9] Granting such relief

19  would not only upset the basic notions of comity and federalism that undergird *Purcell*, but also

20  "result in the very type of confusion that *Purcell* cautions against." Order at 23. This Court

21  should therefore decline to grant relief that would radically interfere with the June Primary and

22  cause confusion and disenfranchisement for Nevada voters.

23  ///

24  ///

25

26  _____

27  [9] A curious twist, given Plaintiffs' ostensible concern with the monetary costs of Defendants'
plans for the June Primary. *See, e.g.*, Motion at 8 n. 9; Am. Compl. ¶¶ 42–43, 45.

28

1

**CONCLUSION**

2      For the foregoing reasons, Plaintiffs' second motion for a preliminary injunction should

3   be denied.

4      DATED this 20th day of May, 2020

5                                        **WOLF, RIFKIN, SHAPIRO,**
                                         **SCHULMAN & RABKIN. LLP**
6
                                         By: */s/ Bradley S. Schrager*
7                                             Bradley S. Schrager, Esq., SBN 10217
                                              Daniel Bravo, Esq., SBN 13078
8                                             3556 E. Russell Road, Second Floor
                                              Las Vegas, Nevada 89120
9

10                                            Marc E. Elias, Esq.*
                                              Henry J. Brewster, Esq.*
11                                            Courtney A. Elgart, Esq.*
                                              **PERKINS COIE LLP**
12                                            700 Thirteenth St. NW, Suite 800
                                              Washington, D.C. 20005-3960
13

14                                            Abha Khanna, Esq.*
                                              Jonathan P. Hawley, Esq.*
15                                            **PERKINS COIE LLP**
                                              1201 Third Avenue, Suite 4900
16                                            Seattle, Washington 98101-3099

17
                                              *Attorneys for Proposed Intervenor–Defendants*
18                                            *Nevada State Democratic Party, DNC Services*
                                              *Corporation/Democratic National Committee,*
19                                            *DCCC, Priorities USA, and John Solomon*

20                                            *Admitted pro hac vice

21

22

23

24

25

26

27

28

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of May, 2020 a true and correct copy of

**INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND MOTION**

**FOR A PRELIMINARY INJUNCTION** was served via the United States District Court's

CM/ECF system on all parties or persons requiring notice.


By:   */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP