# EXHIBIT B

**EXHIBIT B**

CHRISTOPHER J. HICKS
Washoe County District Attorney
HERBERT B. KAPLAN
Deputy District Attorney
Nevada State Bar 7395
One South Sierra St.
Reno, NV 89501
(775) 337-5700
hkaplan@da.washoecounty.us
ATTORNEYS FOR DEANNA SPIKULA,
WASHOE COUNTY REGISTRAR OF VOTERS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| STANLEY WILLIAM PAHER, TERRESA MONROE-HAMILTON, AND GARRY HAMILTON, DARYL BYRON DESHAW, JEFF ECKER, GARY GLADWILL, LINDA BARNETT, and NEVADA RIGHT TO LIFE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, DEANNA SPIKULA, in her official capacity as Registrar of Voters for Washoe County, JOSEPH P. GLORIA, in his official capacity as Registrar of Voters for Clark County,<br><br>    Defendants. | Case No. 3:20-cv-00243<br><br>**DECLARATION OF DEANNA SPIKULA, WASHOE COUNTY REGISTRAR OF VOTERS, IN SUPPORT OF OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION** |

I, Deanna Spikula, do hereby declare, under penalty of perjury, the following:

1. I am the Washoe County Registrar of Voters ("hereinafter Registrar or Washoe County Registrar"). I was appointed as Registrar by the Washoe County Board of County Commissioners in 2018. Prior to that, I had worked for the Washoe County Registrar of Voters' office since 2011.

-1-

2. As the Washoe County Registrar, I have the powers and duties vested in and imposed upon the county clerk of the county with respect to elections, except the duties imposed by virtue of NRS 293.393 to make out and deliver certificates of election.

3. That in or about early March 2020, the impact of COVID-19 began to be apparent, as cases in the State of Nevada and in Washoe County began to appear.

4. Coupled with numerous deaths related to COVID-19, on March 12, 2020, Governor Steve Sisolak reacted with a declaration of emergency.[1] The following day, President Trump declared a nationwide state of emergency based on the rapidly spreading, deadly COVID-19 virus. The World Health Organization and the United States Centers for Disease Control and Prevention advised that there is a correlation between density of persons gathered and the risk of transmission of COVID-19.

Governor Sisolak soon after declaring an emergency, imposed restrictions on casinos requiring them to cease operations effective March 17, 2020. On March 20, 2020, another directive was issued ordering closed temporarily all non-essential businesses, restricting restaurants from dining service, and requiring social distancing at other business establishments. By separate declaration that same day, the Nevada Department of Motion Vehicles was ordered closed to the public and deadlines to renew licenses and registrations extended. In yet another declaration on March 20, 2020, all schools were ordered to cease normal operation and authorized to provide only distance education. March 22, 2020 brought a declaration which suspended the requirements of the Open Meeting Law requiring that there be a physical location designated for meetings of public bodies where members of the public are permitted to attend and participate. Two days after that, gatherings in groups of ten or more in any indoor or outdoor area were prohibited.

---

[1] See http://gov.nv.gov/News/Emergency_Orders/Emergency_Orders/ for Governor Sisolak's Directives.

5.    It is my understanding and belief that all of the actions taken by governor Sisolak were done in an effort to minimize contact that would potentially result in the spread of COVID-19 and to stress the importance of social distancing in an effort to slow the spread of the deadly virus.

6.    With the State of Nevada being on stay-at-home social distancing orders, with no end of that restriction in sight, in mid-March the 17 county election officials in Nevada conferred with the Secretary of State's Office in an effort to determine how to address the fast-approaching, upcoming 2020 primary election in a manner that would comply with the social distancing restrictions in place, to ensure the safeguarding of voters' health and safety while participating in voting, while also maintaining the integrity of the election.

Thereafter, each of the 17 county election officials made a request of the Secretary of State's Office to approve an all-mail primary election.

7.    As a result, on March 24, 2020, the Secretary of State's Office issued a press release advising that the primary election will be conducted as an all-mail election. See Press Release attached to Amended Complaint as Exhibit J.   The press release went on to advise that this action was necessary to ensure the voters' "health and safety while participating in voting is paramount to state and local election officials." Id. The release further advised that "training of thousands of poll workers who support Nevada's large in-person voter effort was scheduled to begin next week (the first week of April)" and that the majority of those poll workers "belong to groups at high risk of severe illness from COVID-19." Id.

8.    All 17 county election officials, as well as the Secretary of State's Office, immediately began to take action to effect the all-mail primary election. Announcements were made to the public advising that the election would be conducted as an all-mail election. The process was explained.

9.    The election is scheduled to take place on June 9, 2020, with early voting scheduled for May 23 through June 5.

10. Social distancing and stay-at-home restrictions remain in place as of the date of execution of this declaration. Beginning on May 9, 2020, limited establishments, including restaurants, bars & breweries that serve food, barber shops, hair salons, nail salons, and retail businesses were authorized to reopen with restrictions and safeguards in place.

11. In Washoe County, there has been limited testing of individuals for the virus. However, new cases continue to be discovered on a daily and consistent basis. For instance, on May 15, 2020, there were an additional 36 new cases identified, and that is based on only limited testing. See https://gis.washoecounty.us/COVID19. While the stay-at-home and social distancing restrictions have curtailed some of the spread of the virus, it remains to be seen how even the limited re-opening impacts the spread.

12. The primary election situation in Wisconsin has been referenced, but the situation here is quite different, especially with respect to timing and preparation. My understanding with that situation is that the timing of the Wisconsin primary election and the simultaneous explosion of the COVID-19 virus resulted in a short time frame for voters to request absent ballots, receive them, and vote them. The primary was scheduled for April 7, only weeks after the beginning of the fast spread of COVID-19. While many voters there requested absent ballots, some voters did not receive their ballots due to the short turnaround time involved. Wisconsin election workers were not prepared for the significant increase in absentee ballots and several bins containing undelivered ballots were found after the election. With that short time in which to process the unanticipated increase in mail ballots, long lines at the polling locations resulted.

13. The goal in Nevada, in not requiring requests for ballots, which is what was required in Wisconsin, and in mailing all active registered voters ballots as early as possible, was to allow ample time and opportunity to vote by mail ballot, to avoid the situation that resulted in the Wisconsin cities at the April 7, 2020 primary election. Sample ballots for all active registered voters were prepared and mailed at great expense. Those sample ballots advised of the all mail election. See Exhibit M attached to Amended Complaint. By the end of April, the

actual mail ballots were mailed to all active registered voters in Washoe County. Upon information and belief, all ballots for all Nevada voters have been mailed as of the date of execution of this declaration.

14. The mail ballots were printed and mailed at great expense, due to the fact that the volume of ballots for all active registered voters was great, and further due to the fact that postage paid envelopes were included to return the ballots in an effort to avoid rejection of ballots due to a voter failing to provide postage.

Based on the Declaration of Wayne Thorley, filed in *Corona v. Cegavske*, First Judicial District Court of Nevada, Case No. 20-OC-00064 1B, a true and correct copy of which is attached as Exhibit "A" to the Opposition filed herewith, according to the Secretary of State's Office, approximately $2.4 million was spent statewide for the printing and outbound postage for the ballots already printed and mailed. Another $235,000 was estimated for the return postage on the envelopes, as required by NRS 293.323(3), in an effort to avoid ballots being returned to voters due to lack of return postage. Another $1 million was to be used to procure additional voting equipment needed to process the increase in mail ballots and for other non-voting equipment necessary. On April 30, Wayne Thorley, Deputy of Elections for the Nevada Secretary of State, testified before the Interim Finance Committee of the Nevada Legislature regarding the availability of federal grant funds to assist with the administration of the 2020 primary election. As a result, the Secretary of State's Office has received Interim Finance Committee approval to allocate expenditures to execute the mail election. Included in that allotment is nearly $800,000 with which the SOS contracted with a Reno-based marketing firm to inform the public/voters in Nevada of the mail election. That effort has begun and includes TV and radio ads, digital ads for social media, direct mail marketing, and a website dedicated specifically for providing information about the primary election.

The SOS website has the following message posted:

> Nevada plans to conduct an all-mail election for the June 9, 2020 primary election. All active registered voters in Nevada will be mailed an absentee ballot for the primary

election. No action or steps, such as submitting an absentee ballot request application, will be required by individual voters in order to receive a ballot in the mail. Voters will be able to mark their ballot at home and then return it by mail using a postage-prepaid envelope or by dropping it off in person at a designated county location. This announcement applies only to the June 9, 2020 primary election.

https://www.nvsos.gov/sos/elections/2020-election

The website also provides specific guidance, explain that "For the safety of all Nevadans, and as a temporary measure to help slow the spread of COVID-19, the 2020 Nevada primary election will be conducted through mail-in ballots." https://www.mailitinnevada.com/. The SOS website also provides a list of "2020 Ballot Drop Off & Polling Locations."

15. The mail-in primary election plan is in full swing, with early voting set to commence in just a few days and the actual primary election day just a few weeks away. Many voters have already completed their ballots and returned the same via mail or by dropping them off at my office. Additional steps have been taken to allow for timely processing of all ballots cast. Having additional polling locations for in-person voting will encourage people to vote in person, increasing the health and safety risks associated with the COVID-19 virus and the mandated social distancing.

16. Based on the late timing of bringing this matter to the court, there is no viable manner in which to alter the all-mail election process that the registered voters, if not all citizens, in the State of Nevada, expect, without placing into question the integrity of that election.

17. At the present time, only my office is designated as an in-person polling location for the early voting period, as well as the June 9, 2020 primary election.

In order to conduct an in-person election, as Plaintiffs suggest is required, poll workers will have to be located and trained. As noted in the March 24, 2020 press release issued by the Secretary of State's Office, the majority of volunteer poll workers "belong to groups at high risk of severe illness from COVID-19." The health and welfare of each voter, each poll worker, and potentially all those they come in contact with, would be placed in jeopardy if an in-person election could somehow materialize. Moreover, those individuals would have to be adequately

1 trained to ensure an efficient primary election of the high level of integrity I require, and the
2 people of Nevada deserve. That training normally has already occurred in the process. It has not
3 occurred at this time due to the social distancing restrictions, and further due to the
4 announcement of the all-mail election. My office does have some online training available.
5 However, there is also in-person training session for all poll workers. While some form of
6 distance training might be possible at this point, I would not feel comfortable with only that
7 remote training to go forward with the election as an in-person election beginning on May 23,
8 2020. In addition, if my office had train more people to staff additional in-person locations, I
9 would additionally have to find an adequate, safe location to conduct the in-person training, as
10 our current location cannot accommodate that training since ballots are currently being processed
11 in that space. Remote training is inadequate to train mostly new poll workers in handling the
12 equipment.

13    Furthermore, other polling locations have not been secured or identified. NRS 293.203
14 requires that I publish a notice of the primary election "in a newspaper of general circulation in
15 the county once a week for 2 successive weeks" and that the notice must contain: 1) the date of
16 the election; 2) the location of the polling places, and 3) the hours during which the polling
17 places will be open for voting. That notice has been published as required, designating the dates
18 of early voting, as well as my office being the only polling location.

19    18.    It is too late to properly notify the public of other polling locations should
20 additional locations be required. If the nature of this election is altered at this late date to an in-
21 person election, it is very likely that voters may be deprived of the right and ability to vote in the
22 primary election. This is based on a number of reasons.

23    First, many voters have already submitted their ballots. Even if some form of media
24 campaign could be initiated at this late date to advise voters that the ballots they have already
25 cast may not be counted, such instruction would undoubtedly cause great confusion in voters.
26

Voters who have actually shown the intent to vote by already voting, may not be able to follow the new process to vote again and have that vote counted.

In addition, some voters may choose not to vote knowing that my office will be the only polling location. If voters do appear, and remain in line to vote, allowing every person in line at the identified 7:00 p.m. conclusion of the June 9, 2020 primary election to vote would most likely result in voters remaining in that line into June 10, 2020 if not later than that. At the November 2018 General Election, with multiple polling locations, voters remained in line to vote in person at polling locations up to 3 hours after the 7:00 p.m. deadline. Voters may choose to protect their health and safety rather than going out to vote in person, potentially in violation of social distancing guidelines.

Any change in the election process at this late date would negatively impact and disrupt the election process, which is already underway, and would effectively prevent voters from voting who have relied on the notices of an all-mail election.

19. While the in-person polling location has been identified for the primary purpose of facilitating same day voter registration, and my office is encouraging voters to vote by mail, voters who appear in person to vote will not be denied the ability to vote in person.

20. The all-mail primary election provides all of the voter fraud safeguards that exist in statute.

21. Ballots are mailed to the mailing address on file for each active registered voter. It is the responsibility of the voter to ensure that their address with my office is current. This can be accomplished in-person at my office, online, through the Department of Motor Vehicles (although that is currently closed), or through the mail. The deadline to update voter registration online and still receive a ballot by mail is May 21, 2020. Those voters complying with that deadline will be able to be provided the ballot based on their new address and may still vote by mail. After May 21, and continuing through June 4, 2020, voters may still update their registration online, but will then be required to appear in person to vote and provide a current and

-8-

valid Nevada driver's license or identification card and proof of residency. On June 5, 2020 and on June 9, 2020, voters who need to register or update their current registration will be required to do so in person and provide a current and valid Nevada driver's license or identification card and proof of residency.

Ballots mailed may not be forwarded to any other address. If a registered voter has moved and failed to update their address, the ballot will be returned to my office. Those voters will still be able to appear in person to vote on June 9, 2020, requiring the same identification and proof of residency set forth above.

22. In terms of the mail-in ballots, there are numerous levels of fraud safeguards in place, just as in any election.

First, as noted, if a registered voter has moved and failed to update their address, the ballot will be returned to my office. There will be no ability for that ballot to be voted fraudulently.

Second, the normal restrictions and safeguards for absent ballots and mail-in ballots remain in place. Specifically, only the actual voter may complete their ballot. The ballot must be returned in the envelope, postage prepaid, provided, as each ballot issued is associated with the return envelope provided. The voter is required to sign the return envelope and seal the envelope. The voter is required to return the ballot, in the sealed, signed envelope, by placing the same in the United States mail, having it postmarked no later than June 9, 2020, or by returning the envelope in person at my office. Voters may authorize a family member to place the ballot in the mail or deliver it to my office. However, no other individual may be authorized to do so. As a result, the ballot should not be in the hands of anyone other than the voter, a family member if authorized by the voter, the U.S. Postal Service, and my office personnel.

For those individuals who have requested, or will request, an absent ballot, every such request must be made available for public inspection. NRS 293.315. My office must determine

before issuing the absent ballot that the person who requested the absent ballot is a registered voter in the proper county. NRS 293.320.

Upon receipt of an absent or mail-in ballot, my office must check the signature on the return envelope against all signatures of the voter available in the records of the county clerk. If at least two employees in the office of the county clerk believe there is a reasonable question of fact as to whether the signature on the absent ballot matches the signature of the voter, my office must then contact the voter and ask the voter to confirm whether the signature on the absent ballot belongs to the voter. My office will contact the individual by mail and by phone or e-mail if possible, or if not possible, by mail, to attempt to verify that the ballot is submitted by the identified voter and can be counted.

Moreover, it remains "unlawful for a person fraudulently to request an absent ballot in the name of another person or to induce or coerce another person fraudulently to request an absent ballot in the name of another person. A person who violates this subsection is guilty of a category E felony and shall be punished as provided in NRS 193.130." NRS 293.313.

In addition, a voter is prohibited from (a) receiving a ballot from any person other than an election board officer, (b) delivering to an election board or to any member thereof any ballot other than the one received, or (c) placing any mark upon his or her ballot by which it may afterward be identified as the one voted by the person. NRS 293.730(2). Violation of those provisions is a category E felony and shall be punished as provided in NRS 193.130. NRS 293.730(3).

NRS 293.775 makes it a category D felony, punishable as provided in NRS 193.130, for any "person who is not a qualified elector and who votes or attempts to vote knowing that he or she is not a qualified elector," or for any "person who votes or attempts to vote using the name of another person."

1 In addition to the criminal penalties for voter fraud, NRS 293.840 provides for a civil penalty, not to exceed $20,000 for each violation of Title 24, Chapter 293 of the Nevada Revised Statutes.

DATED THIS 18th DAY OF MAY, 2020.

_____
Deanna Spikula