AARON D. FORD
 Attorney General
GREGORY L. ZUNINO, Bar No. 4805
 Deputy Solicitor General
CRAIG A. NEWBY, Bar No. 8591
 Deputy Solicitor General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1100
E-mail: glzunino@ag.nv.gov
E-mail: cnewby@ag.nv.gov

*Attorneys for Barbara Cegavske*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM STANLEY PAHER, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>BARBARA CEGAVSKE, *et al.*,<br><br>Defendants. | Case No.  3:20-cv-00243-MMD-WGC<br><br>**NEVADA SECRETARY OF STATE'S CONSOLIDATED MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Barbara Cegavske, in her capacity as Nevada Secretary of State (Secretary), by and through counsel, Aaron D. Ford, Attorney General, Gregory L. Zunino, Deputy Solicitor General, and Craig Newby, Deputy Solicitor General, hereby submits this consolidated motion to dismiss and opposition to Plaintiffs' second motion for preliminary injunction. Dismissal is sought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that Plaintiffs have failed to identify facts demonstrating their standing to bring suit for an alleged violation of rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

DATED this 20th day of May, 2020.

        AARON D. FORD
        Attorney General
        By: *Gregory L. Zunino*
            GREGORY L. ZUNINO
            Deputy Solicitor General
            CRAIG NEWBY
            Deputy Solicitor General

        *Attorneys for Secretary of State*

**POINTS AND AUTHORITIES**

## I. INTRODUCTION

Little has changed since Plaintiffs' first motion for a preliminary injunction. The relevant facts are as stated in the Court's order dated April 30, 2020. *See Paher v. Cegavske*, ___ F. Supp.3d ___, 2020 WL 2089813, *2–4 (D. Nev. 2020). Plaintiffs did not seek reconsideration of the Court's April 30, 2020 order, as provided for by Rule 60(b) of the Federal Rules of Civil Procedure. Plaintiffs did not seek expedited appellate review premised on the irreparable harm associated with mail-in voting for the June 9, 2020 primary, for which the counties have already mailed ballots.

Instead, Plaintiffs waited <u>two weeks</u> to file an amended complaint that rehashes the original challenge to the legal and statutory basis for the decision by state and local election officials to implement an all-mail primary election for June 9, 2020. The second motion is a notably cumbersome read, 24 pages in total, because it simply repeats all of the legal arguments from the original motion, with a few new bells and whistles. Simply stated, it a retread, and yet it comes a full two weeks after the Court's decision on the first motion for preliminary injunction. The inexplicable 2-week delay makes this Court's *Purcell* concerns from the April 30, 2020 order even more applicable than before, and further justifies the application of the equitable doctrine of laches.

As a matter of law, Plaintiffs' second motion for preliminary injunction specifically takes issue with the Court's conclusion that the Washoe County registrar appears to have satisfied the notice requirement of NRS § 293.213(5), even though notice was provided after the March deadlines described at NRS § 293.205 and .206. (ECF. No 65 at 4–6). *See Paher*, 2020 WL 2089813, *10. Plaintiffs neglect to explain why this warrants a second motion given the Court's finding that the issue is rendered moot by Plaintiffs' lack of standing. *See id*. Nothing argued by Plaintiffs suggests any new basis for standing here.

From a factual standpoint, Plaintiffs' second motion is likewise bereft of substance. Plaintiffs anxiously describe some new developments in Clark County: specifically the implementation of an election plan that "gives voters advantages over other-county

voters, including by (i) sending absent ballots to inactive voters and, as reported, 'allow a bipartisan group of deputized 'field registrars' to collect sealed ballots from voters.' (ii) creating more vote centers than other Nevada counties." (ECF No. 64 at 2:12–15).  By now complaining of more vote centers (which presumably allow for more in-person voting), Plaintiffs contradict the rationale for their first motion.  While the first motion advanced the speculative proposition that less in-person voting would facilitate voter fraud, the second motion expresses concern about Clark County's decision to expand opportunities for in-person voting.  If there is a hearing on this retread motion, Plaintiffs should explain their change in position on the merits of more in-person voting.

As to Plaintiffs' first point about inactive voters and field registrars, they fall back on the same speculative, unsupported allegations of vote dilution that this court has already rejected.  Under Nevada law, Clark County election officials have the discretion to determine the best methods of reaching voters in their large, populous, and geographically diverse county.  Plaintiffs do not identify how the addition of vote centers, or the decision to mail ballots to inactive voters, runs afoul of Nevada's election statutes.  Plaintiffs' demand for injunctive relief continues to be grounded in their unprovable assertion that vote-by-mail processes are inferior to in-person processes as a means of combatting voter fraud. No evidence has been provided warranting reconsideration of this court's prior order on this issue.

This is ultimately a policy argument that Plaintiffs must pursue through legislative channels, not through civil rights litigation at this belated hour.  Injunctive relief remains unwarranted in this case.

## II.   STANDARD OF REVIEW[1]

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction.  Dismissal under

---

[1] This section covers only the standard of review for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The standard for issuance of a preliminary injunction is discussed in the Secretary's opposition to Plaintiff's original motion for a preliminary injunction. (ECF No. 28 at 3-4). In the interest of brevity, the discussion is not repeated here.

1  Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts
2  on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic*
3  *Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir.
4  2008).

5  Although the defendant is the moving party in a motion to dismiss brought under
6  Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the
7  plaintiff bears the burden of proving that the case is properly in federal court. *McCauley*
8  *v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors*
9  *Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Federal courts are courts of limited
10 jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal
11 court is presumed to lack jurisdiction in a particular case unless the contrary
12 affirmatively appears. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
13 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist
14 at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F.
15 Supp. 2d 949, 952 (D. Nev. 2004).

16 Article III, § 2 of the U.S. Constitution states that the federal courts may only
17 adjudicate "Cases" and "Controversies". *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,
18 559 (1992). The case-or-controversy requirement of Article III requires that Plaintiffs
19 establish their "standing" as a jurisdictional prerequisite to the prosecution of this law
20 suit. *Clapper v. Amnesty International USA*, 586 U.S. 398, 408 (2013). The Court
21 discussed the elements of standing in its decision of April 30, 2020. *See Paher*, 2020 WL
22 2089813, *4–5.

23 As the Court previously held, *see Paher*, 2020 WL 2089813, *5, Plaintiffs do not
24 have standing to pursue allegations that their votes have been diluted in violation of
25 rights guaranteed by the First and the Fourteenth Amendments to the U.S. Constitution.
26 At this early point in the election cycle, no votes have even been counted. Until the votes
27 have been counted and the 2020 primary election has run its course, it is impossible to
28 know whether anyone's vote will be diluted. Plaintiffs speculate that the election-

integrity and anti-fraud measures in place for the 2020 primary election are not sufficiently robust to prevent voter fraud. Without evidence, Plaintiffs offer no reason why this Court should reconsider its prior order on the same legal issue in this case.

Ultimately, the search for the proper balance between voter access and election-integrity considerations is a matter for policy makers, not federal courts. Plaintiffs' amended complaint must be dismissed on the ground that the Court lacks subject matter jurisdiction over their claims.

### III. ARGUMENT

#### A. Plaintiffs' New Factual Allegations Do Not Satisfy the Standing Requirement

Plaintiffs continue to challenge the decisions that state and local elections officials have made in preparation for the June 9, 2020 primary election. At this point, their principal complaint concerns the decision by elections officials in Clark County to open two additional vote centers, mail ballots to inactive voters, and task certain elections officials with the responsibility of collecting paper ballots at locations other than the established vote centers. These decisions, they claim, will create "a flood of ballots" in Clark County, presumably fraudulent, that will lead to Plaintiffs' disenfranchisement. (ECF No.at 8–10). This argument is no less speculative than their previous argument that statewide vote-by-mail processes would cause their disenfranchisement.

Plaintiffs have simply modified their argument slightly, claiming now that the conditions in Clark County will favor urban voters to the detriment of rural voters. (ECF No. 64 at 2:12–15; ECF No. 65 at 22:1–9). Plaintiffs do not allege, however, that their ability to access the polls in Washoe County has been unconstitutionally impeded. To the contrary, they express an eagerness to vote, and no reservations about their ability to access the polls. (ECF No. 64 at 3–4). Insofar as their renewed motion and amended complaint are premised upon the alleged preferential treatment of Clark County voters, their grievance appears to be grounded in a desire to reduce voter turnout in Clark County rather than increase voter turnout in Washoe County. (ECF No. 65 at 22:1–9). They cite not a single federal case that supports their argument for adopting measures on

a statewide basis to equalize voter turnout between urban and rural areas in Nevada. Assuming that such equalization is desirable from a policy standpoint, Plaintiffs might perhaps explore the possibility of making the polls more accessible in the rural parts of the state.

Indeed, Plaintiffs' federal lawsuit is misguided and runs contrary to principles of federalism and separation of powers. The discretionary decisions of an executive branch official, including an election official, must typically be challenged in state court through a petition for judicial review, as provided by NRS § 233B.130, or by way of writ proceedings when judicial review in not available under the Nevada Administrative Procedures Act. *See* NRS Chapter 34; *Kay v. Nunez*, 122 Nev. 1100, 146 P.3d 801 (2006) ("Here, Kay understandably challenged the district court's order through both a petition for judicial review and a petition for a writ of mandamus. As the petition for judicial review was the proper mechanism . . . Kay's writ petition was inappropriate."). There are limited methods for challenging agency decisions, such as those at issue here, because "[t]he courts must be wary not to tread upon the prerogatives of other departments of government or to assume or utilize any undue powers. *Galloway v. Truesdell*, 83 Nev. 13, 31, 422 P.2d 237, 249 (1967). "If this is not done, the balance of powers will be disturbed and that cannot be tolerated for the strength of our system of government and the judiciary itself is based upon that theory." *Id*.

Proceedings to obtain a writ of mandamus would typically be the proper method for compelling the Secretary of State to issue an order to county clerks requiring that they establish no more than one vote center per county, mail ballots to active voters only, and refrain from using field registrars. NRS § 34.160 states that mandamus may be used "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." But "[m]andamus will not lie to control discretionary action, unless discretion is manifestly abused or is exercised arbitrarily or capriciously." *Round Hill General Improvement District v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). Moreover, "[a]n agency's interpretation of a statute that it is authorized to

execute is entitled to deference 'unless it conflicts with the constitution or other statutes, exceeds the agency's powers, or is otherwise arbitrary and capricious.'" *Nuleaf CLV Dispensary, LLC v. State, Department of Health and Human Servs.*, 134 Nev. 129, 133, 414 P.3d 305, 308 (2017). (*quoting Cable v. State ex rel. Emp'rs Ins. Co. of Nev.*, 122 Nev. 120, 126, 127 P.3d 528, 532 (2006)).

Here, NRS § 293.345(1) is silent as to whether ballots may be mailed to inactive voters as well as active voters. The Secretary has deferred to the discretion of Clark County election officials regarding the decision to mail ballots to inactive voters. This decision is entitled to deference because it was not arbitrary and capricious, nor did it exceed the powers granted to the Secretary of State pursuant to NRS § 293.247.

The same is true of the Secretary's decision to give county clerks the discretion to establish the appropriate number of polling locations and field registrars within their individual counties, based upon fiscal concerns, staffing and training challenges, and related logistical complications. As a matter of state law over which the Secretary ultimately has enforcement authority, the resource allocation decisions of local elections officials are not subject to review by the federal courts. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984) ("[T]he principles of federalism that underlie the Eleventh Amendment" prohibit a federal court from granting "relief against state officials on the basis of state law, whether prospective or retroactive.").

With respect to alleged violations of federal law, the decisions in question are entitled to judicial deference under the *Anderson-Burdick* balancing test, as discussed in the Court's order of April 30, 2020. *See Paher*, 2020 WL 2089813, *4–5. However, the Court need not repeat the *Anderson-Burdick* analysis from its prior decision because Plaintiffs have not alleged any new facts that would give them standing to pursue their claims under 42 U.S.C. § 1983 and the U.S. Constitution.[2] In fact, their new allegations

---

[2] Just in case the Court is inclined to revisit its findings on the questions of standing or relative burdens (*Anderson-Burdick*), the Secretary incorporates herein by reference the arguments set forth in her opposition to Plaintiffs' first motion for injunctive relief. (ECF No. 28).

-7-

contradict their previous argument as to why they have standing. Plaintiffs previously argued that vote-by-mail processes are vulnerable to manipulation and fraud, such that their votes would likely be diluted by illegal votes. (ECF No. 1, at 9:8–24; ECF No. 2 at 5–6). But now they object to the addition of in-person voting processes in Clark County despite their prior assertion that in-person processes are superior to vote-by-mail processes. (ECF No. 64 at 2:14–15, 9:11–12). In summary, Plaintiffs have not bolstered their argument that they have standing to pursue their claims in federal court. Their claims remain as speculative as ever.

B. Plaintiffs Fail to Connect the Notice Issue to Their Alleged Injury

In their second motion for injunctive relief, Plaintiffs are unusually critical of the Court's finding that the Washoe County registrar appears to have satisfied the notice requirement of NRS § 293.213(5), even though notice was provided after the March deadlines described at NRS § 293.205 and .206. (ECF. No 65 at 4–6). *See Paher*, 2020 WL 2089813, *10. However, Plaintiffs do not explain how the alleged notice deficiency contributed to their supposed injury, or why it is relevant given the Court's finding that the issue is rendered moot by Plaintiffs' lack of standing. *See id*. As the Court noted, NRS § 293.205 and .206 are concerned with adjustments to precinct boundaries. *Id*. at *9. The decision to implement the all-mail primary election did not result in any changes to precinct boundaries. Had there been changes to precinct boundaries, advance notice would have given voters and candidates alike the opportunity to object to potential gerrymanders well in advance of the primary election. But gerrymanders are not at issue in this case. Plaintiffs do not, indeed cannot explain how untimely notice of a non-existent adjustment to precinct boundaries contributed to their alleged injury. The notice issue is purely academic.

C. Plaintiffs' Delay in Seeking Further Consideration Warrants Denial of the Motion

"Laches is an equitable defense." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950 (9th Cir. 2001). It bars a plaintiff who, "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Id.* at 950-51 (quotations and citations omitted).

A defendant is entitled to relief under the doctrine where the defendant proves "both an unreasonable delay by the plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). Here, Plaintiffs slept on their purported rights.

Specifically, Plaintiffs did nothing between the April 30, 2020 order of this Court and the filing of their amended complaint and second amended complaint. Consistent with conducting a mostly mail election, all county clerks have already mailed voters their ballots during this intervening two weeks. As of the filing date of the second motion, only twenty-six days remain to the June 9 primary date. Plaintiffs' requested relief would cause prejudice to the Secretary's efforts to run the June 9 primary during the ongoing public health emergency. Laches prevents Plaintiffs from obtaining equitable relief following their unreasonable delay.

Further, the Supreme Court has cautioned courts not to judicially alter election systems on the eve of voting. *Purcell v. Gonzalez*, 541 U.S. 1, 5-6 (2006). This Court recognized the importance of adhering to the *Purcell* principle in its April 30, 2020 order. (*Id.* at 22:3-5; 23:14–16.) Now, after more than two weeks of additional delay caused by Plaintiffs, the caution proffered by *Purcell* weighs even more heavily against Plaintiffs' last-moment request for judicial interference with the Secretary's administration of the June primary.

## IV.   CONCLUSION

Plaintiffs attempt to advance a legislative agenda in the guise of a civil rights lawsuit. While there is certainly an appropriate balance between voter access concerns and election-integrity concerns, it is not the role of the federal judiciary to find that balance in the absence of a justiciable case or controversy. For this reason, and the other reasons discussed above, the Court should deny Plaintiffs' second motion for a preliminary injunction, and dismiss its claims pursuant to Fed. Rule Civ. Proc. 12(b)(1) for lack of subject matter jurisdiction.

Alternatively, because the belated second motion is untimely and lacking in relevant factual details, it does not warrant extraordinary relief during the conduct of a

mostly-mail election. Given the repetitive nature of Plaintiffs' motion, it should be denied without hearing.

DATED this 20th day of May 2020.

<div style="text-align:right">
AARON D. FORD<br>
Attorney General<br>
<br>
By: <u>*Gregory L. Zunino*</u><br>
GREGORY L. ZUNINO<br>
Deputy Solicitor General<br>
gzunino@ag.nv.gov<br>
CRAIG NEWBY<br>
Deputy Solicitor General<br>
cnewby@ag.nv.gov<br>
<br>
*Attorneys for Secretary of State*
</div>

<mark>Case 3:20-cv-00243-MMD-WGC   Document 78   Filed 05/20/20   Page 11 of 11</mark>


# CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 20th day of May, 2020, I filed and served with this Court's CM/ECF electronic filing system, **NEVADA SECRETARY OF STATE'S CONSOLIDATED MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PRLIMINARY INJUNCTION,** listed below will be served by this Court's electronic notification system:

David O'Mara, Esq.
David@omaralaw.net
*Attorneys for Plaintiffs*

James Bopp, Jr., Esq.
Richard E. Coleson, Esq.
Corrine L. Youngs, Esq.
Amanda L. Narog, Esq.
jboppjr@aol.com
rcoleson@bopplaww.com
cyoungs@bopplaw.com
anarog@bopplaw.com
*Pro Hac Vice Pending*
*Attorneys for Plaintiffs*

Henry J. Brewster, Esq.
Abha Khanna, Esq.
Courtney A. Elgart, Esq.
Jonathan P. Hawley, Esq.
Marc Erik Elias, Esq.
Daniel Bravo, Esq.
Bradley Scott Schrager, Esq.
hbrewster@perkinscoie.com
akhanna@perkinscoie.com
celgart@perkinscoie.com
jhawley@perkinscoie.com
melias@perkinscoie.com
dbravo@wrslawyers.com
bschrager@wrslawyers.com

Herbert Kaplan, Esq.
hkaplan@da.washoecounty.us
*Attorneys for Defendant Registrar of Voters*

_____
An employee of the Office
of the Attorney General