AARON D. FORD
  Attorney General
GREGORY L. ZUNINO, Bar No. 4805
  Deputy Solicitor General
CRAIG A. NEWBY, Bar No. 8591
  Deputy Solicitor General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1100
E-mail: glzunino@ag.nv.gov
E-mail: cnewby@ag.nv.gov

*Attorneys for Barbara Cegavske*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

WILLIAM STANLEY PAHER, *et al.*,

        Plaintiffs,

vs.

BARBARA CEGAVSKE, *et al.*,

        Defendants.

Case No.  3:20-cv-00243-MMD-WGC

**NEVADA SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS**

    Defendant Barbara Cegavske, Nevada Secretary of State (Secretary), by and through counsel, Aaron D. Ford, Attorney General, Gregory L. Zunino, Deputy Solicitor General, and Craig Newby, Deputy Solicitor General, hereby submits this reply in support of the Secretary's motion to dismiss Plaintiffs' amended complaint, ECF No. 77.  Dismissal of the amended complaint, ECF No. 64, is required by Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs have failed to allege facts demonstrating their standing to bring suit. Additionally, in light of previous findings by the Court, summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure.

    DATED this 8th day of July, 2020.

                      AARON D. FORD
                      Attorney General
                      By:    *Gregory L. Zunino*
                      GREGORY L. ZUNINO
                      Deputy Solicitor General
                      CRAIG A. NEWBY
                      Deputy Solicitor General
                      *Attorneys for Secretary of State*

# POINTS AND AUTHORITIES

## I.    INTRODUCTION

In their opposition to the Secretary's motion to dismiss, Plaintiffs attempt ineffectually to explain why each of their four claims for relief should survive dismissal on jurisdictional grounds. Plaintiffs have alleged violations of their voting rights as guaranteed by the First and the Fourteenth Amendments (Counts I and II), ECF No. 64 at 20-23, as well as rights guaranteed by Article I, Section 4, Clause 1 of the U.S. Constitution and the Equal Protection Clause (Counts III and IV), ECF No. 64 at 23-25. Each of Plaintiffs' claims is constructed upon the proposition, previously rejected by this Court, that the Secretary violated Nevada election statutes when she called for an all-mail primary election in order to mitigate the spread of the COVID-19 illness.  Each of Plaintiffs' claims is constructed upon the additional premise, also false, that a policy change authorized by a state's election statutes gives rise to a presumptive injury of "vote-dilution disenfranchisement" and/or "direct disenfranchisement".  ECF No. 87 at 2. Plaintiffs' claims fail because they have failed to allege facts sufficient to support a reasonable inference that they have suffered a legally cognizable injury.  In summary, they do not have standing to pursue claims for voting-related injuries because they have not suffered a concrete injury as required by Article III, § 2 of the U.S. Constitution.[1]

…

…

…

---

[1] In addition to the issue of standing, Plaintiffs address the issue of mootness. While it is true that a dispute similar to the one at issue in this case could repeat itself in advance of the November 3 general election, it is unlikely to encompass the same facts or legal issues. The Nevada Independent reported today that the Governor may seek to address vote-by-mail issues in a special session of the Nevada Legislature. *See* https://thenevadaindependent.com/article/what-to-expect-from-the-budget-cut-focused-special-session-of-the-nevada-legislature. Insofar as vote-by-mail may be an issue for the general election, Plaintiffs' allegations as currently framed are moot, and issues concerning possible legislative changes are not ripe for review.

## II.    ANALYSIS

### A.    Plaintiffs Fail to Grapple with the Court's Finding that the Secretary Followed Nevada Election Statutes.

As a preliminary matter, Plaintiffs suggest that their claim to standing is somehow illustrated by the distinction between "direct disenfranchisement" (Count I) and "vote-dilution disenfranchisement" (Count II), ECF No. 87 at 2, and the difference between an "inversion" and a "violation" of statute, ECF No. 87 at 10. Plaintiffs' syntactic gyrations are unpersuasive because Plaintiffs fail to explain their distinctions in terms that offer a useful guidepost for evaluating standing requirements. As Plaintiffs admit, ECF No. 87 at 8, principles of standing require a showing that their alleged injury is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Yet their analysis attempts to skirt this requirement by importing a *presumption* of "risk" that allegedly stems from the Secretary's "inversion" of Nevada's election laws. ECF No. 87 at 16. It is not clear whether the alleged "inversion" of election laws is, in Plaintiffs' opinion, synonymous with a "violation" of election statutes. But as a practical matter, Plaintiffs maintain that the Secretary neglected to follow Nevada election statutes. Regardless of how the alleged transgression is labeled, it is immaterial whether the alleged transgression is cast as a"violation" or an "inversion" of election statutes. Of course it is neither. The Secretary merely implemented a policy change based upon authority delegated to her by legislative enactment.

In the final analysis, Plaintiffs' explanation of each claim leads them to conclude that neither claim requires proof of an injury, simply a showing that vote-by-mail processes invert Nevada election statutes. ECF No. 87 at 10 ("So the failure to follow the Legislature's prescribed Manner proves Voters' constitutional claims of a substantial risk of direct and vote-dilution disenfranchisement."); ECF No. 87 at 13-14 ("[B]y inverting the Legislature's prescribed Manner, Defendants maximized what the Legislature minimized as a matter of law. . . . So there is nothing speculative or conjectural about the claim that

mail-in ballots pose vote-fraud risk, or about the fact that legislatures balance the amount of such risk by limiting or expanding mail-in votes based on the perceived risk in a particular jurisdiction, or that with a sudden flood of mail-in ballots election workers are less able to screen for fraudulent ballots due to the unplanned-for onslaught."). By Plaintiffs' logic, their injury is to be found not in inferences drawn from factual allegations, but in the mere existence of a policy change necessitated by the current pandemic.

With respect to Counts I and II, Plaintiffs ultimately fall back on the position that the policy change gives rise to a presumptive injury. According to Plaintiffs, an injury is presumed because of the "risk" of voter fraud that is inherent in vote-by-mail processes. ECF No. 87 at 16. Plaintiffs cite no authority for the proposition that a lawful policy change may give rise to a presumptive injury, yet this is the essence of their argument. And to be fair, they argue not that any policy change will suffice to establish an injury, but rather a policy change that implicates statutory provisions designed to deter voter fraud. ECF No. 87 at 16 ("That harm is traceable to Defendants—because they enacted the Plans that invert the Legislature's balancing to minimize mail-in-ballot voter fraud and create the sudden flood of ballots that makes it more difficult for election workers to screen out fraudulent ballots—and it is redressable by the requested relief.").

Plaintiffs' argument fails, however, because this Court has twice concluded that the Secretary followed Nevada's election statutes as a matter of law. *Paher v. Cegavske* (*Paher* 1), ___F.Supp.3d___, 2020 WL 2089813, *3 (D. Nev. 2020); *Paher v. Cegavske*, ___F. Supp.3d___, 2020 WL 2748301, *7 (D. Nev. 2020). In *Paher* 1, the Court concluded:

> Nevada's governing statutes provide for mailing precincts—specifically NRS §§ 293.343 through 293.355. Through these provisions, the Nevada Legislature has given the Secretary and county clerks authority to mail ballots to registered voters rather than requiring voters to request those ballots through the absent ballot process. . . . Mailing precincts, as opposed to absent ballot precincts, have been used in Nevada—albeit on a small scale—for many years.

> *Id.*

And since there has been no inversion of Nevada election statutes, there can be no presumption that such an alleged transgression creates a substantial risk of voter fraud. Because the alleged injury is effectively premised upon a non-existent omission to adhere to Nevada statutes, the alleged injury supplies no basis for standing. Nor does the injury itself satisfy standing requirements. There are no disputed material facts in this case, nor are there any factual allegations to support Plaintiffs' standing to bring suit. For these reasons, Plaintiffs' claims may be disposed of through summary judgment, pursuant to Fed. Rule Civ. Proc. 56, or by dismissal pursuant to Fed. Rule Civ. Proc. 12(b)(1).[2]

**B.    Plaintiffs Fail to Identify a Risk Inherent in Vote-by-Mail Processes.**

In addition to their claims for "vote-dilution disenfranchisement" and "direct disenfranchisement", Plaintiffs note that they have brought claims under Article I, section 4, clause 1 of the U.S. Constitution ("Count III), and the Equal Protection Clause of the Fourteenth Amendment (Count IV). ECF No. 87 at 16. Counts III and IV appear to be based upon the same logic that underpins Counts I and II. As a practical matter, all claims are constructed upon the false premise that the Secretary violated Nevada's election statutes by calling for an all-mail primary election. Even if this were true, Plaintiffs' claim to standing fails because Plaintiffs have no legal basis upon which to assert a presumptive injury stemming from a risk of fraud. Every election carries a risk of fraud. If this risk in this case may be characterized as an injury, then the standing doctrine will have ceased "to foreclose[] the conversion of courts of the United States into judicial versions of college debating forums." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473 (1982).

…

---

[2] The only good-faith issue in this case is a legal issue concerning the timing of the public notice that was issued in regards to the creation of mailing precincts. *See Paher* 1, 2020 WL 2089813 at *10 ("The argument is therefore a moot point–though standing alone it would not likely amount to a constitutional violation."). As discussed in the Secretary's motion to dismiss, ECF No. 77 at 8, this timing issue has no relevance to the alleged increased risk of voter fraud.

Moreover, Nevada's election statutes include a number of anti-fraud provisions, none of which were compromised by the Secretary's decision to call from an all-mail primary election. For example, NRS §§ 293.325, .330, .333 and .353 set forth detailed procedures for verifying signatures and securing absentee and mailing ballots. Plaintiffs do not explain why these procedures are inadequate to deter voter fraud. Nor do they explain why NRS § 293.2725(2) is inadequate to deter registration fraud by first time voters. *See e.g.*, ECF No. 21 (Declaration of Wayne Thorley). Plaintiffs merely speculate that vote-by-mail processes can be hijacked by fraudsters more easily than in-person processes. Although they couch their own speculative assertions as substantial risk, they posit no objective standards for evaluating the relative risks of vote-by-mail and in-person voting. To the contrary, they rely on tropes about "scattered" and "free-floating ballots". ECF No. 87 at 16. This does not satisfy Article III's standing requirements.

## C.     Plaintiffs Claim to Standing in the Election Context is Comparable to a Claim of Taxpayer Standing.

Plaintiffs' abstract risk of being disenfranchised by mail-in voting is comparable to the abstract risk that a taxpayer faces when the government deviates from a practice or process that the taxpayer deems to be more financially prudent than the practice or process that it implemented. In theory, the government's deviation from that practice or process can put a collective financial strain on taxpayers generally, but no single taxpayer can reasonably claim to have suffered a financial injury. Here, the Secretary's decision to approve vote-by-mail processes was ultimately a policy decision that was within the collective authority of state and local election officials to make. Although people can debate the policy merits of that decision, no single person can reasonably claim to have been injured by the decision.

For example, in *Valley Forge*, supra, the plaintiffs alleged a deprivation of the fair and constitutional use of their tax dollar resulting from the federal government's failure …

to obtain fair market value in connection with a transfer of real property to a religious college.   454 U.S. at 468-70. The plaintiffs argued that the transfer violated the Establishment Clause, *id.*, but the Court found that the plaintiffs lacked standing.  As the Court noted, "[t]he proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries." 454 U.S. at 485 (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 202, 227 (1974)).  "It is one thing for a court to hear an individual's complaint that certain specific government action will cause that person private competitive injury . . .  but it is another matter to allow a citizen to call on the courts to resolve abstract questions." *Schlesinger*, 418 U.S. at 223 (internal citations omitted).

As in *Schlesinger*, Plaintiffs' argument here "is nothing more than a matter of speculation whether the claimed nonobservance of that Clause deprives citizens of the faithful discharge of the legislative duties of [state legislators]." 418 U.S. at 217.  While this is the crux of Plaintiffs' claim for an alleged violation of Article I, Section 4, Clause 1 of the U.S. Constitution, it is a thread that runs through all four of their claims.  In summary, Plaintiffs' entire case is built upon the theory that Plaintiffs were deprived of the Nevada Legislature's policy wisdom when the Secretary called for an all-mail primary election in lieu of in-person voting.  The idea that vote-by-mail processes may dilute or otherwise impact an individual's vote is as abstract as the idea that a below-market transfer of real estate may impact an individual taxpayer's financial condition.  It cannot supply the concrete and particularized injury necessary to maintain a lawsuit in federal court.

## III.   CONCLUSION

Based upon this Court's previous finding that the Secretary followed Nevada election statutes, acting within her authority to establish mailing precincts in consultation with local election officials, the Secretary is entitled to judgment as a matter of law. Alternatively, this case should be dismissed on jurisdictional grounds because Plaintiffs have failed to allege facts from which a reasonable person might

infer that Plaintiffs suffered an injury. Plaintiffs' efforts to have the Court resolve a policy dispute over the merits of vote-by-mail versus in-person voting should be rejected.

DATED this 8th day of July, 2020.

AARON D. FORD
Attorney General

By:    *Gregory L. Zunino*
GREGORY L. ZUNINO
Deputy Solicitor General
gzunino@ag.nv.gov
CRAIG A. NEWBY
Deputy Solicitor General
cnewby@ag.nv.gov

*Attorneys for Secretary of State*

1

**CERTIFICATE OF SERVICE**

2          I certify that I am an employee of the Office of the Attorney General, State of

3    Nevada, and that on this 8th day of July, 2020, I filed and served with this Court's

4    CM/ECF electronic filing system, the **NEVADA SECRETARY OF STATE'S REPLY IN**

5    **SUPPORT OF MOTION TO DISMISS,** served listed below:

6    David O'Mara, Esq.
     David@omaralaw.net
7    *Attorneys for Plaintiffs*

8    James Bopp, Jr., Esq.
     Richard E. Coleson, Esq.
9    Corrine L. Youngs, Esq.
     Amanda L. Narog, Esq.
10   jboppjr@aol.com
     rcoleson@bopplaww.com
11   cyoungs@bopplaw.com
     anarog@bopplaw.com
12   *Pro Hac Vice Pending*
     *Attorneys for Plaintiffs*

13

     Henry J. Brewster, Esq.
14   Abha Khanna, Esq.
     Courtney A. Elgart, Esq.
15   Jonathan P. Hawley, Esq.
     Marc Erik Elias, Esq.
16   Daniel Bravo, Esq.
     Bradley Scott Schrager, Esq.
17   hbrewster@perkinscoie.com
     akhanna@perkinscoie.com
18   celgart@perkinscoie.com
     jhawley@perkinscoie.com
19   melias@perkinscoie.com
     dbravo@wrslawyers.com
20   bschrager@wrslawyers.com

21   Herbert Kaplan, Esq.
     hkaplan@da.washoecounty.us
22   *Attorneys for Defendant Registrar of Voters*

23

24

25                                  _____
                                    An employee of the Office
26                                  of the Attorney General

27

28