MARC E. ELIAS, ESQ. (D.C. Bar No. 442007)*
HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410)*
COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065)*
**PERKINS COIE LLP**
700 Thirteenth St. NW, Suite 800
Washington, D.C. 20005-3960
Tel: (202) 654-6200
melias@perkinscoie.com
hbrewster@perkinscoie.com
celgart@perkinscoie.com

ABHA KHANNA, ESQ. (Wash. Bar No. 42612)*
JONATHAN P. HAWLEY, ESQ. (Cal. Bar No. 319464)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com
jhawley@perkinscoie.com

BRADLEY SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Tel: (702) 341-5200
bschrager@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Intervenor-Defendants Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, DCCC, Priorities USA, and John Solomon*

*Admitted pro hac vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| STANLEY WILLIAM PAHER, TERRESA MONROE-HAMILTON, GARRY HAMILTON, DARYL BYRON DESHAW, JEFF ECKER, GARY GLADWILL, LINDA BARNETT, and NEVADA RIGHT TO LIFE,<br><br>Plaintiffs, | Case No.:   3:20-cv-00243-MMD-WGC<br><br>**INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

vs.

BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, DEANNA SPIKULA, in her official capacity as Registrar of Voters for Washoe County, and JOSEPH P. GLORIA, in his official capacity as Registrar of Voters for Clark County,

Defendants,

and

NEVADA STATE DEMOCRATIC PARTY, DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE, DCCC, PRIORITIES USA, and JOHN SOLOMON,

Intervenor-Defendants.

## INTRODUCTION

This case should be over. Having twice failed to establish standing, let alone plead viable claims, Plaintiffs now attempt to salvage their case—which challenges plans for an election *that has already occurred*—by arguing that it qualifies for an exception to the mootness doctrine. It does not. The June 9, 2020 primary election (the "June Primary") that formed the foundation of this action is now behind us (and, if anything, demonstrated the wisdom of Defendants' decision to conduct a primarily vote by mail election), and Plaintiffs' dilatory tactics are alone responsible for any delayed review. Plaintiffs' amended complaint, *see* ECF No. 64 ("Am. Compl."), should be dismissed with prejudice for this reason alone.

Plaintiffs' case was irreparably flawed even before it was overtaken by events. As this Court has already held—twice—Plaintiffs lack standing to bring their wholly speculative, generalized claims. And despite two attempts to plead plausible causes of action, Plaintiffs have still failed to allege that *anyone*, let alone they themselves, would have been disenfranchised as a result of Defendants' efforts to ensure that all eligible Nevadans could safely vote in the June Primary. For the reasons discussed in their motion, *see* ECF No. 41 ("Mot."), and below, Intervenor-Defendants respectfully urge this Court to dismiss Plaintiffs' amended complaint with prejudice.

2

**ARGUMENT**

This Court has twice found that Plaintiffs lack standing to bring their claims, conclusions it reached even before the June Primary passed. *See* ECF Nos. 57 ("First Order"), 83 ("Second Order"). Nothing in Plaintiffs' opposition, *see* ECF No. 87 ("Opp."), remedies this or the other fundamental flaws in their amended complaint.[1]

## I. Plaintiffs' claims are moot.

"Courts must look at changing circumstances that have arisen after the complaint is filed. '[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Boulder Sign Co. v. City of Boulder City*, 382 F. Supp. 2d 1190, 1195–96 (D. Nev. 2005) (alteration in original) (citation omitted) (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001)). "[A]s a general rule, if a law is repealed or expires, the case becomes moot." *Id.* at 1196.

Plaintiffs' amended complaint challenges, wholly and exclusively, Defendants' plans for the June Primary. *See, e.g.*, Am. Compl. ¶¶ 1–2 (noting Defendants' intent to conduct the June Primary as an "all-mail election"); *id.* ¶ 4 (alleging Defendants' plans for the June Primary violate the U.S. Constitution). At no point in the amended complaint do Plaintiffs challenge anything *other* than Defendants' plans for the June Primary, and their prayer for relief consists entirely of requests tied to that election. *See id.* at 25–26. The problem here is apparent: it is now

---

[1] As discussed in their motion, *see* Mot. at 5 n.3, Intervenor-Defendants maintain that the Eleventh Amendment bars Plaintiffs' suit because "[a] federal court may not enjoin a state official from violating purely state law." *ARC of Cal. v. Douglas*, No. 2:11-cv-02545-MCE-CKD, 2018 WL 1535511, at *6 (E.D. Cal. Mar. 29, 2018); *accord Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013); *Six v. Newsom*, No. 8:20-cv-00877-JLS-DFM, 2020 WL 2896543, at *8 (C.D. Cal. May 22, 2020). Although Plaintiffs suggest that Intervenor-Defendants' characterization of their case—"that [Plaintiffs] merely seek to enforce state law"—is "erroneous," Opp. at 2, this argument is belied not only by the amended complaint, which is premised wholly on Defendants' alleged violations of state law, *see, e.g.*, Am. Compl. at 25–26, but also Plaintiff's opposition itself, which repeatedly emphasizes that Defendants "fail[ed] to follow the Legislature's prescribed [m]anner" of conducting elections, Opp. at 10—in other words, that *Nevada officials* did not comply with *Nevada law*. The Eleventh Amendment bars this Court from entertaining such a suit. *See Cox v. Randazza*, No. 2:13-cv-00297-MMD-VCF, 2013 WL 6408736, at *4 (D. Nev. Nov. 27, 2013).

July. The June Primary has already occurred, and the plans that Plaintiffs challenge in their amended complaint have no further force or effect, since Defendants made clear that their plans for the June Primary applied *only* to that single, now-bygone election. *See, e.g.*, *id.*, Exs. C (approving Washoe County's "request to designate all precincts in your county as mailing precincts *for the 2020 primary election*" (emphasis added)), D ("I have submitted a request to the Nevada Secretary of State to designate all of Washoe County's precincts as mailing precincts for the June 9, 2020 Primary Election *ONLY*."), F ("*This announcement applies only to the June 9, 2020 Primary Election.*"), J ( "This announcement [from Secretary of State's office] applies *only to the June 9, 2020 primary election.*" (emphasis added)). Accordingly, their claims are now moot, and dismissal is required. *See Boulder Sign*, 382 F. Supp. 2d at 1196 ("Mootness is a jurisdictional issue, and courts have no jurisdiction to hear a case that is moot.").

Recognizing this fatal jurisdictional bar, Plaintiffs rely on an inapplicable exception to the mootness doctrine, suggesting that even though their amended complaint exclusively concerned the June Primary, "the November general elections looms and this case is not moot because it readily fits the mootness exception for cases 'capable of repetition, yet evading review.'" Opp. at 2–3 (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). Contrary to Plaintiffs' opposition, they have failed to satisfy this exception's evading-review prong. Although "[c]hallenges to election laws are one of the quintessential categories of cases which usually fit" the evading-review prong "because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election," *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005), any failure of review in this case is wholly Plaintiffs' responsibility. They suggest that "the State and Clark County Plans were announced in March and April 2020, the initial complaint was filed April 21, and the June 9 Primary occurred without the opportunity for full review by this Court, let alone by an appeals court," Opp. at 4—a chronology that is both misleading and disingenuous.

To begin, despite what they claim was an unfairly truncated period for review, Plaintiffs managed to file *two* motions for preliminary injunction before the June Primary, both of which were duly considered and denied by this Court. Following denial of their first motion, Plaintiffs

4

could have immediately appealed the issue to the Ninth Circuit, but chose not to—a decision that this Court itself acknowledged with evident frustration. *See* Second Order at 1 ("Plaintiffs' decision to bring the [amended complaint] at this late hour, as opposed to seeking expedited appellate review of the Court's order . . . regarding their original motion for preliminary injunction . . . , is confounding and contrary to their position that a quick disposition of this matter is needed due to the impending June 9, 2020 Nevada primary election."). Instead of seeking an appeal, Plaintiffs filed an amended complaint and second motion for preliminary injunction that "glaringly repackage[d] old arguments to achieve a different disposition without necessary justification." *Id.*; *see also id.* at 9 ("[I]t is inexplicable that Plaintiffs would delay bringing the [amended complaint] and Second [Preliminary Injunction] Motion for another nine days in light of their claimed urgency."). Finally, Plaintiffs ignore that they themselves requested a *one-month extension* to file their opposition to the pending motions to dismiss, during which time the June Primary came and went. *See* ECF No. 81.

Contrary to Plaintiffs' intimations, the actions challenged in this suit were not "too short in duration to be fully litigated before cessation or expiration." *Gayler v. High Desert State Prison*, No. 2:14-cv-00769-APG-CWF, 2018 WL 1627805, at *1 (D. Nev. Apr. 4, 2018) (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002)), *aff'd*, 765 F. App'x 356 (9th Cir. 2019). Instead, it was Plaintiffs themselves, who "surely have not acted with the alacrity that they claim this case necessitates," Second Order at 9—and *not* anything unique to their claims or this case—that foreclosed the review that Plaintiffs now claim was denied to them. The Ninth Circuit has made clear that

> a party may not profit from the 'capable of repetition, yet evading review' exception to mootness, where through his own failure . . . he has prevented an appellate court from reviewing the trial court's decision. The exception was designed to apply to situations where the type of injury involved inherently precludes judicial review, not to situations where the failure of parties to take certain actions has precluded review as a practical matter.

*In re Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987). This case clearly constitutes the latter situation. Accordingly, because Plaintiffs have not satisfied both prongs of the "capable of repetition, yet evading review" exception, their claims are moot and should be dismissed. *See*

*Williams v. Alioto*, 549 F.2d 136, 145 (9th Cir. 1977) ("Both prongs of the repetition/evasion standard must be met in order to avoid mootness."); *Boulder Sign*, 382 F. Supp. 2d at 1196–99 (dismissing claim for injunctive relief where mootness exception did not apply).[2]

## II. Plaintiffs lack standing.

For the reasons discussed at length in Intervenor-Defendants' motion, Plaintiffs lack standing to bring at least three of their causes of action. *See* Mot. at 6–7 (Count I), 9–10 (Count II), 11–12 (Count III). This Court has twice ruled that Plaintiffs lack standing. *See* First Order at 8–10; Second Order at 6–8 ("Plaintiffs have failed to overcome the Court's original finding that they lack standing, thereby precluding them from seeking to enjoin the Plan—at least via the first three claims."). Plaintiffs provide no arguments to change this result.[3]

### A.    Count I

Intervenor-Defendants maintain that Plaintiffs lack Article III standing to bring Count I

---

[2] Moreover, as to the capable-of-repetition prong, the election cases on which Plaintiffs rely concerned *statutes* that would necessarily be applied in all successive elections—not, as here, limited, ad hoc plans for only a single election. *See, e.g.*, *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) ("[T]his case is not moot, since the issues properly presented . . . will persist as *the California statutes* are applied in future elections." (emphasis added)); *Lawrence*, 430 F.3d at 369–72 (considering mootness challenge to Ohio election statute); *Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir. 1983) ("If such cases were rendered moot by the occurrence of an election, many constitutionally suspect *election laws*—including the one under consideration here—could never reach appellate review." (emphasis added)).

[3] Incidentally, the same considerations that compel a finding of mootness also serve to further weaken Plaintiffs' already-unsteady standing arguments. *See Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–91 (2000) (exploring interplay of standing and mootness inquiries). Standing requires (1) an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). But none of the alleged injuries claimed by Plaintiffs in their amended complaint are imminent—the June Primary has passed, and the plans they challenge and seek to enjoin will have no further effect. And the only remedies they seek are declaratory and injunctive relief to prevent implementation of the plans ex ante. *See* Am. Compl. at 25–26. Accordingly, their claimed injuries cannot be redressed by a favorable decision from this Court; because the June Primary is over, any relief is a nullity, and would have no practical effect on Plaintiffs. *Cf. Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 990 (9th Cir. 1999) ("A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." (quoting *United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987))).

because they have failed to connect Defendants' decision to proactively mail ballots to voters in purported violation of Nevada law with their alleged injury of disenfranchisement. *See* Mot. at 6–7; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (noting that "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court" (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976))). In response, Plaintiffs simply parrot the allegations in their amended complaint and repeatedly state that Defendants' alleged contravention of the Nevada Legislature's intent "proves Voters' constitutional claims of a substantial risk of direct and vote-dilution disenfranchisement" "*as a matter of law*." Opp. at 10. But crucially, they still fail to explain how Defendants' expansion of vote by mail will cause any Plaintiff to *actually be disenfranchised*. They cite only to the section of the amended complaint titled "Mail Balloting Issues," which, they suggest, "described at length the disenfranchisement problems caused with the sudden flood of mail-in ballots in recent elections where a similar sudden change to mail-in ballots was imposed." *Id.*; *see also* Am. Compl. ¶¶ 82–96. But as Intervenor-Defendants previously noted, Plaintiffs fail to explain how the relief they seek— requiring imposition of Nevada's absent ballot application scheme, which would result in *more* mail traffic, not less—would remedy the alleged disenfranchisement. *See* Mot. at 6–7. Simply repeating the allegations in the amended complaint does not transform Plaintiffs' wholly speculative—and frequently illogical—standing claims into qualifying injuries in fact for Article III purposes. Accordingly, as this Court has concluded, "Plaintiffs again fail to more than speculatively connect the specific conduct they challenge—that mail-in ballots are sent to Nevada voters without request for an absentee ballot—and the claimed injury—direct voter disenfranchisement or disenfranchisement through vote dilution (in sum, disenfranchisement)." Second Order at 8.

**B.     Count II**

Plaintiffs' standing as to Count II fares no better. As Intervenor-Defendants have noted, Count II continues to allege a vote-dilution claim that is both speculative and a generalized

7

grievance shared by *all* Nevada voters. *See* Mot. at 9–10; *see also Lujan*, 504 U.S. at 573–76 ("[A]n injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable" and "cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984))). This Court has twice ruled as much. *See* First Order at 9 ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter. Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury."); Second Order at 7 ("As with the original complaint, the claims in the [amended complaint] are materially grounded on ostensible election fraud that may be conceivably raised *by any Nevada voter*. Thus, Plaintiffs' claims amount to general grievances that cannot support a finding of particularized injury as to Plaintiffs."). In their opposition, Plaintiffs argue that their "grievance is particularized, not generalized." Opp. at 12. But as they themselves acknowledge, "[t]he proper inquiry is whether the plaintiffs sue solely as *citizens* who insist that the government follow the law." *Id.* (quoting *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 8 (Tex. 2011)). That is all that Plaintiffs here are doing, as evidenced by their prayer for relief, which seeks only declaratory and injunctive relief requiring that Defendants dispense with their plans for the June Primary and follow Nevada law. Accordingly, Plaintiffs do *not* "assert personal harms from the violation of their own fundamental right," *id.*, but instead lodge a generalized grievance and seek an order that Defendants follow state law. And even if Plaintiffs' standing theory for Count II were not impermissibly generalized, it would still remain hopelessly conjectural. *See* Mot. at 10; Second Order at 8.

### C. Count III

Lastly, Count III—alleging that Defendants violated the Elections Clause—is, like Count II, a generalized grievance that cannot confer Article III standing. *See* Mot. at 12; First Order at 8–9. In response, Plaintiffs argue that *Bush v. Gore*, 531 U.S. 98 (2000), impliedly recognized a private cause of action under the Elections Clause. *See* Opp. at 16–17. But whether or not a private right of action exists has little bearing on whether Plaintiffs have pleaded a particularized

injury in fact. Because they have not, they lack standing to bring Count III. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007) ("The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.").

### III.  Plaintiffs have not pleaded viable claims for relief.

For the reasons discussed at greater length in Intervenor-Defendants' motion, Plaintiffs have failed to plead viable causes of action.

As to Count I, Plaintiffs maintain that they have pleaded a cognizable theory of disenfranchisement. But as discussed above, the amended complaint fails to actually demonstrate *how* Plaintiffs would be disenfranchised due to an expansion of mail voting. *See* Second Order at 13 (determining that Plaintiffs were unlikely to succeed on the merits of Count I because their "claims of voter disenfranchisement are speculative at best"). Absent a coherent theory of disenfranchisement, Count I can serve only as a private vehicle to enforce Nevada's election laws—which is, at bottom, what Plaintiffs seek to do. But the U.S. Constitution does not provide such a cause of action, and so Count I must be dismissed with prejudice. *See* Mot. at 7–8; *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020) (affirming dismissal with prejudice where claim was "premised on the violation of an asserted right that, as a matter of law, is not protected by" the U.S. Constitution).[4]

Count II is premised on the erroneous notion that federal law recognizes a cause of action under the theory that illegal voting will cause vote dilution. *See* Mot. at 10–11. Plaintiffs' only bases for their vote-dilution claim are (1) that "a sudden flood of mail-in votes [will] reduce the possibility that election workers will be able to screen out illegal votes," and (2) that Defendants "*inverted* the Legislature's voting system." Opp. at 20. But neither theory suggests that

---

[4] To the extent that Count I or any other cause of action relies on a determination that Defendants violated Nevada law, it must also be dismissed, because as this Court has concluded, Defendants' plans for the June Primary were "consistent with Nevada law and within the authority conferred upon the Secretary." Second Order at 13.

9

1  Defendants' plan to mail ballots values one group of voters over another, or that Plaintiffs belong
2  to a group of voters that will be disparately impacted by a supposed surge in illegal voting. *Cf.*
3  *Reynolds v. Sims*, 377 U.S. 533, 568 (1964) ("Simply stated, an individual's right to vote for
4  state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted
5  when compared with votes of citizens living on other parts of the State."). Nor have Plaintiffs
6  cited any authority for employing a vote-dilution claim as a blunt tool to combat voter fraud and
7  disenfranchise other voters—a gambit that courts have understandably rejected. *See, e.g.*, *Minn.*
8  *Voters All. v. Ritchie*, 720 F.3d 1029, 1031–32 (8th Cir. 2013) (affirming Rule 12(b)(6) dismissal
9  of vote dilution claim); *see also One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 903 (W.D.
10  Wis. 2016) ("[A] preoccupation with mostly phantom election fraud leads to real incidents of
11  disenfranchisement, which undermine rather than enhance confidence in elections."), *aff'd in*
12  *part, rev'd in part on other grounds sub nom. Luft v. Evers*, Nos. 16-3003, 16-3052, 16-3083, 16-
13  3091, 2020 WL 3496860 (7th Cir. June 29, 2020). Therefore, Plaintiffs have failed to plead a
14  cognizable vote-dilution claim, and Count II should be dismissed. *See Newlands Asset Holding*
15  *Tr. v. SFR Invs. Pool 1, LLC*, No. 3:17-cv-00370-LRH-WGC, 2017 WL 5559956, at *2 (D. Nev.
16  Nov. 17, 2017) (dismissal appropriate where claim lacks "a cognizable legal theory" (quoting
17  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990))).

18  Count III—a claim based on the U.S. Constitution's Elections Clause, U.S. Const., art. I,
19  § 4, cl. 1—fails for several reasons. First, contrary to Plaintiffs' continued protestations, *see* Opp.
20  at 21–22, this Court already recognized that the claim is not viable because Defendants *did*, in
21  fact, act consistently with Nevada law. *See* First Order at 14–20; Second Order at 12. Second, the
22  claim fails for want of a cognizable cause of action. *See* Mot. at 11–12. Even if *Bush*'s
23  purportedly implied recognition of a private right of action under the *Electors* Clause extends to
24  the *Elections* Clause, *see* Opp. at 16–17, Plaintiffs have not articulated a viable claim. Courts
25  have entertained claims under the Elections Clause where plaintiffs have argued that state law
26  exceeded the power delegated to the States by the *U.S.* Constitution. *See, e.g.*, *Ariz. State*
27  *Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015); *Cook v. Gralike*,
28  531 U.S. 510, 525–26 (2001). In these cases, the courts' task was to measure a state law against a

10

*federal* mandate. Here, by contrast, Plaintiffs argue that Defendants' plans violated *Nevada* law. Because Plaintiffs fail to cite any authority recognizing such a cause of action under the Elections Clause, Count III should be dismissed. *See Newlands Asset Holding Tr.*, 2017 WL 5559956, at *2.

Lastly, Count IV is foreclosed by *Short v. Brown*, 893 F.3d 671 (9th Cir. 2018), and unsupported by *Bush*. Plaintiffs' attempts to distinguish *Short* are unpersuasive and rely on a misreading of the Ninth Circuit's opinion.[5] This Court has already concluded that *Short* is "applicable to [this] claim" and fatally undermines it. Second Order at 13–16. And for the reasons explained in Intervenor-Defendants' motion, Plaintiffs misinterpret *Bush* and its effect. *See* Mot. at 13. Count IV should therefore be dismissed.

## IV.    Dismissal should be with prejudice.

Plaintiffs do not argue that any dismissal should be without prejudice, and for the reasons articulated in their motion, Intervenor-Defendants' maintain that dismissal with prejudice is appropriate. *See* Mot. at 14–15. This is especially true given that Plaintiffs' claims are moot, so any amendment would be futile.

///

///

///

---

[5] For example, Plaintiffs suggest that "the Ninth Circuit said [*Short*] is 'nothing like' the line of cases that Plaintiffs cited from *Bush* that found an equal-protection violation where some counties are given greater voting strength." Opp. at 24 (quoting *Short*, 893 F.3d at 678). What the Ninth Circuit actually explained is that the statute challenged in *Short* was "nothing like" laws that "allocate representation differently among voters," 893 F.3d at 678, which is completely irrelevant to Plaintiffs' claim here. Moreover, the Ninth Circuit went on to explain that even if "differential treatment of [] counties reveals a *preference* for some counties over others," strict scrutiny only applies if (1) the preferential treatment implicates a suspect classification, or (2) "a state [] burden[s] a fundamental right for some citizens but not for others." *Id.* at 678–79. That is precisely the case here—Plaintiffs have alleged preferential treatment for Clark County voters *without* identifying either a suspect class or a burden on their own ability to vote. *See* Opp. at 23 ("Plaintiffs don't argue that the Clark County Plan makes it harder for them to vote."). Thus, they have not pleaded a viable constitutional claim. *See* Second Order at 16 ("Plaintiffs' fourth claim of an Equal Protection violation falls flat.").

## CONCLUSION

For the foregoing reasons, this Court should grant Intervenor-Defendants' motion to dismiss Plaintiffs' amended complaint with prejudice.

DATED this 9th day of July, 2020.

        **WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**

By: */s/ Bradley S. Schrager*
    Bradley S. Schrager, Esq., SBN 10217
    Daniel Bravo, Esq., SBN 13078
    3556 E. Russell Road, Second Floor
    Las Vegas, Nevada 89120

    Marc E. Elias, Esq.*
    Henry J. Brewster, Esq.*
    Courtney A. Elgart, Esq.*
    **PERKINS COIE LLP**
    700 Thirteenth St. NW, Suite 800
    Washington, D.C. 20005-3960

    Abha Khanna, Esq.*
    Jonathan P. Hawley, Esq.*
    **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099

    *Attorneys for Proposed Intervenor–Defendants Nevada State Democratic Party, DNC Services Corporation/Democratic National Committee, DCCC, Priorities USA, and John Solomon*

    *Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th of July, 2020 a true and correct copy of **INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP