UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STANLEY WILLIAM PAHER, *et al.*, | Case No. 3:20-cv-00243-MMD-WGC |
| Plaintiffs, | ORDER |
| v. | |
| BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiff brought this case to challenge Nevada's Secretary of State Barbara Cegavske's ("Secretary") plan, in partnership with Nevada's 17 county election officials, to implement an all-mail-in election for the June 9, 2020 Nevada primary ("Primary") ("Plan"). (*See* ECF Nos. 1, 64.) The Plan was expressly adopted to protect the public and safeguard the voting franchise during the novel coronavirus disease 2019 ("COVID-19") pandemic. (*See, e.g.*, ECF No. 57 at 1–3, 13.) The Primary came and went. Considering the assertions and facts specific to this case, the Court finds that it can no longer exercise its limited jurisdiction over the case and will accordingly dismiss it as moot. The two pending motions to dismiss (ECF Nos. 71, 77) are likewise denied as moot.

**II.   BACKGROUND**

The facts of this case may be found in the Court's orders ruling on Plaintiffs' first and second motion for preliminary injunction. (ECF No. 57 ("First Order); ECF No. 83 ("Second Order").) These facts include a detailed recitation of the specific Plaintiffs, Defendants, and Intervenor-Defendants. (*E.g.*, ECF No. 83 at 2–3.) The Court incorporates those background facts by reference and do no repeat them here. The Court will herein note only facts that are instantly relevant.

On April 21, 2020, Plaintiffs filed this lawsuit, contending that Nevada election officials do not have authority to implement the Plan pursuant to which election officials would mail ballots to *active* registered voters without voters first requesting such ballots. (*See* ECF No. 1 ("Verified Complaint").) In the Verified Complaint, Plaintiffs asserted a total of five claims, in gist contending that the largely all-mail primary prescribed by the Plan circumvents various state statutory safeguards designed to protect against voter fraud, and that their votes will as a result be diluted by illegal votes. (*Id.*) They additionally, *inter alia*, alleged that the Plan is not the Nevada Legislature's chosen manner of election and therefore in violation of Article I, section 4, clause 1 of the United States Constitution. (*Id.*) Plaintiffs specifically requested declaratory and injunctive relief to prevent the Secretary and county administrators from implementing the Plan and to have the Primary conducted as the Nevada Legislature otherwise prescribes. (*Id.* at 12–13.)

Along with the Verified Complaint, Plaintiffs filed a motion for preliminary injunction ("First PI Motion") and, *inter alia*, sought expedited briefing and a hearing on the First PI Motion. (ECF Nos. 2, 3,4.) The Court granted expedited briefing and held a hearing on April 29, 2020. (ECF Nos. 14, 49.) The next day, the Court ultimately denied the First PI Motion, concluding that Plaintiffs lack standing and are unlikely to succeed on the merits of their claims. (ECF No. 57.)

Plaintiffs did not expressly move the Court to reconsider its ruling. Nor did Plaintiffs seek appellate review—expedited or otherwise. Instead, Plaintiffs amended their complaint—adding additional parties. (ECF No. 83 at 2–3 (noting the new parties including a plaintiff who would be on ballot as a candidate in Lyon County—Plaintiff Gary Gladwill).)

In the amended complaint ("AC"), Plaintiffs assert the following four claims: (1) the Plan violates the fundamental right to vote by direct disenfranchisement in violation of the First and Fourteenth Amendments of the United States Constitution by not abiding by the Nevada Legislature's chosen manner of elections (Count I); (2) the Plan violates the fundamental right to vote by vote-dilution disenfranchisement in violation of the same by sidestepping statutory safeguards designed to protect against voting fraud (Count II); (3)

2

the Plan violates Article I, Section 4, Clause 1 of the Constitution because the Plan sought to conduct the election in a manner not authorized by the Nevada Legislature and contrary to the legislature's chosen manner (Count III); and (4) Clark County's plan to send mail-in ballots to all registered voters and to allow for the collection of ballots ("Clark County's Plan" or "CC Plan") violates the Fourteenth Amendment's Equal Protection Clause (Count IV).[1] (ECF No. 64 at 20–25.) As to the CC Plan, Plaintiffs particularly highlight Clark County's plan to: (i) send absent ballots also to inactive registered voters and, as reported, "allow a bipartisan group of deputized 'field registrars' to collect sealed ballots from voters"; and (ii) create more vote centers than other Nevada counties.[2] (*Id.* at 2.) The AC also sought declaratory and injunctive relief. (*Id.* at 25–26.) The AC was accompanied by, among other things, a second motion for preliminary injunction ("Second PI Motion"). (ECF No. 65.)

Defendants and Intervenor-Defendants filed oppositions to the Second PI Motion and moved to dismiss the AC. (*See* ECF Nos. 71, 72, 73, 74, 75, 76, 77, 78.) The Court denied the Second PI Motion on May 27, 2020. (ECF No. 83.) Plaintiffs thereafter moved for an extension of time to respond to the motions to dismiss, submitting a response on July 3, 2020—weeks after the Primary. (ECF Nos. 83, 87.) Defendants and Intervenor-Defendants replied. (ECF Nos. 88, 89, 90 (joinder).)

## III.  LEGAL STANDARD[3]

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule

---

[1] The header of Count IV broadly asserts that the Plan violates the Equal Protection Clause, but the substance of the allegation is specifically concerned with Clark County and the CC Plan. (*See* ECF No. 64 at 24–25.)

[2] In their reply supporting the Second PI Motion, Plaintiffs "expressly disavow[ed] any challenge to the provisions of the CC Plan allowing for more polling places in Clark County." (ECF No. 83 at 14 (citing ECF No. 80 at 8–9).)

[3] While Defendants and Intervenor-Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (*e.g.*, ECF No. 71 at 4–5; ECF Nos. 73, 76

12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

The issue of mootness amounts to a facial attack on the AC. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Myer ("Safe Air")*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court assumes the factual allegations of a complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).[4]

///
///
///
///

---

(joinders)), the Court provides only the standard for the former here because the Court concludes that dismissal is warranted on mootness grounds.

[4]"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

4

## IV. DISCUSSION

The Court finds this case is now moot.[5] The Court therefore does not consider the other jurisdictional and merits-based arguments for and against dismissal raised in the parties' briefing.

Article III, § 2 of the U.S. Constitution states that the federal courts may only adjudicate "Cases" and "Controversies". *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); *Deakins v. Monaghan,* 484 U.S. 193, 199 (1988). By Article III, federal courts are denied the power to "to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246 (1971). The jurisdiction of a federal court is properly invoked only where litigants have suffered or are "threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *North Carolina*, 404 U.S. at 246 (explaining also that courts are not empowered as a matter of jurisdiction to decide moot questions). That there must be a case or controversy for the exercise of jurisdiction "subsists through all stages of federal judicial proceedings, trial and appellate." *Id.* "[I]t is not enough that a dispute was very much alive when suit was filed . . . [t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id.* at 477–78 (internal quotations and citations omitted).

"Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained." *Id.* at 480. A case is moot where there remains no present controversy for which effective relief can be granted. *E.g., W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (citations omitted); *see also*

///

---

[5]Because the motions to dismiss were filed before the Primary, Defendants and Intervenor-Defendants did not have an opportunity to raise the mootness issue. Plaintiffs raised the issue in their response. (ECF No. 87 at 3.) Defendants and Intervenor-Defendants addressed the issue in reply. (ECF No. 88 at 2, n.1; ECF No. 89 at 2–6.) In any event, the Court is bound to consider the issue sua sponte. *See, e.g., Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (citation omitted).

*Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545 (9th Cir. 2009) (internal quotation and citations omitted) ("A case becomes moot whenever it loses its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law. The question is not whether the precise relief sought at the time . . . [the case] was filed is still available. The question is whether there can be any effective relief.")

The Supreme Court has recognized several exceptions to the mootness doctrine, of which the exception for matters that are capable of repetition while evading review is immediately relevant.[6] *See, e.g.*, *Roe v. Wade,* 410 U.S. 113, 125 (1973); *Honig v. Doe,* 484 U.S. 305, 318–20 (1988). Plaintiffs argue that exception here, thereby implicitly conceding that this case is moot under the default mootness doctrine. (ECF No. 87 at 2–8.) However, the Court finds the capable of repetition while evading review exception does not preserve the Court's jurisdiction over this matter.

Under the capable of repetition while evading review exception, "[a] case otherwise moot will still be heard if it presents an issue that is capable of repetition while evading review." *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451 (9th Cir. 1996) (citations omitted). "This exception applies only in exceptional circumstances." *GTE California, Inc. v. Federal Communications Comm'n*, 39 F.3d 940, 945 (9th Cir. 1994) (internal quotation and citation omitted). The exception particularly applies only where two exceptions have been met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt,* 455 U.S. 478, 482 (1982) (quotations and citations omitted) (recognizing the exception as articulated in *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (*per curiam*)). "The 'capable of repetition, yet evading review' doctrine, in the context of election cases,

---

[6]In addition to the capable of repetition while evading review exception, the Supreme Court has recognized the voluntary cessation and collateral consequences exceptions. *See, e.g.*, *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1459–61 (9th Cir. 1996). The Court has applied an additional mootness exception in class action cases. *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 399–403 (1975).

6

1  is appropriate when there are 'as applied' challenges as well as in the more typical case
2  involving only facial attacks." *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *see also*
3  *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) ("Challenges to election laws
4  are one of the quintessential categories of cases *which usually fit*" the evading-review
5  prong "because litigation has only a few months before the remedy sought is rendered
6  impossible by the occurrence of the relevant election.") (emphasis added).

7  Plaintiffs essentially argue that the exception is met based on standards that apply
8  to candidates and voters in election cases. (*See generally* ECF No. 87 at 2–8.) However,
9  each case Plaintiffs materially rely on is inapposite to this case because all those cases
10 concerned state statutes or other law that would govern successive elections. *See, e.g.*,
11 *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 449–50, (2007)
12 (concerning Section 203 of the Bipartisan Campaign Reform Act of 2002 (BCRA) that
13 would in the future apply to the same backout period issue then before the Court): *Norman*
14 *v. Reed*, 502 U.S. 279, 286–88 (1992) (considering Illinois statute); *Int'l Org. of Masters,*
15 *Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991) (concerning § 401(c) of the Labor–
16 Management Reporting and Disclosure Act of 1959 (LMRDA) and noting the section would
17 likely again present an obstacle to a preconvention mailing by respondent ); *Storer*, 415
18 U.S. at 737 n.8 ("[T]his case is not moot, since the issues properly presented . . . will
19 persist as *the California statutes* are applied in future elections."); *Joyner v. Mofford*, 706
20 F.2d 1523, 1527 (9th Cir. 1983) (considering a State of Arizona constitution provision that
21 "could be tested . . . whenever another elected Arizona official stands for federal office");
22 *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1306 n.1 (10th Cir. 2007) (considering
23 New Mexico statute concerning ballot access); *Lawrence*, 430 F.3d at 369–72 (involving
24 mootness challenge to Ohio election statute that applied to candidates); *Majors v. Abell*,
25 317 F.3d 719, 722 (7th Cir. 2003) (concerning Indiana statute).

26 Here, as noted in the Court's First Order denying the First PI Motion, in declaring
27 the Plan the Secretary expressly stated the Plan applies only to the Primary election. (ECF
28 No. 57 at 2 (referencing ECF No. 1-1).) There is no assertion in the AC that the Plan

applies to successive Nevada elections. (*See generally* ECF No. 64.) Accordingly, the election cases Plaintiffs rely on are materially distinguishable.

Moreover, to be exact, neither of the two requirements of the exception have been met here.

Plaintiffs contend that the first prong—the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration—has been met because the Plan and the CC Plan "were announced in March and April 2020, the initial complaint was filed April 21, and the June 9 Primary occurred without the opportunity for full review by this Court, let alone by an appeals court." (ECF No. 87 at 4.) The Court disagrees. On the record here the opportunity for "full review" by this Court was satisfied because the Court adjudicated the First PI Motion, and "full review" by the Ninth Circuit Court of Appeals was missed as a result of Plaintiffs' own dilatory actions.

Intervenor-Defendants point out (ECF No. 89 at 5) that the Ninth Circuit has explained that:

> a party may not profit from the "capable of repetition, yet evading review" exception to mootness, where through his own failure . . . he has prevented an appellate court from reviewing the trial court's decision. The exception was designed to apply to situations where the type of injury involved inherently precludes judicial review, not to situations where the failure of parties to take certain actions has precluded review as a practical matter.

*Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987) (citations omitted). Further, while election cases may usually fit the evading review standard due to their short duration, the prong is not met based on mere possibility. *See Murphy,* 455 U.S. at 482. If it was so satisfied, then virtually any election provision would be reviewable based on no more than that they are matters of short duration.

In this case there was nothing inherently preclusive of review. In fact, in its Second Order the Court expressed surprise at the lack of urgency with which Plaintiffs brought the AC and their Second PI Motion as well as them not pursuing expedited appellate review

///

///

instead of filing the substantially duplicative AC.[7] (*See, e.g.*, ECF No. 83 at 1 ("Plaintiffs' decision to bring the AC at this late hour, as opposed to seeking expedited appellate review of the Court's order . . . regarding their original motion for preliminary injunction . . . , is confounding and contrary to their position that a quick disposition of this matter is needed due to the impending June 9, 2020 Nevada primary election."); *id.* (also recognizing that the AC and second motion for preliminary injunction "glaringly repackage[d] old arguments to achieve a different disposition without necessary justification"); *id.* at 9 ("Plaintiffs waited 14 days after the [First] PI Order was issued and only 26 days before the June Primary to file the AC and bring the Second PI Motion . . . Plaintiffs surely have not acted with the alacrity that they claim this case necessitates.").)

To be sure, this Court was able to consider both motions for preliminary injunction within short timeframes with expedited full briefing on both and one hearing for the first injunction request. The Court could have—and would have—also ordered expedited briefing to rule on the motions to dismiss. But notably Plaintiffs requested an extension of time way beyond the Primary date—July 3, 2020—to file their response to the motions to dismiss (*see* ECF No. 81). Plaintiffs' own apparent game of wait-and-see therefore precluded *further* review on the merits before the Primary—not some intrinsic short duration of election cases generally. Accordingly, Plaintiffs have not satisfied the first prong under these circumstances.

Even if Plaintiffs may be found to have established prong one, their failure to meet prong two prevents them from moving forward. As to the second prong, the Supreme Court has said "that there must be a 'reasonable expectation' or a 'demonstrated probability' that *the same controversy* will recur involving the same complaining party." *Murphy,* 455 U.S. at 482. (citation omitted and emphasis added). The Court finds no such reasonable expectation or demonstrated probability in this case.

///

---

[7] Plaintiffs acted contrary to their representation in seeking expedited briefing that the Court should "issue a ruling with adequate time for [Plaintiffs] to seek emergency stays in the Ninth Circuit and U.S. Supreme Court if required." (ECF No. 13 at 4.)

There is no reason beyond supposition at this time to think the Plan (or the CC Plan) will be valid and apply to future elections. Again, they expressly governed only the June Primary. The Court recognizes Plaintiffs' contention that a similar policy will likely be implemented for future elections—and particularly the November general election—due to the persistence of the COVID-19 pandemic (and surmising that some other similar health and public safety crisis will come along). (ECF No. 87 at 6–8.) Plaintiffs also argue that the second prong is met even where Plaintiff-candidate, Gladwill, were to not run in future elections and that Plaintiffs' intent to run and vote in the future should nonetheless be inferred from their past conduct of doing these things. (*Id.* at 4–6.) But all this is besides the point. The Plan (and the CC Plan)—as implemented by the Secretary and county officials—were in response to the COVID-19 pandemic and limited to the Primary. The relief Plaintiffs request in the AC are directly tied to the same. (*See* ECF No. 64 at 25 (stating, for example "enjoin[]the Secretary and County Administrators to administer the primary election in accordance with the legislature's prescribed manner . . ." and "enjoin[] the Clark County Administrators from conducting the primary election in accordance with the published [CC] Plan").) Further, that the Plan (or CC Plan) at issue may be prospectively implemented is at best speculative and not supported by the allegations asserted in the AC.[8]

///

---

[8]In their response, Plaintiffs argue that if the Secretary in fact has authority to implement the Plan then the Plan controls through to the November general elections based on the language in NRS § 293.247(1). (ECF No. 87 at 8.) The argument is contrary to both the Secretary's expressed limitation of the Plan to the Primary and the language of § 293.247(1). Plaintiffs appear to contort the language of the section to have it say what they want it to say—that the Plan permanently controls all elections until replaced by other regulations. (*See id.*) But the ordinary reading of § 293.247(1) does not support this contention. *See* NRS § 293.247(1) ("Permanent regulations of the Secretary of State that regulate the conduct of a primary, general, special or district election and are effective on or before the last business day of February immediately preceding a primary, general, special or district election govern the conduct of that election."). Not only was the Plan not intended to be permanent, it was expressly confined to the Primary. Notably, there is no indication on the Secretary's website that the November election will be subject to the Plan or be an all-mail-in election. *See Nevada Secretary of State*, https://www.nvsos.gov/sos/elections/election-information (last visited July 31, 2020).

Moreover, insomuch as substantively similar provisions may govern future Nevada elections, those provisions and their conceivable forms are not before this Court for consideration.[9] The Court takes caution within its limited jurisdiction to decide only matters that are presently and properly before it. Even if the State of Nevada were to, for example, adopt a statutory scheme for state-wide all-mail-in elections in the future, the Court imagines that the challenges to such a statute would raise materially different contentions than which Plaintiffs currently raise. To be sure, Plaintiffs' current contentions chiefly revolve around the premise that the Secretary and local county officials acted beyond the scope of election laws prescribed by the state's legislature. Such a theory would likely no longer be valid where, for example, the state's legislature itself vote to adopt a statutory scheme. If such a time comes, then it is additionally conceivable that different issues and different (or additional) parties and thus a different controversy will be before the Court for consideration. For all these reasons, the Court additionally concludes the second prong has not been met.

In sum, on the record before this Court, even if Plaintiffs' claims stood on firmer grounds, Plaintiffs can no longer obtain effective relief because the Primary has already occurred and the claims and relief Plaintiffs requested are precisely tied to the Primary and the execution of the Plan (and the CC Plan) as specifically implemented by the Secretary and local officials in response to the COVID-19 pandemic. The Court therefore finds this case moot and will dismiss it on this ground.

///

///

---

Further, the section lists the types of election in the disjunctive supposing that discrete regulations would apply to each.

[9]The Court has considered Plaintiffs' contentions that an all-mail-in election has been r*ecommended or suggested* in Clark County for the upcoming November general election and that similar lawsuits are (or may be) in the pipeline. (ECF No. 87 at 7–8.) But, as the Court notes *infra*, there are likely substantive and meaningful distinctions between this lawsuit as currently framed and future lawsuits. Any current Clark County recommendation is not a provision, law, or statute creating a ripe issue for review. Any question as to how such recommendation affects this case is no more than guess work at this juncture. Moreover, Clark County specific plans are not tantamount to a statewide provision and would also necessarily fall under the Secretary's purview for assessment.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that this case is now dismissed as moot. The Court therefore does not consider the merits of Plaintiffs' claims.

It is further ordered that the pending motions to dismiss (ECF Nos. 71, 77) are thereby moot and denied accordingly.

The Clerk of the Court is directed to enter judgment in accordance with this order and close this case.

DATED THIS 31st day of July 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE